IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| THE SECURITY NATIONAL BANK OF SIOUX CITY, IOWA, as conservator for J.M.K., a Minor,<br><br>PLAINTIFF,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>DEFENDANT | Case No. 5:11-cv-04017-DEO<br><br>REPLY IN SUPPORT OF ABBOTT LABORATORIES' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT |

TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 1
ARGUMENT ..................................................................................................................... 1
I. Abbott's Motion To Dismiss Is Not A Rule 56 Motion ....................................... 2
II. Plaintiff Fails To Plead A Manufacturing Defect Claim (Count I) ...................... 3
III. Plaintiff Fails To Plead A Design Defect Claim (Count II).................................. 6
    A. Plaintiff fails to plead a plausible alternative "design"............................. 6
    B. Plaintiff fails to plead risk-utility adequately............................................ 8
IV. Plaintiff Fails To State A Claim for Failure To Warn (Count III)........................ 8
V. Plaintiff Fails To Plead Express Or Implied Warranty Claims (Counts IV-VI)... 9
VI. Plaintiff Fails To Plead Fraud and Negligent Misrepresentation (Counts VII-VIII)....... 11
    A. Plaintiff fails to allege the necessary elements of false representation and justifiable reliance.................................................. 11
    B. Plaintiff fails to allege its fraud claims with the requisite particularity.... 12
    C. Plaintiff fails to allege the necessary duty to support a negligent misrepresentation claim ............................................................ 12
VII. Plaintiff's Redundant "Negligence" And "Strict Liability" Claims Are Improper Under Iowa Law (Counts IX-X) .......................................................... 13
VIII. Plaintiff Fails To Plead An Entitlement To Punitive Damages (Count XI) ........ 14
CONCLUSION................................................................................................................. 15

## INTRODUCTION

Nothing in plaintiff's response cures the defects of its amended complaint. For some of the 11 counts, the allegations preclude the claims as a matter of law, and the remaining counts fail to state a claim under very current, controlling Supreme Court law articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Nothing in the law requires this Court to suspend belief in common knowledge or experience when assessing a complaint, or to accept as true allegations of legal conclusions or implausible theories. In fact, the recent Supreme Court mandate makes clear that a complaint cannot rest on "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 129 S. Ct. at 1949. Instead, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, for example, where the warning given by a manufacturer is nowhere alleged in the complaint, alleging the legal conclusion that there was a failure to warn does not suffice. Or, where no sale of a product is alleged but a gift is alleged instead, there can be no breach of warranty claim under Iowa law. Plaintiff's amended complaint is rife with such deficiencies. For the reasons set forth in Abbott's opening brief and below, plaintiff's amended complaint does not state a viable claim, and should be dismissed.

## ARGUMENT

This Court is well versed in the "two working principles" established by *Twombly* and *Iqbal*: (1) "the tenet that a court must accept as true all of the allegations contained in a complaint *is inapplicable to legal conclusions*"; and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1949-50 (citing *Twombly*, 550 U.S. at 555). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," (*id.* (quoting *Twombly*,

550 U.S. at 557)), and must be dismissed. Abbott's motion is based on these principles, and when applied to the amended complaint, they warrant dismissal of each of plaintiff's eleven claims.

## I. Abbott's Motion To Dismiss Is Not A Rule 56 Motion

Abbott's motion is based solely on the pleading deficiencies of the amended complaint and applicable law, not on facts outside the common knowledge of this Court or public experience that would require discovery by or from any party. Plaintiff urges the Court to ignore common knowledge and experience regarding the century-long use of powdered infant formula in the United States, arguing that Abbott's noting of such history should convert its motion to dismiss into a Rule 56 motion. Not so. Abbott is not required to argue its motion in a vacuum, devoid of obvious and practical context. All the "statements of fact" that plaintiff complains of are accessible to anyone without discovery, and merely put the plaintiff's allegations into a real world context.

This Court is not required to suspend belief of obvious, longstanding facts when assessing a complaint's allegations, such as the last century of infant nutrition and feeding of powdered infant formulas to newborns. *See Capitol Indemnity Corp. v. Russellville Steel Co., Inc.*, 367 F.3d 831, 836 (8th Cir. 2004) (a court may take judicial notice of "commonly known information"); *see also State v. Stevens*, 719 N.W.2d 547, 550 (Iowa 2006) ("Courts take judicial notice of facts within the common experience or knowledge of every person of ordinary understanding and intelligence."). Thus, this Court need not and should not accept as true plaintiff's alternate reality where powdered infant formula is unsafe for any newborn. (*See* Opp. at 1). The conclusion is facially implausible by the immutable truth that powdered infant formula has been available in virtually every U.S. supermarket and drugstore for decades, and

2

had been fed to millions of newborns without incident. Pointing this out does not convert Abbott's motion to dismiss to a summary judgment motion.

Likewise, the Court need not ignore years of strict federal regulation empowering the FDA to regulate the manufacture and distribution of infant formula in the United States.[1] *See e.g.*, 21 U.S.C. 321; 21 U.S.C. 350a; 21 C.F.R. 106 *et seq.*; 21 C.F.R. 107 *et seq.*; *Crimm v. Missouri Pacific Railroad Co.*, 750 F.2d 703, 709-10 (8th Cir. 1984) ("The district court may take judicial notice of the Federal Register and the Code of Federal Regulations."). Abbott's citation to prevailing, pertinent law in its motion to dismiss is also proper. As the Eighth Circuit has noted, "Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits matters in support of . . . the motion." *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999), *cert. denied*, 527 U.S. 1039 (1999); *Skyberg v. United Food and Commercial Workers Int'l Union, AFL-CIO*, 5 F.3d 297, 302 n. 2 (8th Cir. 1993) (even where matters outside the pleadings are presented to the court, a motion to dismiss is not converted into a motion for summary judgment where the court's order "makes clear the judge ruled only on the motion to dismiss"). None of the contextual, historical or public information Abbott has presented in its motion should be struck or warrants a conversion to a Rule 56 motion here.

## II. Plaintiff Fails To Plead A Manufacturing Defect Claim (Count I)

This Court is not the first to assess the sufficiency of plaintiff's manufacturing defect allegations. As explained in Abbott's opening brief, plaintiff's counsel filed a nearly identical

---

[1] Nor must this Court ignore statements made by plaintiff's parents to the press, namely, that no *E. sak* were found in the product when tested. *See Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (when reviewing a Rule 12(b)(6) motion, courts may consider "some materials that are part of the public record"); *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) ("Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of . . . the motion".).

3

lawsuit in federal district court in Minnesota. There, the court *twice* dismissed substantively identical manufacturing claims on the very grounds raised by Abbott's instant motion. *Burks v. Abbott Labs*, 639 F. Supp. 2d 1006 (D. Minn 2009) ("*Burks I*"); *Burks v. Abbott Labs,* No. 08-3414-JRT/JSM, 2010 U.S. Dist. Lexis 38616 (D. Minn. April 20, 2010) (*"Burks II"*). Wary of this instructive case law, plaintiff's opposition ignored it, but the same reasoning applies here.

Under Iowa law, a "manufacturing defect exists only where an item is substandard when compared to other identical units off the assembly line." *Wright*, 652 N.W.2d at 178-79; *see also Burks I* at 1016 (dismissing identical allegations against Abbott because plaintiff did not allege any facts identifying defendants' manufacturing specifications or standards, or how the product deviated from normal manufacturing specifications); *Burks II* at *9-10 (same)). Plaintiff here failed to allege what Abbott's manufacturing specifications were and how the manufacture of one product differed from those specifications or from any other identical product. These failures in the pleadings warrant dismissal of the manufacturing defect claim.

Rather than address this authority or identify facts suggesting a deviation from Abbott's specifications, plaintiff simply quotes the complaint's quintessential legal conclusion, that Abbott's product "deviated in a material way from Abbott's specifications and/or performance standards," which *Twombly* instructs cannot be deemed true. (Am. Compl. ¶ 54.) And, plaintiff cites to its own "alternate designs," (*id.* ¶ 55), which say nothing about Abbott's own specifications or standards and from which nothing can be inferred about Abbott's conduct. This, too, requires dismissal of the claim.

Finally, plaintiff argues that since it has alleged the product was the cause of bacterial injury, (a legal conclusion), that alone suffices to state a claim for manufacturing defect. This argument fails for several additional reasons. First, by way of context, having bacteria in food is

4

not like having a piece of glass in a can of Coke. It is common knowledge that food is not sterile. Bacteria give blue cheese its bite. Milk is pasteurized but is not sterile, so we must refrigerate it to keep the microbes in it from taking over and making it go bad. Thus, plaintiff's allegation that powdered infant formula is not sterile and may potentially contain *E. sak* does not equate to a manufacturing defect. Also, since the plaintiff referenced the FDA's testing related to JMK's alleged injury, (Am. Compl. ¶ 19), Abbott can surely advise the Court that JMK's parents admitted in the press that testing confirmed that *E. sak* was not found in the product. (Abbott Br. at 2, n. 2.) Second, it is common knowledge that once a can of food is opened it can become contaminated with bacteria, which would rule out a manufacturing defect and is why courts require more for a manufacturing defect claim. *See Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, 1095 (8th Cir. 2007) ("an essential element of any manufacturing defect claim is the intended design of the product"); *Wright*, 652 N.W.2d at 178 ("Clearly, then, under Iowa law, a plaintiff cannot recover from a [] manufacturer under a manufacturing defect theory where [the product] was in the condition intended by the manufacturer."). Third, to the extent plaintiff alleges any intended design, it is that all powdered infant formula is not commercially sterile and can potentially have the bacteria. (Am. Compl. ¶¶, 41). Plaintiff alleges the same about the Similac allegedly fed to JMK, and thus, if anything, alleges that the product conformed to the intended design. *See Burks I* at 1016 (granting Abbott's motion to dismiss plaintiff's manufacturing defect claim where plaintiff "did not allege that defendants' products deviate in some way from . . . identical products' manufacturing specifications" because "within the industry, it is expected that powdered formula may [contain E. sak]").[2]

---

[2] Plaintiff's request that the Court not dismiss the faulty manufacturing defect claim so that plaintiff can conduct discovery to try to bring such a claim should not be rejected. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950; *see also Twombly*,

5

## III. Plaintiff Fails To Plead A Design Defect Claim (Count II)

Plaintiff's opposition concedes that a design defect claim must allege that the product's foreseeable risks could have been reduced or avoided by adopting a reasonable alternative design.[3] *Wright* 652 N.W.2d at 168. The amended complaint neither identifies an alternative "design" of the Similac powder at issue, nor offers any allegations that Abbott could have reasonably adopted any alternative design while maintaining the benefits of powdered infant formula. Given the same pleading deficiencies, the *Burks* court dismissed virtually identical design defect claims against Abbott. The result should be no different here.

### A. Plaintiff fails to plead a plausible alternative "design"

To begin, the opposition asserts that Abbott's liquid infant formula is an "alternative design" to powdered Similac, proclaiming "infant formula is infant formula." (Opp. 12.) This is akin to arguing that beer is just an alternative design to bread because both products are made from grain, yeast and water. Abbott's opening brief lays out a host of differences between the distinct products showing, from a common sense and knowledge point of view, that the two products are *not* interchangeable and serve different needs. (Abbott Br. 7-8.) The opposition does not challenge *any* of these practical points. And, the amended complaint itself alleges differences between Abbott's liquid formula and powdered Similac. (Am. Compl. ¶¶41, 48-50.)

---

(continued…)

550 U.S. at 546 ("It is no answer to say that a claim just shy of plausible entitlement can be weeded out early in the discovery process".). To oblige plaintiff's request would risk undermining the entire purpose of the federal pleading requirements.

[3] Plaintiff argues that it should not be required to allege a reasonable alternative because powdered formula, a widely distributed product, is "manifestly unreasonable." (Opp. n. 8.) Plaintiff's argument has been flatly rejected by the Iowa supreme court and is inconsistent with the Restatement. *See Parish v. Jumpking, Inc.*, 719 N.W.2d 540, 544 (Iowa 2006) (rejecting plaintiff's argument that a widely distributed product could ever be found "manifestly unreasonable"); *Restatement* § 2(b) cmt. d ("Common and widely distributed products such as alcoholic beverages, firearms, and above-ground swimming pools may be found to be defective only upon proof of [a reasonable alternative design] . . . . courts have not imposed liability for categories of products that are generally available and widely consumed, even if they pose substantial risks of harm.").

6

Plaintiff now chooses to ignore these allegations – without comparing the utility, manufacture, design, or composition of these distinct products – and simply asserts that liquid formula is an alternative design to powdered Similac. This unsupported assertion carries no weight under *Twombly* and was rejected in *Burks*.[4] (*See* Abbott Br. 7-8 (citing *Burks II* at *13 (granting Abbott's motion to dismiss plaintiff's design defect claim, finding that "liquid infant formula is a different product entirely than powered infant formula").)

Plaintiff's related argument, that it has adequately pled four other "alternative designs" – the "biocidal" treatment of Abbott's PIF, a change in climate control, a change in Abbott's cleaning protocols, and different testing methods – also fails. The amended complaint does not allege how any of these suggestions would change the composition of powdered Similac or its properties. Thus, none of these allegations is an alternative *design,* as opposed to hypothetical manufacturing and storage processes. *See Burks II* at *12-13; *Ackerman v. Am Cyanamid Co.*, 586 N.W.2d 208, 221-222 (Iowa 1998). Plaintiff's opposition does not contest this distinction, but instead attempts to shift the pleading burden onto Abbott to establish that these suggested changes *would not* change the composition of powdered Similac. (Opp 13.) This is not the law. *Plaintiff* must allege all the elements of its purported claim, including that the supposed "alternative designs" would change the composition of powdered Similac. *See Wright*, 652 N.W.2d at 168-69; *Restatement* § 2 cmt. f. Plaintiff has not made and cannot make this allegation and its claims fail as a matter of law.

---

[4] Plaintiff's opposition also asserts that "different models" of the same product constitute alternative designs. (Opp. 12 (citing *Sappington v. Skyjack, Inc.*, 512 F.3d 440 (8th Cir. 2008); *Lauzon v. Senco Products*, 270 F.3d 681 (8th Cir. 2001).) The opposition misinterprets the law. *Sappington* addressed whether the trial court had properly excluded testimony by plaintiff's expert under *Daubert*, not whether the parties' assertion that *subsequent* models of a product were "alternate designs." *See* 512 F.3d at 449-50. Moreover, in *Sappington*, the court addressed only the relation between subsequent versions of the *same product* (*i.e.,* the 1995 and 1997 model of Skyjack's SJ lifts). Likewise, the *Lauzon* court did not address the legal question of whether two nail guns were properly considered "alternative designs" of the same product, but rather the validity of a party's *Daubert* challenge. *See, e.g.,* 270 F.3d 681 (8th Cir. 2001).

7

### B. Plaintiff fails to plead risk-utility adequately

Even if plaintiff had alleged that its hypothetical storage and other processes could influence the design of powdered Similac (which it cannot), the amended complaint fails to allege any facts to suggest that such "alternatives" are even possible, and if so, how these processes would render powdered Similac sterile, eliminating or reducing the incidence of microbes (including *E. sak*), while maintaining any nutritional value, utility and reasonable cost of powdered formula. *See Restatement* § 2 cmt. f. Instead, plaintiff posits – for the first time in its opposition – hypotheses of why these four processes could reduce the incidence of *E. sak*. But hypotheses are not facts, and in any event they are conspicuously absent from the amended complaint. The law is clear that plaintiff may not amend its pleadings through after-the-fact attorney argument made in its opposition. *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.").

Moreover, not even plaintiff suggests that its hypothetical processes would produce sterile powdered Similac that was nutritionally safe to feed any infant, could have been implemented reasonably, *and* would have reduced the incidence of *E. sak* to any given level. These elements are fundamental to a design defect claim. *Wright*, 652 N.W.2d at 168-69 (in order to state a defective design claim, a plaintiff must allege that "the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design"); *Restatement* § 2 cmt. f. Because plaintiff did not and cannot make such allegations, the design defect claim must be dismissed.

### IV. Plaintiff Fails To State A Claim for Failure To Warn (Count III)

Plaintiff's opposition argues that as long as it alleges what it considers to be "sufficient" warnings, it need not allege what Abbott's warnings were or how those warnings were

8

"unreasonable." (Opp. 14.) This is wrong. It is plaintiff's "burden to prove that adequate instructions or warnings were not provided." *Restatement* § 2 cmt. i. The amended complaint merely alleges the legal conclusion that Abbott's warning was unreasonable; without even alleging what the warning was or why it rendered the product "not reasonably safe." Plaintiff's reference to supposedly alternative "sufficient" warnings does not salvage its claim, as "the ability of a plaintiff to imagine a hypothetical better warning in the aftermath of an accident does not establish that the warning actually accompanying the product was inadequate." *Id.* Without ever alleging what warning was given, plaintiff can hardly state a claim based on a "better" warning that it created after the fact.

Additionally, the opposition concedes that the amended complaint fails to allege *any causal link* between Abbott's warnings and JMK's illness. (*See* Abbott Br. 11; Opp. 14-15.) Indeed, there are no allegations – and none can be pled now in good faith – that JMK's parents read Abbott's warnings prior to feeding JMK powdered formula. Thus, the warning cannot be a cause of the injury. *See Lovick v. Wil-Rich*, 588 N.W.2d 688, 700 (Iowa 1999) (the plaintiff in a products liability action must allege a causal relationship between the alleged negligence and injury). This is fatal to the failure to warn claim. Also, plaintiff fails even to address this pleading deficiency in its opposition, and the failure to answer an argument concedes the argument. *Berryhill v. Schiriro*, 137 F.3d 1073, 1075 n. 2 (8th Cir. 1998). Plaintiff's failure to warn claim should be dismissed on this ground as well. Accordingly, plaintiff's negligent warning claim must be dismissed for failure to state a claim.

V.     **Plaintiff Fails To Plead Express Or Implied Warranty Claims (Counts IV-VI)**

Longstanding, dispositive Iowa law holds that there must be a sale for any breach of warranty claim. Plaintiff's response cites case law that adheres to this rule of law and makes Abbott's point: although privity is not required for a breach of warranty claim, an underlying

9

*sale* by the defendant always is. *See* Abbott Br. 11 (collecting cases); *Liphardt v. American Fence Co. of Iowa, Inc.*, 791 N.W.2d 430, 2010 WL 3894479, at *1 (Iowa App. Oct. 6, 2010); *see also* (cases plaintiff cites) *State Farm Mut. Auto. Ins. Co. v. Anderson-Weber, Inc.*, 110 N.W.2d 449 (Iowa 1961) (auto maker liable for warranty claim stemming from plaintiff's *purchase* of auto maker's vehicle from auto dealer); *Bengford v. Carlem Corp.*, 156 N.W.2d 855 (Iowa 1968) (auto maker liable for warranty claim stemming from failure of its tractor causing injury to the tractor *purchaser's* employee's child). Indeed, an abandonment of the "sale" requirement, which plaintiff urges, would contravene the very Iowa Code provision that abrogated the privity requirement. *See* Iowa Code 554.2318 ("A *seller's* warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the *goods*. . . .") (emphasis added). As noted in the commentary to the Code section, the "purpose of this section is to give the *buyer's* family, household and guests the benefit of the same warranty which the *buyer* received in the *contract of sale*, thereby freeing any such beneficiaries from any technical rules as to 'privity.'" Iowa Code 554.2318 cmt. 2 (emphasis added). Thus, while there need not be privity between the manufacturer and the individual bringing a breach of warranty claim, a plaintiff must still allege that the item in question was sold in the stream of commerce. *See* Abbott Br. 11; *Liphardt*, 791 N.W.2d 430. Plaintiff has not and cannot, in good faith, do that here as the product came in a gift bag, not through any sale.

The opposition also fails to address Abbott's argument regarding the lack of an express warranty. Again, it repeats the complaint's allegations and simply concludes that they satisfy pleading requirements. They do not. As outlined in Abbott's opening brief, the amended complaint contains no allegation of warranty made or relied on by JMK's parents anywhere, or even on Abbott's webpage, prior to accepting the gift bag containing Abbott's powdered Similac

10

in April 2008.[5] Nor is there, or could there ever be, any allegation that an alleged statement constituted the basis of the bargain in the sale of *any* Abbott product for this infant prior to April 24, 2008.[6] *See* Abbott Br. 13. Plaintiff, therefore, fails to allege the critical elements of (i) the existence or terms of an express warranty and (ii) reasonable reliance. Plaintiff's claim fails on these independent grounds as well.

VI.   **Plaintiff Fails To Plead Fraud and Negligent Misrepresentation (Counts VII-VIII)**

   A.   **Plaintiff fails to allege the necessary elements of false representation and justifiable reliance**

Plaintiff's fraud and negligent misrepresentation claims fail because plaintiff has not alleged that Abbott made any false representation to JMK's parents or that JMK's parents relied on any statement made by Abbott prior JMK's alleged April 2008 injury. The opposition does not contest these fatal shortcomings. Instead, plaintiff points to its allegations of representations Abbott allegedly made to "the public" – all but one of which post-date JMK's April 24, 2008 injury. This will not work under Iowa law. Plaintiff has not and cannot allege that Abbott made any false representations *to JMK's parents* and that *JMK's parents* relied on those representations before allegedly using the Similac product on April 24, 2008. *See Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 735 (to establish a claim for fraud, a plaintiff must allege, among other things, that "defendant made a representation to plaintiff," "the representation was false," and that plaintiff "was justified in relying on the representation"); *Sain v. Cedar Rapids Comm. School Dist.*, 626 N.W.2d 115, 123-24 (Iowa 2001) (to establish a claim for negligent misrepresentation, a plaintiff must allege, among other things, that the defendant supplied "false

---

[5] Indeed, plaintiff does not even allege that JMK's parents owned a computer or navigated to the Abbott webpage prior to receiving and using Abbott's powdered infant formula in April 2008.

[6] The vast majority of the allegations in the amended complaint relate to supposed statements made by Abbott after JMK's alleged use of its powdered infant formula. None of these statements can support an express warranty claim as they cannot support the element of reasonable reliance. (Abbott Br. 13, 17-18.)

11

information" to the plaintiff and that the plaintiff acted in "justifiable reliance upon the information"). Absent these fundamental allegations, which cannot be made in good faith, plaintiff's fraud and negligent misrepresentation claims must be dismissed.

B. **Plaintiff fails to allege its fraud claims with the requisite particularity**

Plaintiff's opposition also fails to address Abbott's Rule 9(b) argument. Instead, plaintiff simply refers the Court to paragraphs 108-112 of the amended complaint. This reference is non-responsive to Abbott's detailed description of the shortcomings of the amended complaint. (*See* Abbott Br. 18-19.) Abbott, therefore, stands on those arguments.

As an additional matter, only one of the four allegations identified by the opposition could have any purported connection to plaintiff's fraud claim, as only the allegation (*made on information and belief only*) regarding Abbott's pre-April 24, 2008 statement temporally aligns with the purported fraud claim. (*See* Am. Compl. 108.) However, as Abbott's opening brief makes clear, even if Abbott's website had contained such alleged promotional material, any such material is insufficient to support a cause of action sounding in fraud. *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982), *adhered to on reh'g*, 710 F.2d 1361 (citation to allegedly false statements included in a "pamphlet" and other "promotional material" are "not sufficiently particular to satisfy Rule 9(b)"). Plaintiff's fraud claims simply fail to meet Rule 9(b) strict pleading requirements and must be dismissed.

C. **Plaintiff fails to allege the necessary duty to support a negligent misrepresentation claim**

The amended complaint fails to allege that Abbott, a manufacturer of goods, is in the business of supplying information to others such that it is in a "special relationship" with JMK and her parents. *See Sain*, 626 N.W.2d at 124. "*Absent a special relationship giving rise to a duty of care*, a plaintiff cannot establish negligent misrepresentation." *Jensen v. Sattler*, 696

12

N.W.2d 582, 588 (Iowa 2005) (collecting cases); *see* Abbott Br. 19-20. The opposition does not identify any such relationship. Here, plaintiff alleges only that Abbott advertised its products (like any other manufacturer). Iowa law is clear that such communications by a manufacturer, incidental to the manufacture and distribution of products, cannot create a special relationship between the manufacturer and end users of its products.[7] *See Sain*, 626 N.W.2d at 124; *Molo Oil Co. v. River City Ford Trucks Sales, Inc.*, 578 N.W.2d 222, 227 (Iowa 1998); *Greatbach v. Metropolitan Bank*, 534 N.W.2d 115, 117 (Iowa Ct. App. 1995). For this reason, plaintiff's negligent misrepresentation claim should be dismissed.

## VII. Plaintiff's Redundant "Negligence" And "Strict Liability" Claims Are Improper Under Iowa Law (Counts IX-X)

Plaintiff's opposition does not contest that its additional negligence and strict liability counts are wholly redundant of its three product defect claims.[8] Instead, plaintiff asserts (without any supporting law) that despite Iowa's post-*Wright* precedent, plaintiff should be allowed to proceed with these duplicative claims for negligence and strict liability because these are the general theories underlying Iowa's product liability law. This is nonsensical. Under *Wright* and its progeny, the only product-related claims that can be asserted under Iowa law are the *Restatement's* manufacturing defect (strict liability), design defect (negligence), and warning defect (negligence) causes of action. *See* Abbott Br. 21-23. Plaintiff's argument that *Wright*

---

[7] Indeed, plaintiff's primary citation in its opposition, *Conveyor Co. v. SunSource Tech Serv's*, 398 F. Supp. 2d 992, supports Abbott's recitation of Iowa law. *Id.* at 1016 (granting summary judgment in favor of manufacturer defendant on plaintiff's negligent misrepresentation claims, finding that manufacturer and dealer of products was not a "professional purveyor of information" with the necessary "special relationship" with plaintiff). Plaintiff's additional citation to *Wright* is inapposite. *Wright* did not involve a negligent misrepresentation claim or the duties that must be alleged in order to sustain such a claim. 652 N.W.2d at 174-77 (discussing disclosure requirements in relation to purported fraud claim).

[8] Plaintiff's opposition does not contest Abbott's complementary argument that its purported "failure to test" and "negligent marketing" claims are all subsumed by the *Restatement's* warning defect claim. *See* Abbott Br. n. 12-13.

13

should apply only to design defect cases was rejected in *Wright*, when the court adopted the *Restatement* for all classes of product liability claims, not just design defects. *See* 652 N.W.2d at 169. Plaintiff's own opposition acknowledges this fact, citing Iowa's post-*Wright* Pattern Jury Instructions for manufacturing and warning defect claims - both of which are based on the *Restatement* as adopted by the Iowa Supreme Court in *Wright*. (*See* Opp. at 9-10, 14 (citing *I.C.J.I.* 1000.1 & 1000.3, *Wright*, and the *Restatement*).) Plaintiff must be limited to its purported product claims (which fail on separate grounds) and may not tack on identical causes of action not recognized under Iowa law. These redundant claims should be dismissed.[9]

## VIII. Plaintiff Fails To Plead An Entitlement To Punitive Damages (Count XI)

Plaintiff's response concedes that a party cannot assert an independent claim for punitive damages and that its request for past and future medical damages (until JMK reaches the age of majority) belong to her parents, non-parties to this suit. *Campbell v. Van Roekel*, 347 N.W.2d 406 (Iowa 1984); Iowa Rule of Civil Procedure 1.206; Iowa Code § 613.15; *Gookin v. Norris*, 261 N.W.2d 692 (Iowa 1978). As such, Count XI of the complaint and such request for medical expenses must be dismissed out of hand.

Plaintiff fares no better on any other claim in the amended complaint where punitive damages are concerned. *First*, plaintiff can point only to its bald legal conclusion that Abbott acted with "willful and wanton disregard to the rights or safety of J.M.K" without a single factual allegation in support. (*See. e.g.* Am. Compl. ¶¶ 146-48.) Under *Twombly* and *Iqbal*, the mere repetition of a required element of a claim for relief is insufficient.

---

[9] Plaintiff's opposition does not address Abbott's independent ground for dismissing the strict liability claim, namely, reliance on the now-abandoned *Restatement (Second)* Section 402A. *See Wright*, 652 N.W.2d at 168. This waiver is another reason to dismiss plaintiff's strict liability claim.

14

*Second,* plaintiff's argument that simply alleging a failure to warn claim, without more, is sufficient to support recovery of punitive damages is not found anywhere in Iowa law.[10] Plaintiff's citation to *McClure v. Walgreen Co.*, 613 N.W.2d 225 (Iowa 2000), is wholly inapposite. Indeed, *McClure* ruled that "[m]ere negligent conduct is not sufficient to support a claim for punitive damages." 613 N.W.2d at 230-31. In that case, the court considered additional unlawful conduct, including that the defendant-pharmacy had wrongfully dispensed an antidepressant instead of an antacid to a patient; that during the three years prior to the error, the pharmacy had 34 similar errors; and that the pharmacy failed to warn plaintiff of the serious and common side effects of rapid antidepressant withdrawal in contradiction of pharmacy policy. *McClure*, 613 N.W.2d at 228-31. Here, plaintiff has not alleged any wrongful and willful conduct at all, just the legal conclusion that Abbott failed to warn adequately, and provided no additional facts to support an argument for willful conduct on the part of Abbott. Unlike in *McClure*, plaintiff has not alleged any additional facts to show "an intentional and unreasonable act in disregard of a known or obvious risk that was so great as to make it *highly probable* that harm would follow." *Van Sickle Const. v. Wachovia Comml. Mortg.*, 783 N.W.2d 684, 689 (Iowa 2010) (emphasis added). Accordingly, plaintiff fails to allege any factual basis on which to support a request for punitive damages and any claim for such relief should be dismissed.

## CONCLUSION

For all the above reasons – as well as those reasons stated in Abbott's opening brief in support of its motion to dismiss – Abbott respectfully requests that, pursuant to Rule 12(b)(6), this Court dismiss plaintiff's amended complaint with prejudice.

---

[10] The only claim that plaintiff's opposition posits as supporting its request for punitive damages is its warning defect claim which sounds in negligence under Iowa law. It never addresses any of the other ten purported causes of action. As a result, the argument regarding those other claims is waived and plaintiff's request for punitive damages should be dismissed in all ten of those Counts. *See Berryhill*, 137 F.3d at 1075 n.2.

15

Dated: May 23, 2011                                          Respectfully submitted,

                                                   s/ Gabriel H. Scannapieco
                                                   June K. Ghezzi
Paula S. Quist
Gabriel H. Scannapieco
JONES DAY
77 West Wacker Drive
Suite 3500
Chicago, IL 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
jkghezzi@jonesday.com
pquist@jonesday.com
gscannapieco@jonesday.com

John C. Gray, AT0002938
HEIDMAN LAW FIRM, LLP
1128 Historic Fourth Street
P.O. Box 3086
Sioux City, IA 51102-0386
Telephone: (712) 255-8838
Facsimile: (712) 258-6714
John.Gray@heidmanlaw.com

ATTORNEYS FOR DEFENDANT
ABBOTT LABORATORIES.

## CERTIFICATE OF SERVICE

      I, Gabriel H. Scannapieco, certify that on the 23rd day of May, 2011, I served the foregoing via electronic delivery to all parties that have filed an appearance in this matter at their e-mail addresses on file with the Court.

**Stephen C. Rathke**
LOMMEN ABDO COLE KING &
STAGEBERG, PA
ISD Center, Suite 2000
80 So. Eighth Street
Minneapolis MN 55402

**Timothy Bottaro**
**Amanda Van Wyhe**
VRIEZELAAR, TIGGES, EDGINGTON,
BOTARRO, BODEN & ROSS, L.L.P.
613 Pierce Street
P.O. Box 1557
Sioux City IA 51102


s/ Gabriel H. Scannapieco