**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| **THE SECURITY NATIONAL BANK OF SIOUX CITY, IOWA**, as conservator for **J.M.K., a Minor,**<br><br>PLAINTIFF,<br><br>v.<br><br>**ABBOTT LABORATORIES,**<br><br>DEFENDANT | **Case No. 5:11-cv-04017-MWB**<br><br><br>**BRIEF IN SUPPORT OF ABBOTT LABORATORIES' OMNIBUS MOTION *IN LIMINE*** |

# TABLE OF CONTENTS

**Page**

MOTION IN LIMINE NO. #1: DEPAKOTE PLEA AGREEMENT & SETTLEMENT ............ 1

    A.    The Depakote agreement and settlement are irrelevant to this case ..................... 1

    B.    Plaintiff may not use the agreement and settlement to impeach Abbott's witnesses ................................................................................................................. 2

    C.    The agreement and settlement should be excluded under Rule 403 ..................... 4

MOTION IN LIMINE NO. #2: INFORMATION REGARDING AN UNRELATED VOLUNTARY RECALL, FACILITY AND PRODUCTS MANUFACTURED AT SUCH FACILITY ....................................................................................................... 5

    A.    Information regarding the 2010 voluntary recall is irrelevant .............................. 5

    B.    Information regarding Abbott's Sturgis, MI facility and products manufactured at that facility is irrelevant ............................................................ 6

    C.    Information regarding an unrelated recall, a different facility and different product would unfairly prejudice Abbott, confuse the jury and waste time ......... 7

MOTION IN LIMINE #3: ANECDOTAL CASE REPORTS OF E. SAK ILLNESS ................ 8

    A.    The reports are irrelevant because they relate to other occurrences and there can be no showing that they are substantially similar to the case at hand ..................................................................................................................... 9

    B.    Case reports are irrelevant because they are not evidence of causation ............. 11

    C.    The anecdotal reports are inadmissible hearsay .................................................. 12

    D.    Any probative value of the case reports is substantially outweighed by their prejudicial impact and risk of confusing the jury ....................................... 13

MOTION IN LIMINE #4: PROHIBITION OF CUMULATIVE EXPERT TESTIMONY ....... 14

MOTION IN LIMINE #5: OPINION TESTIMONY OUTSIDE OF WITNESSES' AREAS OF EXPERTISE ........................................................................................... 17

    A.    Jason is not qualified to offer opinions on E. sak testing methods. .................... 19

    B.    Catherine Donnelly, Farmer and Jason have no expertise in PIF manufacture or design ........................................................................................ 19

    C.    Catherine Donnelly, Scott Donnelly, Farmer and Jason are unqualified to offer opinions on warnings or labeling .............................................................. 20

    D.    Gerald Goldhaber is not qualified to offer opinions regarding the scope of risk posed by PIF, the likelihood PIF caused J.K.'s harm, and should be barred from opining on whether Abbott acted "reasonably" ............................... 21

# TABLE OF AUTHORITIES

Page

CASES

*Ahlberg v. Chrysler Corp.*,
481 F. 3d 630 (8th Cir. 2007) ..................................................................6, 7, 10

*Barrett v. Rhodia, Inc.*,
606 F.3d 975 (8th Cir. 2010) ...................................................................18, 19, 22

*Brumbaugh v. Sandoz Pharm. Corp.*,
77 F. Supp. 2d 1153 (D. Mont. 1999)....................................................................13

*Burks v. Abbott Labs*,
2013 U.S. Dist. Lexis 2688 (D. Minn. Jan 8, 2013) ..........................................21, 22

*California v. Green*,
399 U.S. 149 (1970)...............................................................................................12

*Crump v. Versa Prods.*,
400 F.3d 1104 (8th Cir. 2005) ..............................................................................13

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)...............................................................................................12

*DePaepe v. G.M. Corp.*,
141 F.3d 715 (7th Cir. 1998) ................................................................................22

*Drabik v. Stanley-Bostitch, Inc.*,
997 F.2d 496 (8th Cir. 1993) ................................................................................13

*Finke v. Hunter's View, Ltd.*,
596 F. Supp. 2d 1254 (D. Minn. 2009)...............................................................15, 16

*Froemming v. Gate City Fed. Sav. & Loan Ass'n*,
822 F.2d 723 (8th Cir. 1987) ................................................................................16

*Gibson v. Mohawk Rubber Co.*,
695 F.2d 1093 (8th Cir. 1982) ..............................................................................16

*Glastetter v. Novartis Pharm. Corp.*,
252 F.3d 986 (8th Cir. 2001) ...........................................................................11, 13

*Glastetter v. Novartis Pharm. Corp.*,
107 F. Supp. 2d 1015 (E.D. Mo. 2000).................................................................11

*Hale v. Firestone Tire & Rubber Co.,*
756 F.2d 1322 (8th Cir. 1985) .......................................................................9, 10

*Hessen ex rel. Allstate Ins. Co. v. Jaguar Cars, Inc.,*
915 F.2d 641 (11th Cir. 1990) ............................................................................5

*In re Viagra Prods. Liab. Litig.,*
572 F. Supp. 2d 1071 (D. Minn. 2008).........................................................18, 22

*Johnson v. Mead Johnson,*
2013 U.S. Dist. Lexis 26815 (D. Minn. Feb. 27, 2013).........................................12

*Jordan v. General Motors Corp.,*
624 F. Supp. 72 (E.D. La. 1985)......................................................................6, 7

*Junk v. Terminix Int'l Co. Ltd.,*
594 F. Supp. 2d 1062 (S.D. Iowa 2008) ..............................................................13

*Katzenmeier v. Blackpowder Prods., Inc.,*
628 F.3d 948 (8th Cir. 2010) ..............................................................................9

*Kuiper v. Givaudan, Inc.,*
602 F. Supp. 2d 1036 (N.D. Iowa 2009)..........................................................15, 16

*Lewy v. Remington Arms Co.,*
836 F.2d 1104 (8th Cir. 1988) .............................................................................6

*Loeffel Steel Prods. v. Delta Brands, Inc.,*
387 F. Supp. 2d 794 (N.D. Ill. 2005) ..................................................................13

*Lovett v. Union Pac. R.R. Co.,*
201 F.3d 1074 (8th Cir. 2000) ...........................................................................13

*Nachtsheim v. Beech Aircraft Corp.,*
847 F.2d 1261 (7th Cir. 1987) ...........................................................................10

*Nelson v. Am. Home Prods. Corp.,*
92 F. Supp. 2d 954 (W.D. Mo. 2000) ..................................................................12

*Nichols v. Am. Nat'l Ins. Co.,*
154 F.3d 875 (8th Cir. 1998) .............................................................................17

*Olson v. Ford Motor Co.,*
410 F. Supp. 2d 869 (D.N.D. 2006)....................................................................5, 6

Case 5:11-cv-04017-MWB-CJW   Document 114-1   Filed 07/19/13   Page 4 of 30

*Pointer v. Texas,*
    380 U.S. 400 (1965) ............................................................................................12

*Porter-Cooper v. Dalkon Shield Claimants Trust,*
    49 F.3d 1285 (8th Cir. 1995) ...........................................................................15

*Robertson v. Norton Co.,*
    148 F.3d 905 (8th Cir. 1998) ...........................................................................22

*Saari v. Merk & Co., Inc.,*
    961 F. Supp. 387 (N.D.N.Y. 1997) ..................................................................12

*Sappington v. Skyjack Inc.,*
    No. 04-5076, 2008 U.S. Dist. Lexis. 24633 (W.D. Mo. Mar. 27, 2008) ...............16

*Scordill v. Louisville Ladder Group, LLC,*
    No. 02-cv-2565, 2004 WL 307475 (E.D. La. Feb. 17, 2004) .................................7

*Shafer v. General Motors Corp.,*
    91 F.3d 144 (6th Cir. 1996) ...............................................................................6

*Smith v. Rasmussen,*
    249 F.3d 755 (8th Cir. 2001) ......................................................................18, 22

*Thomas v. Chrysler Corp.,*
    717 F.2d 1223 (8th Cir. 1983) .......................................................................9, 10

*Turner v. Iowa Fire Equip. Co.,*
    229 F.3d 1202 (8th Cir. 2000) ......................................................................11, 12

*United States v. Brown,*
    763 F.2d 984 (8th Cir. 1985) ..........................................................................3, 4

*United States v. Gabe,*
    237 F.3d 954 (8th Cir. 2001) ...........................................................................14

*United States v. Grey Bear,*
    883 F.2d 1382 (8th Cir. 1989) ......................................................................12, 13

*United States v. Iron Hawk,*
    612 F.3d 1031 (8th Cir. 2010) ...........................................................................14

*Upsher-Smith Labs., Inc. v. Mylan Labs., Inc.,*
    944 F. Supp. 1411 (D. Minn. 1996) ...................................................................16

Case 5:11-cv-04017-MWB-CJW   Document 114-1   Filed 07/19/13   Page 5 of 30

*Van Dyke v. Coburn Enterprises, Inc.,*
  873 F.2d 1094 (8th Cir. 1989) ...............................................................15, 16

*Verzwyvelt v. St. Paul Fire & Marine Ins. Co.,*
  175 F. Supp. 2d 881 (W.D. La. 2001) ..........................................................6, 7

*Walden v. Georgia-Pacific Corp.,*
  126 F.3d 506 (3d Cir. 1997) .....................................................................2, 3

*Weisgram v. Marley Co.,*
  169 F.3d 514 (8th Cir. 1999) ................................................................18, 22

*Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.,*
  254 F.3d 706 (8th Cir. 2001) ................................................................18, 22

**STATUTES**

HIPAA ...........................................................................................................8

**OTHER AUTHORITIES**

Fed. R. Evid. 401 .................................................................................. passim

Fed. R. Evid. 402 .................................................................................. passim

Fed. R. Evid. 403 .................................................................................. passim

Fed. R. Evid. 404 ...........................................................................................2, 4

Fed. R. Evid. 602 ..........................................................................................12

Fed. R. Evid. 608 ............................................................................................2

Fed. R. Evid. 609 ...........................................................................................2, 3

Fed. R. Evid. 702 .................................................................................. passim

Fed. R. Evid. 703 ....................................................................................12, 13

Fed. R. Evid. 801 ..........................................................................................12

Fed. R. Evid. 802 ..........................................................................................12

## MOTION IN LIMINE NO. #1:
## DEPAKOTE PLEA AGREEMENT & SETTLEMENT

Plaintiff has indicated that it intends to offer evidence at trial of Abbott's prior corporate plea agreement and civil settlement relating to marketing of the prescription drug Depakote.[1]  In May 2012, Abbott[2] entered into a plea agreement with the government in connection with (misdemeanor) misbranding allegations, and agreed to a settlement to resolve both civil and criminal proceedings.  The civil settlement did not contain any admission of liability.  As explained below, this agreement and settlement are irrelevant to liability, incompetent for purposes of impeachment, and otherwise inadmissible under Rule 403.

A.     **The Depakote agreement and settlement are irrelevant to this case.**

The Depakote agreement and settlement are irrelevant to this product liability case involving powdered infant formula ("PIF") because the case has nothing to do with pharmaceuticals, Depakote, or Abbott's sales and marketing of Depakote.  That Abbott resolved the government investigation involving Depakote marketing—or that such an investigation existed—does not tend to make any fact "of consequence in determining this action" more or less probable, Fed. R. Evid. 401, including whether a particular batch of NeoSure PIF contained a certain bacteria, or whether Abbott's manufacturing, design or labeling for that formula was adequate.

---

[1] Depakote is a prescription pharmaceutical indicated for treatment of bipolar disorder, seizure disorders and migraine headaches in adults.  Plaintiff has not notified Abbott that it intends to offer any other evidence of government actions or investigations against Abbott, but Abbott submits that such topics would be unrelated to the existing case, for all the same reasons raised in this motion.

[2] Effective January 1, 2013, Abbott Laboratories split into two companies:  AbbVie, a new biopharmaceutical company composed of Abbott's prior proprietary pharmaceutical business, and Abbott Laboratories, which focuses on nutritionals and medical devices.  (*See* www.abbott.com/abbott-and-abbvie.htm.) Depakote is sold and marketed exclusively by AbbVie.  (*See* www.abbvie.com/products/home.html.)  The obligations of the plea agreement and settlement transferred to and became fully binding on AbbVie upon the separation of the two companies.  (*See* AbbVie Form 10-K, available at http://www.sec.gov/Archives/edgar/data/1551152/000104746913002827/a2213529z10-k.htm.)

And, to the extent plaintiff seeks to offer the agreement and settlement as propensity evidence (to try to prejudice the jury against Abbott as a "bad company"), Rule 404(b) prohibits it. Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). The agreement and settlement have no relevance at all, so none of the exceptions in Rule 404(b)(2) could apply. For all of these reasons, the agreement and settlement should be excluded as irrelevant. *See* Fed. R. Evid. 402.

B. **Plaintiff may not use the agreement and settlement to impeach Abbott's witnesses.**

The Depakote agreement and settlement are also inadmissible for purposes of impeachment because no Abbott witness in this case had anything to do with the conduct underlying the government investigation and subsequent plea and settlement agreements. Rules 608 and 609 address when a party can attack a witness's character for truthfulness. *See* Fed. R. Evid. 608 ("Witness's Character for Truthfulness or Untruthfulness"); Fed. R. Evid. 609(a) ("attacking a witness's character for truthfulness by evidence of a criminal conviction"). Under these Rules, certain convictions or prior bad acts may be admitted into evidence only where they bear on a *particular witness's* propensity for falsehood, deceit or deception. *See id.* However, "Rule 609 does not permit corporate convictions to be used to impeach the credibility of employee witnesses who were not directly connected to the underlying criminal act." *Walden v. Georgia-Pacific Corp.,* 126 F.3d 506, 522-24 (3d Cir. 1997).

In *Walden*, some former employees sued their former employer, Georgia-Pacific, for retaliatory discharge under Title VII. At trial, the plaintiffs sought to introduce Georgia-Pacific's pre-suit plea agreement to tax evasion under Rule 609 to impeach several Georgia-Pacific witnesses, "none of whom was shown to have any connection to the acts underlying the

corporate conviction." *Walden*, 126 F.3d at 522. The district court excluded the plea agreement under Rule 403, and the Third Circuit affirmed this holding, stating that a prior corporate conviction could not be used to impeach individual employee witnesses without any evidence that those witnesses participated in the conduct underlying the conviction.[3] *Id.* Because Rule 609 relates particularly to the testifying witness's own character for truthfulness, the Third Circuit explained, "[c]riminal acts are relevant to a witness'[s] credibility only if that witness actually participated in the criminal conduct." *Id.* at 523-24 (citations omitted).

The same is true here. The Abbott witnesses who may be called at trial—Sharon Bottock, Dr. Russell Merritt and Dr. Larry Williams—all worked for Abbott's nutritional products division. They were, variously, involved in labeling, regulatory affairs and medical departments relating to infant formula and nutritionals, not pharmaceuticals of any kind. There has been a long-standing division at Abbott between its nutritional and pharmaceutical businesses, culminating in the split in 2013 of Abbott into Abbott Laboratories (nutritionals and medical technologies) and AbbVie (proprietary pharmaceuticals). Plaintiff never sought any evidence to connect Ms. Bottock, Dr. Merritt or Dr. Williams to the Depakote agreement and settlement, and indeed there is none.

Plaintiff's claims should rise or fall on their own merit, not on unrelated and irrelevant matters that could irreparably prejudice the jury against Abbott. *See, e.g.*, *Walden*, 126 F.3d at 524; *accord United States v. Brown*, 763 F.2d 984, 993 (8th Cir. 1985) ("Because the corporate

---

[3] To the extent plaintiff may argue that the prior conviction is automatically admissible under Rule 609(a)(2), the *Walden* court rejected that argument too. *Id.* at 524 ("[T]he district court is not precluded from determining whether the prior corporate conviction falls within the ambit of Rule 609 at all. *Only if the witness is directly connected to a prior conviction for a crime involving dishonesty or a false statement does Rule 609(a)(2)'s automatic admission provision apply.* To allow Rule 609(a)(2) to apply otherwise would be to 'override the fundamental purpose of impeachment evidence, namely, to expose a defect in the witness's credibility.'" (emphasis added) (citations and internal quotation marks omitted)).

-3-

entity itself does not possess any volitional capacity, the requisite knowledge and willfulness exists only if it is attributable to the Corporation through the acts of its agents."). The Depakote agreement and settlement are not admissible to impeach any potential Abbott employee witness.

      C.      **The agreement and settlement should be excluded under Rule 403.**

In any event, the Depakote agreement and settlement should be excluded under Rule 403 as unduly prejudicial, confusing and a waste of time. *See* Fed. R. Evid. 403. Any arguably probative value of such information is substantially outweighed by the significant risk of unfair prejudice to Abbott, the confusion that the unrelated evidence would cause at trial and the necessary waste of time for Abbott to introduce evidence to respond to the Depakote agreement and settlement. The Depakote agreement and settlement are so far afield from plaintiff's claims that the only purpose in seeking their introduction can be to bias the jury against Abbott.

While its probative value is non-existent, the prejudicial effect of the information is both great and obvious. The mere mention of the words "criminal," "plea agreement" and "settlement," as well as the amount of the resolution, could inflame the jury against Abbott and create an unfair lens through which all other evidence is assessed. Such information implicitly invites the jury to violate Rule 404(a) and consider improper character evidence. It would also derail the trial and force Abbott to devote substantial time and effort to explain to the jury why the information has no impact on Abbott's conduct in this case and plaintiff's claims. In the context of a corporate defendant in a civil case, it is hard to conceive of information that would cause more unfair prejudice than an unrelated plea agreement and civil settlement, particularly when Abbott's anticipated witnesses at trial had no involvement at all in those matters.

Abbott thus respectfully requests an order excluding any evidence or mention of the Depakote governmental investigation, plea agreement and settlement agreement from this trial.

## MOTION IN LIMINE NO. #2:
## INFORMATION REGARDING AN UNRELATED VOLUNTARY RECALL, FACILITY AND PRODUCTS MANUFACTURED AT SUCH FACILITY

In order to succeed on its claims against Abbott, plaintiff must, among other things, prove by a preponderance of the evidence that the subject can of Similac NeoSure PIF contained E. sak when it left Abbott's Casa Grande, Arizona manufacturing facility in 2008. Information about an unrelated facility in Sturgis, Michigan—including information regarding a 2010 voluntary recall of Abbott product produced at that facility that had nothing whatsoever to do with E. sak[4]—is plainly irrelevant to this case. The Sturgis plant did not manufacture the product at issue here, and is a completely separate facility—with different production layouts, different product lines, different employees—located <u>thousands</u> of miles from Casa Grande. Anecdotal, irrelevant information of this nature that has no probative value can only unduly prejudice Abbott's defense, mislead the jury and waste trial time. The unrelated voluntary recall, and information about the unrelated facility, should be excluded under Rules 401, 402 and 403.

### A. Information regarding the 2010 voluntary recall is irrelevant.

Plaintiff does not dispute that there has <u>never</u> been a recall related to either the subject product (Similac NeoSure) <u>or</u> the bacteria (E. sak) in any Abbott product on the U.S. market at any time. Federal courts have consistently found that recall evidence is inadmissible where the defect involved in the recall differs from the one in the dispute. *See, e.g.*, *Hessen ex rel. Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641, 649 (11th Cir. 1990) (recall evidence relevant only if alleged defect "was the same defect involved in the recall"); *Olson v. Ford Motor Co.*, 410 F. Supp. 2d 869, 872-75 (D.N.D. 2006) (granting motion to exclude evidence of recalls related to

---

[4] Abbott initiated the voluntary recall at Sturgis due to the remote possibility of the presence of a small, common beetle in product produced in one area of that plant. Although plaintiff here never sought discovery about Sturgis or the recall, one of plaintiff's experts mentioned it in his report and may attempt to get it before the jury.

defects which were distinct from those alleged by plaintiff as irrelevant); *Shafer v. General Motors Corp.*, No. 95-5585, 91 F.3d 144, *1 (6th Cir. July 2, 1996) ("[T]he introduction of the recall . . . that concerns a potential design flaw other than the one that proximately caused plaintiff's injury, would not have made the determination of the ultimate issue of liability any more or less probable.").

Likewise, federal courts have excluded recall evidence about similar defects when the products covered by the recall are different from the product at issue in the dispute. *See, e.g.*, *Ahlberg v. Chrysler Corp.*, 481 F. 3d 630, 633-34 (8th Cir. 2007) (finding insufficient probative value in recall evidence for a different vehicle); *Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1109 (8th Cir. 1988) (holding admission of evidence of recall for a different model firearm was improper); *Jordan v. General Motors Corp.*, 624 F. Supp. 72, 77 (E.D. La. 1985) (excluding evidence of recall involving different model year vehicle). Thus, information regarding different alleged defects and different Abbott products are irrelevant to plaintiff's claims, have no probative value in the assessment of whether *E. sak* was present in Abbott's NeoSure and should be excluded under Rules 401 and 402.

### B. Information regarding Abbott's Sturgis, MI facility and products manufactured at that facility is irrelevant.

Federal courts also exclude non-subject facility evidence as irrelevant under Rules 401 and 402. In *Verzwyvelt v. St. Paul Fire & Marine Ins. Co.*, 175 F. Supp. 2d 881 (W.D. La. 2001), plaintiffs sought to introduce evidence of the sanitary conditions at defendant's Arkansas meat processing facility to support a products liability claim alleging Listeria contamination of sausage manufactured at defendant's separate Michigan facility. *See id.* at 882, 888. The district court excluded all evidence of the Arkansas plant, finding it irrelevant and unfairly prejudicial, and noting that the plaintiff's claims involved an "entirely different manufacturing facility,

-6-

located at [the] opposite[] end[] of the country." The result should be no different here. *See* Fed. R. Evid. 401-402; *Verzwyvelt*, 175 F. Supp. 2d at 888-89 (excluding evidence of Listeria contamination of hot dog and luncheon meat manufactured in defendant's Arkansas facility when plaintiff's claims related solely to meat product manufactured in defendant's Michigan facility); *see also Scordill v. Louisville Ladder Group, LLC,* No. 02-cv-2565, 2004 WL 307475 (E.D. La. Feb. 17, 2004) (excluding evidence regarding defendant's products manufactured in separate location, finding that the evidence had "minimal probative value").

C. **Information regarding an unrelated recall, a different facility and different product would unfairly prejudice Abbott, confuse the jury and waste time.**

Courts that have excluded evidence of a different facility or product and an unrelated recall on Rule 401 and 402 grounds have also barred such information under Rule 403 as unfairly prejudicial, confusing, misleading and a waste of the courts' and juries' time. *Olson*, 410 F. Supp. 2d at 875 ("Even if the Court were to conclude that any of the recall evidence was relevant, the Court finds that its limited probative value would b[e] substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading of the jury, and by considerations of undue delay and waste of time."); *Verzwyvelt*, 175 F. Supp. 2d at 888-89 ("[D]efendant will be unfairly prejudiced and the jury confused or misled if the plaintiff is permitted to parade before the jury evidence of a product recall and plant closure of a different product, manufactured at a different site from the [product at issue]."); *Jordan*, 624 F. Supp. at 77 ("[E]ven if [the recall of a different year's model of the plaintiff's car] could be broadly construed as constituting relevant evidence, the probative value of such evidence is substantially outweighed by the danger of unfair prejudice and the possibility of misleading the jury."); *see also Ahlberg*, 481 F.3d at 633-34.

-7-

Here, any mention of an unrelated, 2010 voluntary recall of a different product made at the Sturgis, MI plant due to the alleged presence of beetles in an area of that Michigan facility would unfairly prejudice Abbott at trial. Abbott would be compelled to engage in a trial within a trial defending that voluntary recall, involving another facility and its products, none of which has ever been litigated or discovered in this case and thus there are no documents or fact witnesses on such unrelated topics. Moreover, the risk that such information would be confused for proof in this case about the state of the Casa Grande facility and the NeoSure product at issue here, potentially leading to a verdict on improper grounds, is severe. The only purpose to comment about these unrelated matters through expert opinion is to confuse and mislead the jury, and to try to gain some improper advantage over Abbott through misleading innuendo. Because the admission of testimony or information regarding a voluntary recall, or Abbott's Sturgis plant and Sturgis products will inevitably result in unfair prejudice, confusion of the issues and undue delay, any such information should be excluded on Rule 403 grounds as well.

Thus, Abbott respectfully requests an order excluding any evidence or mention of an unrelated voluntary recall, Abbott's Sturgis plant or products manufactured at that plant at trial.

### MOTION IN LIMINE #3:
### ANECDOTAL CASE REPORTS OF E. SAK ILLNESS

Abbott anticipates that plaintiff, through its experts Janine Jason and Jim Farmer, will attempt to introduce anecdotal case reports collected by non-party investigators about other children who developed E. sak infections. These second, third or fourth-hand reports—which come from a variety of governmental and non-governmental sources—relate exclusively to infants other than J.K. Abbott, therefore, has been barred from acquiring any of the underlying documentation in those cases—including medical records—due to HIPAA protections along with other federal and state law prohibitions on the disclosure of information regarding non-party,

-8-

minor children.  Such anecdotal summary reports should be barred because they are irrelevant to plaintiff's claims, including the issue of "notice," they are unreliable and contain insufficient information to establish causation, they constitute inadmissible hearsay and, even if otherwise admissible, their probative value would be greatly outweighed by their prejudicial impact, their propensity to confuse the jury and the waste of time that would occur if Abbott were forced to respond to them.

A.   **The reports are irrelevant because they relate to other occurrences and there can be no showing that they are substantially similar to the case at hand.**

Anecdotal reports of E. sak illness in other infants are inadmissible because there has been and can be no showing that they are substantially similar to the facts alleged here. Evidence of prior incidents or occurrences is not readily admitted into evidence because such evidence can often result in unfair prejudice, consumption of time and distraction of the jury to irrelevant, collateral matters.  *Katzenmeier v. Blackpowder Prods., Inc.*, 628 F.3d 948, 951 (8th Cir. 2010) ("Unless the facts and circumstances of other incidents are 'substantially similar,' such evidence is inadmissible because admitting such evidence could raise extraneous controversial issues, confuse the issues, and be more prejudicial than probative." (quoting *Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1081 (8th Cir. 2000)).  Without a showing of "substantial similarity," case reports do not assist the jury in determining any fact in issue in the instant case and should be excluded.  *See Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322, 1332 (8th Cir. 1985) (finding that before evidence of other accidents is relevant, it must be established that the *circumstances* of the other accidents are substantially similar to the facts at issue in case at bar); *Thomas v. Chrysler Corp.*, 717 F.2d 1223, 1224 (8th Cir. 1983) (excluding the testimony of two van owners who would have testified that their van doors opened while their vehicles were in motion because plaintiff had failed to establish sufficient similarity of *product conditions* and

*circumstances of the accidents*).  Thus, before any evidence of other incidents is admissible for any purpose, including "notice,"[5] plaintiff must meet a heavy affirmative burden of proving that the other incidents involved circumstances substantially similar to the circumstances of this case.[6]  *Hale*, 756 F.2d at 1332; *Ahlberg*, 481 F.3d at 632, 637 n.3 ("We acknowledge that the customer complaints could have been offered for a non-hearsay purpose—notice—but the accidents described in these complaints still must satisfy the substantial similarity standard for admissibility.").

The summarized facts of the case reports actually disclosed by plaintiff (via Jason and Farmer) contain substantial differences from the circumstances of this case:  (1) none of the case reports involves Abbott's Similac NeoSure PIF; (2) they address infants with different gestational ages, weights, ages and health conditions; (3) they address infants from different geographical locations with a variety of differing hospital, domestic and out-of-home exposures, person-to-person and environmental contacts and feeding histories—the particulars of which are unknowable and undiscoverable to Abbott.  The infants also differ in the type of observed infections, with many never developing bacterial meningitis.  From these disparate facts, plaintiff cannot conceivably establish "substantial similarity" between the circumstances described in the case reports and the circumstances in this case.  As established by controlling authority, these unrelated case reports are not admissible.

---

[5] The reports are not evidence of "notice," as the reports would have been made to third parties, not Abbott.

[6] The admission of evidence of another incident invites a jury to infer improperly that a dangerous condition existed and that such condition caused the particular accident or injury at issue. "[A]s the circumstances and conditions of the other accidents become less similar to the accident under consideration, the probative force of such evidence decreases [and] . . . the danger that the evidence will be unfairly prejudicial remains."  *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1269 (7th Cir. 1987).  As such, it is the incidents *and their surrounding circumstances* that must be substantially similar, not just the alleged defect.  *Id.*

**B.      Case reports are irrelevant because they are not evidence of causation.**

Plaintiff hopes to get reports of other instances of infant E. sak illness before the jury to try to prove causation through an "association" between E. sak and PIF. It is important to note that the universe of infants plaintiff's experts cite to try to support an "association" with PIF use is approximately 80—out of hundreds of millions of PIF feedings between 1958 and 2010. And, these anecdotal reports often lack the necessary information and facts to make a causation analysis possible, such as whether the infant received PIF exclusively or was also fed breast milk or liquid formulas, the way the PIF feedings were prepared and administered, how and where the product was stored in the home or hospital or other details about the infant's feeding habits. Likewise, the reports often omit information about whether the PIF was tested for E. sak, the testing results, other aspects of the infant's care and other possible sources of infection.

Given these fundamental shortcomings, the Eighth Circuit has long recognized that case reports are not reliable evidence of causation. For instance, the Eighth Circuit reasoned in *Glastetter v. Novartis Pharm. Corp.* that although a case report may "demonstrate a temporal association" between a party's use of a product and the party's illness, "that association is not scientifically valid proof of causation." 252 F.3d 986, 989-90 (8th Cir. 2001) (disregarding material grounded on "case reports and other anecdotal information" since such reports "make little attempt to screen out alternative causes," "frequently lack analysis" and "often omit relevant facts about the patient's condition"). The Eighth Circuit has reached the same conclusion in numerous other cases.[7]   *See Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1209

---

[7] Likewise, case review studies (like Jason's *Pediatrics* article) that rely on case reports also fail as a scientifically valid proof of causation. *See Glastetter v. Novartis Pharm. Corp.*, 107 F. Supp. 2d 1015, 1034 n.18 (E.D. Mo. 2000), *aff'd*, 229 F.3d 1202 (8th Cir. 2000) ("The Court does not believe that texts and treatises that draw an 'association' between [defendant's drug] and [a specific medical condition] based upon case reports make such texts and treatises any more reliable than the case reports on which they rely. As noted supra, case reports are not sufficiently valid to establish the reliability of plaintiffs' experts' opinions with respect to causation.").

n.5 (8th Cir. 2000) ("Case reports are generally not considered reliable evidence of causation."); *Nelson v. Am. Home Prods. Corp.*, 92 F. Supp. 2d 954, 969 (W.D. Mo. 2000) (case reports are not, without more, reliable evidence of causation); *see also Johnson v. Mead Johnson*, 2013 U.S. Dist. Lexis 26815, at *12 (D. Minn. Feb. 27, 2013) (same). Here, too, the case reports fail to make any fact of consequence in this case more or less probable, *see* Fed. R. Evid. 401, and should be excluded. *See* Fed. R. Evid. 402.

> C. **The anecdotal reports are inadmissible hearsay.**

The case reports themselves also constitute classic hearsay, as they reflect statements of third parties who are not subject to cross-examination. *See Pointer v. Texas*, 380 U.S. 400, 404 (1965); *California v. Green*, 399 U.S. 149, 158 (1970). Moreover, the reporting party rarely is a witness to the events reported, *see Saari v. Merk & Co., Inc.*, 961 F. Supp. 387, 398 (N.D.N.Y. 1997), rendering the case reports hearsay within hearsay. Such reports, therefore, should be excluded from evidence at trial. *See* Fed. R. Evid. 801, 802; *Saari*, 961 F. Supp. at 398.

Nor can plaintiff admit the "facts" within these case reports into evidence through its witnesses' testimony. None of plaintiff's witnesses participated in any of the investigations leading to the compilation of the case reports, and none has any personal knowledge of the "facts" reported by each case. *See* Fed. R. Evid. 602. Thus, any testimony about the contents of the reports will amount to inadmissible hearsay. *See* Fed. R. Evid. 801-802. Plaintiff's expert witnesses are also prohibited from introducing the content of the case reports though their own testimony, as Federal Rule 703 precludes admission of such hearsay facts or data through a purported expert's testimony.[8] *See* Fed. R. Evid. 703; *United States v. Grey Bear*, 883 F.2d 1382,

---

[8] Indeed, any opinion testimony on causation relying on these reports would also fail to meet Rule 702's standards of admissibility along with the tenets of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). *See* Fed. R. Evid. 702 (explaining that an expert's opinion testimony must "be based on sufficient facts or data" and the

1392-93 (8th Cir. 1989), *cert den.*, 493 U.S. 1047 (1990) (stating Rule 703 does not allow an

expert to "circumvent the rules of hearsay"); *see also Loeffel Steel Prods. v. Delta Brands, Inc.*,

387 F. Supp. 2d 794, 808 (N.D. Ill. 2005).

> D.   **Any probative value of the case reports is substantially outweighed by their prejudicial impact and risk of confusing the jury.**

In any event, the negligible probative value of case reports is easily outweighed by their

prejudicial impact, confusion of the jury and the waste of time that would occur if Abbott were

required to respond to such evidence.  *See* Fed. R. Evid. 403.  As this case demonstrates,

evaluating the cause of an infant E. sak infection requires detailed scrutiny of the diagnosis of the

infant's particular condition, the progression of the illness, testing of feeding sources and the

environment, caregivers' hygienic practices and alternative vectors of infection.  If plaintiff were

allowed to introduce the contents of case reports, Abbott would be forced to show why none of

these reports supports a conclusion that formula caused the illness.  Thus, each case report would

require a "mini-trial" on its contents, impermissibly shifting the jury's focus away from the facts

of the case at hand.  *See Crump v. Versa Prods.*, 400 F.3d 1104, 1109 (8th Cir. 2005) (noting that

there is a danger that "evidence of other injuries may also raise extraneous controversial points,

lead to confusion of issues, and present undue prejudice disproportionate to its usefulness");

*Lovett*, 201 F.3d at 1081; *Drabik v. Stanley-Bostitch, Inc.*, 997 F.2d 496, 508-09 (8th Cir. 1993).

To make matters worse, Abbott would be required to mount such a defense even though it was

---

(continued…)

"product of reliable principles and methods," along with meeting other requirements).  To satisfy the reliability requirement of Rule 702, a party must show by a preponderance of the evidence both that the expert is qualified to render her opinion and that the facts and methods underlying her conclusions are scientifically valid.  *See Junk v. Terminix Int'l Co. Ltd.*, 594 F. Supp. 2d 1062, 1066 (S.D. Iowa 2008) (citing *Daubert*, 509 U.S. at 589-90).  As shown above, case reports (and an expert's reliance on those reports) is an unreliable means of establishing causation.  *See Brumbaugh v. Sandoz Pharm. Corp.*, 77 F. Supp. 2d 1153, 1156 (D. Mont. 1999) (excluding expert's causation opinion where opinion was based on case reports that had been rejected as reliable scientific evidence); *see also Glastetter*, 252 F.3d at 989 (citing Fed. Jud. Center, Manual of Scientific Evidence (2d ed.) at 475).

-13-

prevented from seeking the underlying records of these unrelated cases due to privacy protections. Plaintiff, though its experts, should not be allowed to confuse the jury by mentioning summary statements made in case reports which it knows cannot be tested using the underlying data and documents.

Admission of any reports about infants that developed E. sak infections while using PIF—regardless of any other factors present—would also create the substantial risk that jurors would impermissibly infer that PIF caused J.K.'s injuries because case reports state that some infants with E. sak infections have a history of PIF use (even though causation was not established in those cases). Such an inference would unfairly prejudice Abbott, likely enflaming the jury and potentially resulting in a verdict based on their opinions about other infants' illnesses rather than the evidence specific to Abbott and its product. *United States v. Gabe*, 237 F.3d 954, 959-60 (8th Cir. 2001) (noting that "unfair prejudice," within the meaning of Rule 403, means having an "undue tendency to suggest decision on an improper basis" (quoting *United States v. Yellow*, 18 F.3d 1438, 1442 (8th Cir. 1994)); *United States v. Iron Hawk*, 612 F.3d 1031, 1040 (8th Cir. 2010) ("Unfair prejudice speaks to the capacity . . . to lure the factfinder into declaring guilt on a ground different from proof specific to the offence charged."). Because of the many unfairly prejudicial effects admission of anecdotal case reports would cause, including the likelihood of juror confusion, waste of time from mini-trials and possibility of returning a verdict based on emotion rather than evidence, these reports must be excluded under Rule 403.

For the foregoing reasons, Abbott respectfully requests that the Court exclude from trial any evidence or mention of anecdotal case reports regarding other infants with E. sak infections.

-14-

<u>**MOTION IN LIMINE #4:**</u>
<u>**PROHIBITION OF CUMULATIVE EXPERT TESTIMONY**</u>

Plaintiff's retained experts, including three microbiologists and a pediatrician, present substantially duplicative and unduly cumulative evidence which should not be allowed. Specifically, two of plaintiff's microbiologists—Catherine Donnelly and Farmer—intend to opine on causation covering the same or substantially similar territory, each relying on their backgrounds in microbiology. Scott Donnelly, Catherine Donnelly's husband, is also a microbiologist who parrots many of the same opinions. Their opinions are virtually identical in arguing that: (a) Abbott's Casa Grande facility likely contained E. sak; (b) the CDC, FDA and Abbott's finished product testing protocols and Abbott's environmental testing *might* have missed E. sak that *might* have been present when they all did their respective testing; (c) if a batch of infant formula contained E. sak, it would be unevenly distributed in the batch; and (d) the infant's environment and caregivers were unlikely sources of E. sak infection. Finally, the pediatrician, Jason, rehashes all the above, and relies on these other experts' opinions, Farmer's especially, to add her own microbiological opinion, which she self-admittedly is unequipped to give.

This Court "may limit or exclude expert testimony which is cumulative." *Finke v. Hunter's View, Ltd.*, 596 F. Supp. 2d 1254, 1260 (D. Minn. 2009) (applying Fed. R. Evid. 403). Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Eighth Circuit courts routinely exclude duplicative and cumulative expert testimony.[9] For example, in *Kuiper v. Givaudan, Inc.*, this Court examined whether the plaintiff could offer

---

[9] *See Porter-Cooper v. Dalkon Shield Claimants Trust*, 49 F.3d 1285, 1287 (8th Cir. 1995) (upholding trial court's exclusion of cumulative expert testimony); *Van Dyke v. Coburn Enterprises, Inc.*, 873 F.2d 1094, 1101 (8th

cumulative evidence on medical condition, diagnosis, prognosis and causation.  *See* 602 F. Supp. 2d 1036, 1050 (N.D. Iowa 2009) (Bennett, J.).  Although the court allowed the plaintiff to call multiple medical experts in its case in chief, it granted the motion in part, noting that "the court may well limit their testimony at trial to the extent that it is cumulative."  *Id.*

Similarly, in *Finke*, a sister Eighth Circuit court considered whether defendants could present expert testimony from two witnesses with engineering backgrounds, both of whom planned to testify about product warnings and features of the allegedly defective tree stand at issue.  596 F. Supp. 2d at 1261-63.  The Court, applying Rule 403, refused to permit such duplicative testimony, and concluded that it would specify the areas of permissible testimony for each expert so that their testimony would not overlap.  *Id.* at 1263; *see also Upsher-Smith Labs., Inc. v. Mylan Labs., Inc.*, 944 F. Supp. 1411, 1440 (D. Minn. 1996) ("To permit the repetitious opinion testimony that [defendant] has proposed will impermissibly delay the just, speedy and inexpensive resolution of this action.").

Here, plaintiff's experts' testimony is similarly duplicative, if not more so.  Like the expert witnesses in *Finke*, Catherine Donnelly and Farmer propose to testify with similar credentials and experience, both as causation experts, reaching the same conclusions and "sub-

---

(continued…)

Cir. 1989) (same); *Froemming v. Gate City Fed. Sav. & Loan Ass'n*, 822 F.2d 723, 732 (8th Cir. 1987) (upholding district court's exclusion of cumulative expert testimony providing a second opinion as to the market value of a mall); *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1101 (8th Cir. 1982) ("Fed. R. Evid. 403 expressly permits testimony to be excluded if the district court concludes it would be a needless presentation of cumulative evidence."); *Kuiper*, 602 F. Supp. 2d at 1050 (granting in part and denying in part defendant's motion in limine to bar plaintiff's medical experts from presenting cumulative evidence of plaintiff's medical condition and causation by allowing plaintiff to call multiple medical experts, but stating that "the court may well limit their testimony at trial to the extent that it is cumulative"); *Finke*, 596 F. Supp. 2d at 1260, 1262-64 (excluding cumulative expert testimony by defendant's experts, stating "[u]nder Rule 403, 'a court may limit or exclude expert testimony which is cumulative'" (quoting *Upsher-Smith Labs., Inc. v. Mylan Labs., Inc.*, 944 F. Supp. 1411, 1440 (D. Minn. 1996)); *Sappington v. Skyjack Inc.*, No. 04-5076, 2008 U.S. Dist. Lexis. 24633, *5-6 (W.D. Mo. Mar. 27, 2008) (granting motion to exclude duplicative expert testimony and instructing defendant to "determine which of these witnesses it intends to proceed with at trial").

opinions" (a – d above), and relying on the same evidence. Scott Donnelly and Jason will then collectively offer a <u>third</u> (and in some cases, a <u>fourth</u>) pass at each one of Catherine Donnelly's and Farmer's opinions. This is an unnecessary waste of time for the Court and the jury, and a needless presentation of cumulative evidence.

The cumulative nature of the experts' testimony is enough to warrant its exclusion, but in addition the obvious piling on of the same evidence is unduly prejudicial, and even more so when compared to its probative value. *See* Fed. R. Evid. 403; *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 884 (8th Cir. 1998) ("Because '[e]xpert evidence can be both powerful and quite misleading,' a trial court must take special care to weigh the risk of unfair prejudice against the probative value of the evidence under Fed. R. Evid. 403." (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993))). Where two or more experts are allowed to testify on the same subjects, reaching the same conclusions, relying on the same evidence, one right after another, the jury is likely to give more credence to the testimony than it deserves. Here, the piling on of three microbiologists, all saying essentially the same thing only from slightly different work backgrounds, is unduly duplicative and prejudicial.

For these reasons, Abbott respectfully requests that this Court enter an order prohibiting duplicative and cumulative testimony by plaintiff's testifying experts, and ordering: (1) that plaintiff be limited to one expert to give a causation opinion; and (2) that plaintiff be limited to one expert on the topics outlined in items a – d above.

### MOTION IN LIMINE #5:
### OPINION TESTIMONY OUTSIDE OF WITNESSES' AREAS OF EXPERTISE

Plaintiff's experts have submitted exceedingly lengthy opinions that digress onto many subjects, some of which stray from the experts' knowledge bases. However, Rule 702's most basic requirement is that prior to being allowed to offer opinion testimony, an expert must be

qualified by "knowledge, skill, experience, training or education" to offer the opinion given. *See* Fed. R. Evid. 702. Eighth Circuit courts have regularly excluded expert testimony where a proffered expert lacked personal experience in the area of testimony. *See, e.g.*, *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 982 (8th Cir. 2010) (barring clinical psychologist's testimony on the source and concentration of plaintiff's exposure to a toxic gas because the psychologist was not a toxicologist and had no relevant training, experience, or knowledge); *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715-16 (8th Cir. 2001) (holding trial court erred in allowing defendant's expert "to testify beyond the scope of his expertise" and that "the inadmissible opinions expressed by [the expert] prejudiced" defendant); *Smith v. Rasmussen*, 249 F.3d 755, 759 (8th Cir. 2001) (affirming exclusion of a psychiatrist's testimony regarding the effectiveness and necessity of sex reassignment surgery where he lacked experience, training, or knowledge of transgender/sexual disorders); *Weisgram v. Marley Co.*, 169 F.3d 514, 517-21 (8th Cir. 1999) (holding that testimony from three expert witnesses lacked sufficient foundation because it exceeded the scope of the witnesses' expertise and was unreliable under Fed. R. Evid. 702), *aff'd*, 528 U.S. 440 (2000). Plaintiff's experts lack the necessary expertise to opine on a number of topics which they may seek to offer at trial. Those areas of testimony, outlined below, must be excluded.[10]

---

[10] Scott Donnelly has made clear that he did not intend to offer any opinions on causation. (*See* Ex. A, S Donnelly *Kunkel* Dep. 68:1-6, 89:21-90:24.) Scott Donnelly should not, therefore, be able to offer any opinions regarding what caused J.K.'s injury. *See In re Viagra Prods. Liab. Litig.*, 572 F. Supp. 2d 1071, 1084 (D. Minn. 2008) (where an expert declined to offer a causation opinion, the court excluded his testimony on general causation).

A.    **Jason is not qualified to offer opinions on E. sak testing methods.**[11]

Jason, who has no degree in microbiology, offers opinions regarding appropriate testing procedures for E. sak in PIF and factory environments.  Jason, however, admits that she lacks expertise on the analytic methods for detecting E. sak[12]—including DNA-based and culturing testing methods (Ex. E, Jason *Kunkel* Dep. 132:15-133:10, 136:15-18, 140:05-19, 188:20-25; Ex. F, Jason *Burks* Dep. 54:02-05)—having never studied the sensitivity of any testing method (Ex. E 32:16-23), sampled for E. sak (*id.* 32:24-33:08) or worked with the organism in any context (*id.* 33:06-08; Ex. F 279:03-05).  Jason is also unqualified to opine on "effective" finished PIF and environmental testing methods for E. sak, having no expertise in E. sak testing methods themselves (*see supra*) and never having designed a process for finished product or environmental detection of E. sak (Ex. E 37:07-38:09; Ex. F 26:18-20; Ex. G, Jason *Sisk* Dep. 24:07-18).  Indeed, Jason lacks any experience in the field of food safety which would assist in developing applicable testing methods.  (Ex. E 32:06-15; Ex. F 25:13-16, 280:04-06, 281:08-11; Ex. G 22:02-12.)  Jason's opinions on E. sak testing should be barred.

B.    **Catherine Donnelly, Farmer and Jason have no expertise in PIF manufacture or design.**

Catherine Donnelly, Farmer and Jason also offer opinions regarding PIF manufacturing practices, and whether Abbott's manufacturing procedures are appropriate.  However, none of these individuals has the expertise or background necessary to offer opinions on manufacturing procedures.  Catherine Donnelly bluntly admits that she has no expertise in PIF manufacture (Ex.

---

[11] The court should also bar Farmer's opinion testimony regarding "appropriate" finished PIF product and environmental testing for E. sak, as he is not a food safety expert.  (Ex. B, Farmer *Kunkel* Dep. 41:21-42:11; Ex. C, Farmer *Burks* Dep. 266:11-16, 268:08-13; Ex. D, Farmer *Sisk* Dep. 17:14-22, 18:22-19:02.)

[12] An expert's acknowledgement of the limitations of her own expertise is, of course, highly relevant on this point.  *See, e.g.*, *Barrett*, 606 F.3d at 983 (excluding an engineer's testimony regarding the dispersal and concentration of a toxic gas where he lacked experience dealing with the gas, conducted no relevant studies or research and described his role as "looking at regulatory and safety issues" rather than analyzing such issues).

H, C. Donnelly *Kunkel* Dep. 18:10-13; Ex. I, C. Donnelly *Burks* Dep. 105:23-106:04; Ex. J., C. Donnelly *Sisk* Dep. 55:06-23), having never participated in the manufacture of any PIF product or the design of any PIF manufacturing process (Ex. H 18:07-09).  Farmer and Jason also disclaim any expertise in the area (Ex. D 19:09-12; Ex. F 219:17-19, 280:24-281:02), lacking even the most basic knowledge to opine on such a topic, never having been to a PIF factory or having designed a PIF manufacturing process.  (Ex. B 39:04-40:18, 49:17-23; Ex. C 267:16-21; Ex. D 18:19-21; Ex. E 34:18-37:06; Ex. F 281:06-07; Ex. G 23:11-20.)  Here too, such opinions fail to satisfy Rule 702 standards.

Catherine Donnelly, Farmer and Jason also lack the necessary expertise to opine on PIF product design.  Catherine Donnelly admits that she does not know how to design commercially manufactured PIF.  (Ex. H 19:03-11, 20:24-21:02.)  Similarly, Farmer and Jason admit that they lack any background in nutrition and that they do not know how to design commercially manufactured PIF or how to design PIF that is bacteria-free.  (Ex. B 42:12-13, 44:04-14; Ex. C 105:22-106:01, 268:14-24; Ex. D 19:03-08, 20:22-21:03; Ex. E 38:10-14; Ex. G 23:21-24:06, 24:19-25:11.)  Thus, these experts' opinions on manufacturing and design fail Rule 702's requirements.

C.    **Catherine Donnelly, Scott Donnelly, Farmer and Jason are unqualified to offer opinions on warnings or labeling.**

The Donnellys, Farmer and Jason may also seek to offer opinions regarding Abbott's PIF labeling.  Here too, their opinions should be precluded as they all admit to lacking the necessary expertise in product and food labeling (Ex. I 34:21-25; Ex. J 51:23-52:21; Ex. A 11:08-10; Ex. C 105:06-12; Ex. E 271:10-12), having never designed a product label and having no knowledge of

the regulatory requirements for PIF labeling.[13]  (Ex A 11:11-13; Ex. B 38:2-25; Ex. C 267:05-08; Ex. D 18:02-07; Ex. E 269:03-23; Ex. F 27:17-19, 280:18-23; Ex. G 22:17-23:06, 25:12-14, 26:04-09.)  These individuals, therefore, should be barred from offering opinion testimony regarding the adequacy of Abbott's labeling.  *See Burks v. Abbott Labs*, 2013 U.S. Dist. Lexis 2688, *50, 53 (D. Minn. Jan 8, 2013) (barring Farmer and Jason from opining on the adequacy of Abbott's warning labels).

       D.    **Gerald Goldhaber is not qualified to offer opinions regarding the scope of risk posed by PIF, the likelihood PIF caused J.K.'s harm, and should be barred from opining on whether Abbott acted "reasonably."**

Plaintiff's labeling expert, Gerald Goldhaber, offers a variety of opinions on Abbott's labeling.  Goldhaber, however, intends to go far beyond his stated training and expertise, offering opinions about the risks posed by PIF.  Dr. Goldhaber is wholly unfamiliar with such risks and with E. sak itself.  Goldhaber admits that he has neither the medical, scientific or epidemiological expertise necessary to opine on the risks posed by E. sak.  (Ex. K, Goldhaber *Kunkel* Dep. 21:16-11.)  Thus, he does not know how likely it is for E. sak injury to occur with an Abbott PIF product (Ex. L, Goldhaber *Burks* Dep. 33:18-25) or whether the risks associated with use of U.S.-manufactured PIF are distinct from foreign-manufactured brands (*id*. 32:21-33:17).  He is also unaware that E. sak has not been found in any unopened can of PIF manufactured by Abbott and distributed to market (*id*. 34:2-13), and does not know where E. sak can be found, including locations within domestic homes and hospitals (*id*. 56:14-58:25).  Thus, this Court, like its sister Eighth Circuit court, should preclude Goldhaber from opining on the scope of risk posed by

---

[13] Regardless of the contents of their expert reports, plaintiff and its experts Catherine Donnelly and Farmer have agreed not to offer testimony by these witnesses on labeling.  (*See* Ex. H 17:16-17; Ex. B 47:12-48:25.)

PIF.[14]  *See Burks*, 2013 U.S. Dist. Lexis 2688, at *45-46 ("Dr. Goldhaber . . . is not qualified to

opine on the scope of risk posed by PIF[.]").

Goldhaber also attempts to go too far with his opinions, impermissibly invading the

province of the jury.  Here, Abbott anticipates that Goldhaber will not only attempt to testify

about the adequacy of Abbott's labeling, but also that Abbott's acted "unreasonably" when

forming its labels and warnings.  This last step must not be allowed at trial.  And indeed, other

courts that have considered Goldhaber's expert testimony have refused to let him testify to the

"reasonability" of Abbott's actions.  *See id.* ("Dr. Goldhaber will not be permitted to invade the

province of the jury by opining on whether defendants acted reasonably.").  This Court should do

the same here.

Because Catherine Donnelly, Scott Donnelly, Farmer, Goldhaber and Jason lack the

necessary training, knowledge or experience to offer the variety of opinions regarding PIF testing,

manufacture, design, labeling and risk, each of these opinions must be excluded, as described

above.[15]  *See, e.g.*, *Barrett*, 606 F.3d at 982; *Wheeling Pittsburgh Steel*, 254 F.3d at 715-16;

*Rasmussen*, 249 F.3d at 759; *Weisgram*, 169 F.3d at 517-21; *Robertson v. Norton Co.*, 148 F.3d

905, 907 (8th Cir. 1998).

---

[14] Relatedly, Goldhaber states that he is not offering an opinion on causation.  (Ex. K 22:15-20.)  Nor could he, lacking the qualifications to offer such testimony.  *See Burks*, 2013 U.S. Dist. Lexis 2688, at *45-46 ("Dr. Goldhaber . . . is not qualified to opine on . . . the likelihood that PIF caused [the infant's] illness.").  He should be prohibited from offering such testimony at trial.  *See In re Viagra Prods. Liab. Litig.*, 572 F. Supp. 2d at 1084.

[15] In his report, Farmer also suggested that there are financial incentives for PIF manufacturers not to modify their testing or manufacturing processes.  He provides no basis for this assertion, and describes no knowledge of Abbott's financial or business practices to support this opinion.  (*See generally id.*)  These precise opinions were barred by another court in this Circuit under Rule 702.  *See Burks*, 2013 U.S. Dist. Lexis 2688, at *53-54.  They should likewise be barred here.  *See DePaepe v. G.M. Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (barring an expert's opinion that GM altered the design of a sun visor to save money and ruling that the expert was not qualified to opine on GM's motives for the design change).

Dated:  July 19, 2013                    Respectfully submitted,

                                         s/ Gabriel H. Scannapieco
                                         Daniel E. Reidy (admitted *pro hac vice*)
                                           dereidy@jonesday.com
                                         June K. Ghezzi (admitted *pro hac vice*)
                                           jkghezzi@jonesday.com
                                         Gabriel H. Scannapieco (admitted *pro hac vice*)
                                           gscannapieco@jonesday.com Jones Day
                                         JONES DAY
                                         77 West Wacker Dr., 35th Floor
                                         Chicago, IL  60601-1692
                                         Telephone:  (312) 782-3939
                                         Facsimile:  (312) 782-8585

                                         John C. Gray (AT0002938)
                                           John.Gray@heidmanlaw.com
                                         HEIDMAN LAW FIRM, LLP
                                         1128 Historic Fourth Street
                                         P.O. Box 3086
                                         Sioux City, IA  51102-0386
                                         Telephone:  (712) 255-8838
                                         Facsimile:  (712) 258-6714

                                         ATTORNEYS FOR DEFENDANT
                                         ABBOTT LABORATORIES

-23-

<u>**CERTIFICATE OF SERVICE**</u>

I, Gabriel H. Scannapieco, certify that on the 19th day of July 2013, I served the foregoing via electronic delivery to all parties that have filed an appearance in this matter at their e-mail addresses on file with the Court.

**Robert J. King**
**Stephen C. Rathke**
LOMMEN ABDO COLE KING &
STAGEBERG, PA
ISD Center, Suite 2000
80 S. Eighth Street
Minneapolis MN  55402

**Timothy Bottaro**
**Amanda Van Wyhe**
VRIEZELAAR, TIGGES, EDGINGTON,
BOTARRO, BODEN & ROSS, L.L.P.
613 Pierce Street
P.O. Box 1557
Sioux City IA  51102

s/ Gabriel H. Scannapieco

-24-