IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| **THE SECURITY NATIONAL BANK OF SIOUX CITY, IOWA**, as conservator for J.M.K., a Minor,<br><br>PLAINTIFF,<br><br>v.<br><br>**ABBOTT LABORATORIES,**<br><br>DEFENDANT | Case No. 5:11-cv-04017-MWB<br><br>**ABBOTT LABORATORIES' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PRIOR CONVICTIONS AND DRUG USE** |

In its motion *in limine*, plaintiff seeks, in part, to exclude evidence of Troy Kunkel's use of methamphetamines and marijuana, his conviction for violating his probation (the "escape" conviction),[1] and his conviction for child endangerment.[2] This evidence is highly probative impeachment evidence, as it speaks to Mr. Kunkel's ability to remember events that happened over five years ago and his character for truthfulness. As such, Plaintiff's Motion *In Limine* to Exclude Evidence of Prior Convictions and Drug Use should be denied as it applies to Mr. Kunkel's drug use and his "escape" and child endangerment convictions.[3]

---

[1] Plaintiff's briefing refers to this as a conviction for "escape." This misconstrues the nature of Kunkel's 2005 conviction, which was for violating various terms of his probation, including failing to obey all laws by committing the criminal offenses of Absence from Custody and Contempt of Court, failing to complete the Residential Treatment Facility program by absconding from same, failing to obtain prior permission before changing residency, and failing to abstain from alcohol and illegal drugs by using marijuana. (*See* Ex. A, Order re: Probation Revocation Hearing.)

[2] Plaintiff's briefing refers to this as a 2003 conviction for child endangerment. While the offense took place in November 2003, Kunkel pleaded guilty in May 2004. (*See* Ex. B, 2004 Guilty Plea.)

[3] Plaintiff also moves to exclude Megan Surber's 1993 theft conviction, Troy Kunkel's 2000 assault conviction and 2007 guilty plea for illegal dumping on public land, and Gerald Goldhaber's 2003 guilty plea for marijuana possession. Abbott does not intend to introduce these particular convictions as impeachment evidence at trial, and, as such, does not object to their exclusion.

-1-

# ARGUMENT

### A. Troy Kunkel's Drug Use Is Probative of His Ability To Remember Events in this Case and Should Be Admitted.

Abbott must be allowed to examine Troy Kunkel's ability to recall the events surrounding his interactions with J.K., his maintenance of the family home, and his health status in April 2008. Mr. Kunkel's extensive past drug use speaks directly to his ability to recall these events properly and should be admitted at trial. *See United States v. Cameron*, 814 F.2d 403, 404-05 (7th Cir. 1987) ("Evidence that a witness has used illegal drugs may be probative of the witness'[s] possible inability to recollect and relate." (internal citations omitted)).

Mr. Kunkel has admitted that he used methamphetamines in the past—including before and after J.K.'s birth—and until approximately 2011. (Ex. C, Kunkel Dep. 47:25-48:9 & Ex. 20 ("Q. When was the last time you used meth? A. Over a year ago. Q. So sometime in 2011? A. Uh-huh (Yes)."); *see also id.* 45:6-10, 45:25-46:8.) Mr. Kunkel also testified to using marijuana at or shortly after the time of J.K.'s birth and home stay in April 2008, upon her return from treatment at Children's Hospital of Omaha in June 2008, and as recently as 2012. (*See id.* 158:5-8 ("I might have went to the bar one night with a bunch of friends to celebrate having kids and somebody popped out a joint, you know."), 156:6-157:5 & Ex. 20 (marijuana use in April 2008), 158:16-159:22 (testifying to marijuana use in "early April" 2008), 47:4-13, 47:25-48:9 (testifying to using marijuana upon return from Omaha in 2008), 47:14-21 (use of marijuana within a year of his July 2012 deposition); s*ee also id.* 45:6-8, 46:25-47:3 (marijuana use "off and on" until recently).)

Peer-reviewed, published research and studies indicate that methamphetamines "deleterious[ly]" affect their users' memories. *See, e.g.*, Ex. D, Van Wyk & Stuart, *A Comparative Study of the Effects of Methamphetamine on Memory in Existing and Recovering*

*Addicts from a South African Population*, Health SA Gesondheid 17(1) Art. 607, July 16, 2012, at 6; Ex. E, DrugFacts: Methamphetamine, National Institute on Drug Abuse, http://www.drugabuse.gov/publications/drugfacts/methamphetamine, rev. Mar. 2010 ("Recent studies in chronic methamphetamine abusers have . . . revealed severe structural and functional changes in areas of the brain associated with emotion and memory[.]"); Ex. F, Volkow et al., *Association of Dopamine Transporter Reduction with Psychomotor Impairment in Methamphetamine Abusers*, Am. J. Psychiatry 158:377-382, 380 (2001) ("This study documented significant dopamine transporter reduction in detoxified methamphetamine abusers . . . that was associated with poor motor and memory performance."). Marijuana use has also been shown to have negative effects on memory. *See* Ex. G, Han et al., *Acute Cannabinoids Impair Working Memory Through Astroglial CB1 Receptor Modulation of Hippocampal LTD*, Cell 148, 1039-50, 1039 (2012) ("Impairment of working memory is one of the most important deleterious effects of marijuana intoxication in humans[.]"); Ex. H, Messinis et al., *Neuropsychological Deficits in Long-Term Frequent Cannabis Users*, Neurology, vol. 66 no. 5, Mar. 14, 2006, at 737-39 (finding that both long- and short-term marijuana users performed significantly worse on tests of memory and attention).

Mr. Kunkel's drug use before, during, and after the relevant events in this case likely affected his ability to form memories at the time the events occurred, and affects his ability to remember and testify credibly about the details of those events now. For these reasons, this Court, like other federal courts before it, should allow Abbott to impeach Mr. Kunkel with evidence of his past methamphetamine and marijuana use on cross-examination. *See, e.g.*, *Cameron*, 814 F.2d at 404-05 (a witness's use of illegal drugs is "probative of the witness'[s] possible inability to recollect and relate"); *United States v. Hodge*, 594 F.3d 614, 618 (8th Cir.

2010) ("Prior drug abuse may be relevant when the witness's memory or mental abilities are legitimately before the court."); *United States v. Dixon*, 38 F. App'x 543, 548 (10th Cir. 2002) ("Evidence of a witness's drug use may be admitted to show the effect of the drug use on the witness's memory or recollection of events." (citing *United States v. Smith*, 156 F.3d 1046, 1054-55 (10th Cir. 1998)); *United States v. Ramirez*, 871 F.2d 582, 584 (6th Cir. 1989) (noting that fact of drug use or addiction is appropriate subject for impeachment on cross-examination); *DiJoseph v. Vuotto*, 968 F. Supp. 244, 249 (E.D. Pa. 1997) (finding it proper to permit the defense to question plaintiff regarding drugs and drug paraphernalia because "[d]rug use [went] directly to the issue of [plaintiff's] credibility and perception of the incidents as they occurred").

Plaintiff's two arguments for exclusion of such evidence are not sufficient to overcome the relevance and probative value of Mr. Kunkel's past drug use. In arguing for exclusion under Rule 608(b)(1), plaintiff only cites cases where a party sought to introduce evidence of illegal drug use (or distribution) for the purpose of showing the witness's character for truthfulness. But Abbott does not seek admission of the evidence for this reason, but rather for the permissible purpose of showing that Mr. Kunkel's memory has likely been severely damaged.

Plaintiff's Rule 403 arguments are equally misplaced. Indeed, the Eighth Circuit has found that admission of a witness's drug use is not "unfairly" prejudicial.[4] *See Manatt v. Union Pac. R.R.*, 122 F.3d 514, 517 (8th Cir. 1997) (finding that district court's admission of decedent's past drug use in wrongful death action was not "unfairly prejudicial" and did not divert the jury's attention from the material issues in the trial); *see also United States v. Varner*, 678 F.3d 653, 658 (8th Cir. 2012) (finding district court did not abuse its discretion in admitting evidence that

---

[4] Mr. Kunkel is not a party to the case and there is no reason to suggest that the jury would somehow impute his history of drug use onto J.K. or plaintiff Security National Bank. To the extent there is any risk of confusion, the proper remedy is a limiting instruction and not the exclusion of Abbott's highly probative impeachment evidence.

defendant was in possession of a crack pipe in case involving charge of felon in possession of a firearm where district court gave limiting instruction regarding purpose of drug-paraphernalia evidence). And, plaintiff's citation to the extraterritorial cases of *Harless v. Boyle-Midway Div., Am. Home Prods.*, 594 F.2d 1051 (5th Cir. 1979) and *Meller v. Hiel Co.*, 745 F.2d 1297 (10th Cir. 1984) does not change the analysis, as those cases are fundamentally unlike the case at hand.[5] While plaintiff may not like the fact that a key witness may have impaired his ability to recall information relevant to its claims, that does not render evidence of Mr. Kunkel's past drug use "unfairly prejudicial," and controlling law establishes that Abbott may use such evidence to test Mr. Kunkel's ability to testify reliably at trial.

### B. Troy Kunkel's Conviction for Violating His Probation Was the Result of Dishonest Acts and False Statements and Must Be Admitted.

Troy Kunkel was convicted of child endangerment in 2004 and received a 2-year suspended sentence, subject to completion of a 2-year probation. As part of the terms of his probation, Mr. Kunkel signed a probation agreement, in which he agreed, among other things: (1) "I will obey all laws"; (2) "I shall obtain advanced permission from my supervising officer before changing or quitting a job"; (3) "I shall obtain prior permission from my supervising officer before changing residency"; (4) "I will report to my supervising officer in person as directed, and shall not lie to, mislead, or misinform my supervising officer either by statement or

---

[5] In *Harless*, the Fifth Circuit held that evidence of the decedent's one-time marijuana use was only "tenuous[ly]" relevant to the issue of the value of decedent's lost life to his plaintiff-mother and that its minimal probative value was outweighed by the prejudicial nature of the evidence in relation to the decedent's character. 594 F.2d at 1057. The case did not address the use of such evidence to impeach the reliability of a non-party witness's testimony. *Meller* is equally off-topic. In that case, plaintiff alleged that her husband had died, pinned between a dump bed and the chassis of his truck, due to defendant's defective design of the truck. 745 F.2d at 1298. The Tenth Circuit upheld the exclusion of evidence of two hashish pipes that were found at the scene of the accident, noting that defendant provided no medical foundation for its claim that the decedent's life expectancy was diminished by drug use. *Id.* at 1303. Thus, the court reached its decision because the evidence had no probative value—decedent's potential drug use had nothing to do with the value of his life (and decedent was—obviously—not testifying).

omission of information"; and (5) "I will not use or possess any illegal . . . drugs for which I do not have a valid prescription." (Ex. I, Probation Agreement.)[6]

Mr. Kunkel affirmatively violated every one of these agreements and attempted to cover-up those violations by lying to law enforcement officers and other rehabilitation personnel. Mr. Kunkel's history of deceit is chronicled by a "Major Violation" of his probation in August 2004 for *two counts* of "False Statements" for lying about fighting with residents at his residential treatment facility and *two more* "Major Violations" in October 2004 for "False Statements" for lying about voluntarily quitting his mandatory employment and using illegal drugs. (*See* Ex. J, Report Regarding Termination from Residential Treatment Facility.) Also in October 2004, Mr. Kunkel had a final "Major Violation" for "Escape" because he signed out of the residential facility without informing his parole officer of his whereabouts and in contravention of his agreements to "obtain prior permission from [his] supervising officer before changing residency," to "report to his supervising officer in person," and "not [to] lie to, mislead, or misinform [his] supervising officer either by statement or omission of information." (*Id.*; *see also* Ex. K, Report of Violation.) Mr. Kunkel was found guilty of these and other violations, and, as a result, was terminated from the residential facility. (*See* Ex. J.) In February 2005, Kunkel admitted that he had violated his probation by failing to obey all laws, successfully complete the Residential Treatment Facility program, obtain prior permission before changing residency, and abstain from alcohol and illegal drugs. (*See* Ex. A; *see also* Pltf's Ex. 3 at 191:5-192:12.) His probation was revoked, and a 365-day jail sentence was imposed. (*See* Ex. A.)

---

[6] Abbott notes that all of the exhibits attached to this Opposition are publicly available, and yet Plaintiff failed to attach any of them to its motion *in limine*, choosing instead to cite only cursory sentencing records and deposition testimony.

Use of Mr. Kunkel's probation violation conviction to challenge his character for truthfulness is permitted and proper. Evidence of this conviction is admissible under Rule 609(a)(2) because "establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a)(2); *see also* Conf. Rep. No. 93-1597, 93d Cong., 2d Sess. 9 (1974) ("By the phrase 'false statement or dishonesty' the Conference means crimes such as . . . false statement . . . or any other offense, in the nature of *crimen falsi* the commission of which involves some element of untruthfulness, deceit or falsification bearing on the accused's propensity to testify truthfully."). Indeed, the conviction shows Mr. Kunkel's propensity to lie in three different ways: (1) repeatedly receiving "Major Violations" for "False Statements"—lying to his residential treatment facility officers and his probation officer about everything from fighting to quitting his job to using marijuana; (2) agreeing to certain terms in his Probation Agreement—and then proceeding knowingly to violate those terms; and (3) admittedly absconding from the residential treatment facility and misleading his probation officer through his purposeful omission of information regarding his whereabouts. In short, the evidence demonstrates Mr. Kunkel's propensity to misstate facts or to omit material information when he sees fit. The evidence, therefore, is admissible because it involves "dishonest act[s]" and "false statement[s]" which are directly probative of Mr. Kunkel's character for truthfulness.[7] *See* Fed. R. Evid. 609(a)(2).

---

[7] Plaintiff argues generally that evidence of all of its witnesses' convictions are inadmissible under Rule 609(a)(2) because the Rule does not encompass "[c]rimes of force, such as armed robbery or assault, or crimes of stealth, such as burglary, or petit larceny," drug-related crimes, or theft. (Pltf.'s Mem. MIL, at 5-6 (citing, among other cases, *United States v. Hayes*, 553 F.2d 824, 827-28 (2d Cir. 1977) (upholding admission of evidence of criminal conviction for importation of cocaine).) But, Kunkel's "escape" conviction is not merely one of force or stealth. Kunkel repeatedly lied to his probation officers, and then lied yet again in escaping. His crime involved dishonesty and false statements, and, as such, it is reflective of his character for truthfulness and must be admitted.

Plaintiff's appeal to Fed. R. Evid. 403 does not change the admissibility of this evidence. "Evidence of a conviction requiring proof or admission of an act of dishonesty or false statement is automatically admissible and not subject to Rule 403 balancing by the court." *United States v. Collier*, 527 F.3d 695, 700 (8th Cir. 2008) (collecting cases); *United States v. Miller*, No. CR 09-4014-MWB, 2009 U.S. Dist. Lexis 102035, at *5 (N.D. Iowa Oct. 30, 2009) (Bennett, J.) (same); *see Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 525-26 (1989), *superseded on other grounds by amendment,* 1990 Amendment to Rule 609(a) ("With regard to subpart (2) [of Rule 609(a)], which governs impeachment by *Crimen falsi* convictions, it is widely agreed that this imperative, coupled with the absence of any balancing language, bars exercise of judicial discretion pursuant to Rule 403."); *but see Jones v. Board of Polic. Comm'rs*, 844 F.2d 500, 505 (8th Cir. 1988)). As such, any balancing analysis is improper in connection with the "escape" evidence and an insufficient basis to exclude such evidence from trial.

### C. Kunkel's Criminal Conviction for Child Endangerment Is Admissible Under Fed. R. Evid. 609(a)(1).

This Court should also deny plaintiff's motion to exclude evidence of Troy Kunkel's child endangerment conviction—a second conviction which speaks to Mr. Kunkel's credibility and truthfulness under oath. In December 2003, the State of Iowa filed an information against Mr. Kunkel alleging Child Endangerment. (*See* Ex. L, Trial Information.) The complaint stated that, "During the time frame of 11/10/03 to 11/13/03 . . . defendant was caring for a 3 yr old male child that received numerous bruises to his body and a broken right arm." (Ex. M, Complaint and Affidavit.) In May 2004, Mr. Kunkel pleaded guilty to Child Endangerment, (Ex. B), and received a suspended two-year prison sentence and two years probation. (*See* Ex. N, Sentencing Order; Ex. O, Order *Nunc Pro Tunc*.)

Rule 609(a)(1) requires that evidence of Mr. Kunkel's criminal conviction for child endangerment be admitted for impeachment purposes. Fed. R. Evid. 609(a)(1) ("[F]or a crime that, in the convicting jurisdiction, was punishable by . . . imprisonment for more than one year, the evidence . . . must be admitted, subject to Rule 403, in a civil case . . . in which the witness is not a defendant[.]"). Indeed, the Eighth Circuit has repeatedly held that "prior convictions are highly probative of credibility 'because of the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath.'" *Collier*, 527 F.3d at 700 (quoting *United States v. Chauncey*, 420 F.3d 864, 874 (8th Cir. 2005)) (holding trial court did not abuse its discretion in admitting evidence of witness's credit card fraud conviction). Given the Eighth Circuit's recognition of the "highly probative" nature of past conviction evidence to a witness's credibility, plaintiff's suggestion that the probative value of the conviction is "none," is without legal support. Abbott, therefore, should be allowed to introduce such impeachment evidence at trial.[8]

In response, plaintiff again cites *Meller*, 745 F.2d at 1303, to argue that Abbott's only purpose in seeking admission of the child endangerment conviction is to "arous[e] juror sentiment" against Mr. Kunkel. But, as shown above, *Meller* had absolutely nothing to do with admission of a prior conviction to impeach a witness's character for truthfulness. (*See supra* note 5.) Here, Abbott seeks to admit evidence of Mr. Kunkel's criminal conviction for child

---

[8] The evidence of Kunkel's child endangerment conviction is also relevant to impeach his particular testimony in this case because he intends to testify about his careful childcare habits in relation to the care of J.K. and her siblings. Federal courts have held that convictions involving the treatment of a child, including convictions for child endangerment, are admissible in cases where the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *See, e.g., Brown v. Moran Foods, Inc.*, No. 10-2292, 2012 U.S. Dist. Lexis 5991, *5-7 (E.D. Pa. Jan. 18, 2012) (upholding admission of plaintiff's conviction for child endangerment where she forgot that she left her son in her SUV because it was relevant to her argument that she had never had cognitive difficulties before the events of the case). As such, the evidence must be admitted.

endangerment to impeach his character for truthfulness. The evidence here is far more probative than prejudicial, and should be admitted.

## CONCLUSION

For all the foregoing reasons, Abbott respectfully requests that this Court deny Plaintiff's Motion *In Limine* to Exclude Evidence of Prior Convictions and Drug Use as it relates to Troy Kunkel's past drug use, his 2005 conviction for violating his probation (the so-called "escape" conviction), and his 2004 conviction for child endangerment.

Dated: July 25, 2013

Respectfully submitted,

s/ Gabriel H. Scannapieco
Daniel E. Reidy (admitted *pro hac vice*)
  dereidy@jonesday.com
June K. Ghezzi (admitted *pro hac vice*)
  jkghezzi@jonesday.com
Gabriel H. Scannapieco (admitted *pro hac vice*)
  gscannapieco@jonesday.com Jones Day
JONES DAY
77 West Wacker Dr., 35th Floor
Chicago, IL 60601-1692
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

John C. Gray (AT0002938)
  John.Gray@heidmanlaw.com
HEIDMAN LAW FIRM, LLP
1128 Historic Fourth Street
P.O. Box 3086
Sioux City, IA 51102-0386
Telephone: (712) 255-8838
Facsimile: (712) 258-6714


ATTORNEYS FOR DEFENDANT
ABBOTT LABORATORIES

-11-

Case 5:11-cv-04017-MWB-CJW   Document 115   Filed 07/25/13   Page 11 of 12

## CERTIFICATE OF SERVICE

I, Gabriel H. Scannapieco, certify that on the 25th day of July 2013, I served the foregoing via electronic delivery to all parties that have filed an appearance in this matter at their e-mail addresses on file with the Court.

| | |
|---|---|
| **Robert J. King** <br> **Stephen C. Rathke** <br> LOMMEN ABDO COLE KING & <br> STAGEBERG, PA <br> ISD Center, Suite 2000 <br> 80 S. Eighth Street <br> Minneapolis MN  55402 | **Timothy Bottaro** <br> **Amanda Van Wyhe** <br> VRIEZELAAR, TIGGES, EDGINGTON, <br> BOTARRO, BODEN & ROSS, L.L.P. <br> 613 Pierce Street <br> P.O. Box 1557 <br> Sioux City IA  51102 |

<u>s/ Gabriel H. Scannapieco</u>

-12-

Case 5:11-cv-04017-MWB-CJW   Document 115   Filed 07/25/13   Page 12 of 12