# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| THE SECURITY NATIONAL BANK OF SIOUX CITY, IOWA as conservator for J.M.K., a Minor, | Case No. C11-4017-MWB |
| PLAINTIFF, <br> vs. | **PLAINTIFF'S RESISTANCE TO ABBOTT'S OMNIBUS MOTION IN LIMINE** |
| ABBOTT LABORATORIES, | |
| DEFENDANT. | |

## TABLE OF CONTENTS

I.  ABBOTT'S MISBRANDING CONVICTION IS ADMISSIBLE UNDER FED. R. EVID. 404(B) AND 609(A) ........................................................ 1

    A.  The Misbranding Conviction is Admissible under Fed. R. Evid. 404(b)........................................................................ 2

    B.  The Misbranding Conviction is Admissible under Fed. R. Evid. 609(a)(2) ................................................................. 7

    C.  The Danger of Unfair Prejudice does not Substantially Outweigh the Conviction's Probative Value ................................................ 11

II.  ABBOTT'S 2010 RECALL OF SIMILAC POWDERED INFANT FORMULA IS RELEVANT AND ADMISSIBLE................................................. 12

III.  ABBOTT'S BROAD AND VAGUE REQUEST TO EXCLUDE ALL "ANECDOTAL CASE REPORTS" IS PROPERLY DENIED ................... 14

IV.  ABBOTT'S MOTIONS IN LIMINE NOS. 4 AND 5 ARE PREMATURE AND PROPERLY DENIED ........................................................ 17

    A.  Abbott's "Cumulative" Argument is Premature......................................... 17

    B.  Abbott's Fifth Motion in Limine is a Thinly-Veiled

i

Attempt to Re-Argue <u>Daubert</u>........................................................................19

## **TABLE OF AUTHORITIES**

CASES                                                                            PAGE

<u>Arabian Agriculture Services, Co. v. Chief Industries, Inc.,</u>
309 F.3d 479 (8th Cir. 2002) ..............................................................16

<u>Bleek v. Supervalu, Inc.,</u> 95 F. Supp. 2d 1118 (D. Mont. 2000) .......................................15

<u>Ellis v. International Playtex, Inc.,</u> 745 F.2d 292 (4th Cir. 1984)......................................16

<u>Farner v. Paccar, Inc.,</u> 562 F.2d 518 (8th Cir. 1977) .........................................................14

<u>Fell v. Kewanee Farm Equip.,</u> Co., 457 N.W.2d 911 (Iowa 1990) .....................................4

<u>Hessen for Use and Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc.,</u>
915 F.2d 641 (11th Cir. 1990)..............................................................14

<u>Hickson Corp. v. Norfolk Southern Ry. Co.,</u>
227 F. Supp. 2d 903 (E.D. Tenn. 2002) ..............................................................9

<u>Holt v. Quality Egg, L.L.C,</u> 2011 U.S. Dist. LEXIS 32419 (N.D. Iowa)....................5

<u>Huddleston v. United States,</u> 485 U.S. 681 (1988) ............................................................3

<u>Jannotta v. Subway Sandwich Shops, Inc.,</u> 125 F.3d 503 (7th Cir. 1997)...........................5

<u>Kehm v. Proctor and Gamble Mfg. Co.,</u> 724 F.3d 613 (8th Cir. 1983) ..............................16

<u>Kuiper v. Givaudan, Inc.,</u> 602 F. Supp. 2d 1036 (N.D. Iowa 2009) ..................................17

<u>Lewy v. Remington Arms Co. Inc.,</u> 836 F.2d 1104 (8th Cir. 1988) ....................................16

<u>McElgunn v. CUNA Mut. Group,</u> 2009 WL 1457677 (D.S.D. 2009)................................2

<u>Monell v. Department of Social Services,</u> 436 U.S. 658 (1978) .......................................10

<u>Olson v. Ford Motor Co.,</u> 410 F. Supp. 2d 855 (D.N.D. 2006) .........................................15

<u>Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.,</u>

219 F.R.D. 135 (N.D. Iowa 2003). ..........................................................................19

Seigler v. Fisher-Price, 302 F. Supp. 2d 999 (N.D. Iowa 2004)...........................................4

Sphere Drake Ins. PLC v. Trisko, 226 F.3d 951 (8th Cir.2000)........................................16

Stone v. C.R. Bard, Inc., 2003 WL 22902564 (S.D.N.Y. Dec. 8, 2003) ............................9

United States v. Anderson, 879 F.2d 369 (8th Cir. 1989)...................................................12

United States v. Baykowski, 615 F.2d 767 (8th Cir. 1980) ..................................................4

United States v. Collier, 527 F.3d 695 (8th Cir. 2008) .................................................8, 11

United States v. Crenshaw, 359 F.3d 977 (8th Cir. 2004) .................................................2, 3

United States v. Hawthorne, 235 F.3d 400 (8th Cir. 2000) ................................................11

United States v. Henderson, 416 F.3d 686 (8th Cir. 2005)................................................11

United States v. Johnson, 403 F. Supp. 2d 721 (N.D. Iowa 2005) ...................................15

United States v. LeClair, 338 F.3d 882 (8th Cir. 2003)......................................................15

United States v. Turner, 104 F.3d 217 (8th Cir. 1997) .........................................................3

United States v. Walker, 470 F.3d 1271 (8th Cir. 2006) ......................................................7

U.S. Southwest Bus Sales, Inc., 20 F.3d 1449 (8th Cir. 1994).............................................5

Van Westrienen v. Americontiental Collection Corp.,
94 F. Supp. 2d 1087 (D. Ore. 2000)......................................................................................5

Wade v. Haynes, 663 F.2d 778 (8th Cir. 1981) ................................................................11

Walden v. Georgia-Pacific Corp., 126 F.3d 506 (3rd Cir. 1997)..........................................8

## STATUTES

21 U.S.C. § 321 ....................................................................................................................8
21 U.S.C. § 331 ....................................................................................................................1
21 U.S.C. § 333 ....................................................................................................................1

21 U.S.C. § 352 .................................................................................................1, 2, 8
Iowa Statute § 668A.1(1)(a).................................................................................2, 4, 16

**OTHER AUTHORITIES**
Fed. R. Evid. 105..................................................................................................11
Fed. R. Evid. 401 ...................................................................................................3
Fed. R. Evid. 403...........................................................................................8, 15, 16, 23
Fed. R. Evid. 404 .....................................................................................8, 10, 11, 15, 18
Fed. R. Evid. 609.................................................................................1, 7, 8, 9, 10, 11
Fed. R. Evid. 703 .................................................................................................15
Fed. R. Evid. 801(c)...........................................................................................17
Fed. R. Evid. 803.............................................................................................16, 17

**INTRODUCTION**

Abbott presents five separate motions in limine. Abbott's motions to exclude 1) its criminal misbranding conviction, 2) evidence of a 2010 powdered infant formula recall, and should be denied because the evidence is admissible. Abbott's motions 3) to exclude "anecdotal case reports," 4) to prohibit cumulative expert testimony and 5) to exclude "duplicative" expert testimony are premature, unnecessary and must be denied at this time.

## I. ABBOTT'S MISBRANDING CONVICTION IS ADMISSIBLE UNDER FED. R. EVID. 404(b) AND 609(a).

In May 2012, Abbott plead guilty to the criminal offense of "Introduction of Misbranded Drug into Interstate Commerce" in violation of Title 21, United States Code, Sections 331(a), 333(a)(1), 352(a) and 352(f)(1) (Exhibit 1). In the Plea Agreement Abbott signed in connection with the conviction, Abbott agreed to five years of probation, a $500,000,000.00 fine, a $1,500,000.00 financial sanction, and forfeiture of $198,500,000.00 (Exhibit 2). In the Agreed Statement of Facts Abbott entered into in connection with its guilty plea, Abbott admitted that:

1) its Depakote product was misbranded in that the drugs' labeling lacked adequate directions for use for the control of agitation, aggression, and other behavioral symptoms exhibited by elderly patients with dementia

2) its Depakote product lacked adequate directions for use for the treatment of schizophrenia;

3) its labeling on its Depakote product was misleading; and

4) it promoted Depakote for unapproved uses (Exhibit 3 at paras. 4, 9 and 32)

1

## A.    The Misbranding Conviction is Admissible Under Rule 404(b).

Plaintiff claims the label on Abbott's NeoSure product was defective because of inadequate warnings. Abbott failed to inform consumers of 1) the risk of *Enterbacter sakazakii* infection to low birth weight babies and neonates, 2) the potential harm resulting from such an infection, and 3) the availability in the marketplace of alternative, sterile liquid infant formulas. Abbott's prior conviction for misbranding another product is admissible under Fed. R. Evid. 404(b)(2). Abbott was criminally convicted for placing a false or misleading label on Depokate and for failing to provide consumers with adequate directions. See 21 U.S.C. § 352(a) & (f)(1). The fact that Abbott has shown a willingness to place false and misleading information on its products' labels is probative to show Abbott's intent, plan, knowledge and absence of mistake in this case. In particular, the criminal conviction is relevant to show intent, knowledge and absence of mistake with respect to Abbott's labeling and warning practices and procedures, and the conviction is relevant to both Abbott's failure to warn claim and Plaintiff's punitive damages claim, in which Plaintiff must show Abbott acted with "willful and wanton disregard for the rights and safety of others." Iowa Statute § 668A.1(1)(a).

Rule 404(b) of the Federal Rules of Evidence permits admission of prior convictions and "bad acts" for purposes of showing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid.

2

404(b)(2). Rule 404(b) is a rule of inclusion, <u>United States v. Crenshaw</u>, 359 F.3d 977, 998 (8th Cir. 2004), and it "applies in both civil and criminal cases." <u>McElgunn v. CUNA Mut. Group</u>, 2009 WL 1457677 (D.S.D. 2009), quoting <u>Huddleston v. United States</u>, 485 U.S. 681, 685 (1988). The Eighth Circuit uses a four-part test to determine whether evidence of extrinsic acts is admissible. Such evidence is admissible if (1) it is relevant to a material issue, (2) the extrinsic acts are similar in kind and reasonably close in time to the crime charged, (3) the evidence is sufficient to support a jury finding that the defendant committed the extrinsic acts, and (4) the potential prejudice of the evidence does not substantially outweigh its probative value. See <u>United States v. Turner</u>, 104 F.3d 217, 222 (8th Cir.1997); <u>Crenshaw</u>, 359 F.3d at 998. Abbott's misbranding conviction meets all four criteria and is therefore admissible under Rule 404(b).

*First*, Abbott's misbranding conviction is relevant to Plaintiff's failure to warn claim and Plaintiff's claim for punitive damages. Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Here, Plaintiff alleges that Abbott failed to provide adequate warnings and instructions on its NeoSure label. Abbott's criminal conviction for misbranding is relevant for purposes of showing Abbott's intent, knowledge, and absence of mistake in this regard. See Fed. R. Evid. 404(b). The fact that Depakote is a pharmaceutical product and the product at issue here is a nourishment product for infants is of no moment. Plaintiff's failure to warn claim

3

concerns whether Abbott was aware of a risk associated with its product and whether Abbott failed to warn consumers about that risk. Abbott's criminal conviction shows that Abbott has failed to warn consumers of known risks in the past and has provided false or misleading information to consumers on its labels. In this case, Abbott maintains it did not fail to warn consumers about the risks of *Enterbactor sakazakii*, and the risks posed by NeoSure to low birth weight babies and neonates. Abbott's misbranding conviction shows a willingness to intentionally provide false or misleading information to consumers on its products' labels and is probative of Abbott's intent, plan, knowledge and absence of mistake in failing to warn consumers of known risks associated with its powdered infant formula products.

The misbranding criminal conviction is also admissible to show Abbott's intent, motive and absence of mistake in connection with Plaintiff's punitive damages claim. In order to recover punitive damages, Plaintiff must prove that Abbott's conduct constituted "willful and wanton disregard for the rights or safety of another." Iowa Statute § 668A.1(1)(a). Willful and wanton is an intentional act of unreasonable character in disregard of a known risk usually accompanied with by a conscious indifference to the consequences. Seigler v. Fisher-Price, 302 F. Supp. 2d 999, 1009 (N.D. Iowa 2004), citing Fell v. Kewanee Farm Equip., Co., 457 N.W.2d 911, 919 (Iowa 1990).

Abbott's misbranding criminal conviction is probative of Abbott's willful and wanton conduct and falls squarely within the intent, plan, knowledge and absence of mistake categories of Rule 404(b). Rule 404(b) evidence is admissible to prove an

essential element of an offense.   United States v. Baykowski, 615 F.2d 767, 772-73 (8th

Cir. 1980).  Abbott's intentions and motives are directly at issue in Plaintiff's claim for

punitive damages.  The criminal conviction shows that Abbott has intentionally provided

consumers with false or misleading information on its labels in the past, and that Abbott

has knowingly promoted products for unapproved uses.  The conviction therefore has a

tendency to show Abbott's intentions and motives with respect to labeling its products

and providing adequate warnings and instructions.

At trial, the criminal conviction will be used for the purpose of showing Abbott

acted intentionally and with absence of mistake in failing to adequately warn consumers

of NeoSure in order to establish that Abbott's conduct was "willful and wanton."  See

Jannotta v. Subway Sandwich Shops, Inc., 125 F.3d 503, 517 (7th Cir. 1997) (evidence of

past misrepresentation and outstanding judgments relevant as to defendants' intent and

thus admissible under Rule 404(b) for purposes of determining if punitive damages

should be assessed);   U.S. Southwest Bus Sales, Inc., 20 F.3d 1449, (8th Cir. 1994)

(evidence of participation in Sherman Act conspiracy admissible under Rule 404(b) for

the issues of intent, motive and lack of mistake in separate conspiracy case); Holt v.

Quality Egg, L.L.C., 777 F. Supp. 2d 1160, 1173-74 (N.D. Iowa 2011) ("[P]unitive

damages may be based on 'disregard of know or obvious risk that was so great as to

make it highly probable that harm would follow.' . . .  Evidence supporting such a finding

includes 'evidence of [a] defendant's persistent course of conduct to show that the

defendant acted with no care and with disregard to the consequences of those acts.' . . .  A

5

long history of reckless disregard of health risks to others from a defendant's conduct necessarily is relevant to punitive damages for present conduct"); <u>Van Westrienen v. Americontiental Collection Corp.</u>, 94 F. Supp. 2d 1087, 1109-10 (D. Ore. 2000) (evidence that debt collector threatened separate debtor admissible under Rule 404(b) for punitive damage issue to show that debt collector was operating according to a "plan").

*Second*, the misbranding conviction is similar in kind and not remote in time to Plaintiff's failure to warn claim. The conviction occurred approximately one year ago, and the conduct giving rise to the conviction took place during 1998 through 2006. Jeannine Kunkel was born on April 14, 2008, and became sick with neonatal *Enterobacter sakazakii* meningitis 10 days later.

Abbott's misbranding conviction is also similar in kind to Plaintiff's failure to warn claim. Plaintiff claims Abbott knew NeoSure presented a risk of *E. sakazakii* infection to low birth weight babies and neonates and failed to provide an adequate warning to consumers about these risks despite marketing its NeoSure product directly to premature and low birth weight babies. Similarly, Abbott was convicted of misbranding its Depakote product because it provided false or misleading information to consumers on its label, the label lacked adequate directions, and Abbott promoted Depakote for unapproved uses (Exhibit 3, para. 4) Both the criminal conviction and Abbott's failure to warn claim involve the same conduct: Abbott's knowledge of risks and material information concerning its product and Abbott's failure to adequately warn and inform consumers of such risks.

*Third*, the misbranding conviction is supported by sufficient evidence. Abbott entered into a guilty plea and an Agreed Statement of Facts. Abbott does not dispute the existence of the misbranding criminal conviction.

*Fourth*, the potential prejudice does not substantially outweigh the misbranding conviction's probative value. As mentioned above, Abbott's motive and intent with respect to warning consumers of known risks and material facts is directly at issue in Plaintiff's punitive damages claim and failure to warn claim. The misbranding conviction is highly probative of Abbott's intent, motives, and absence of mistake in mislabeling and misbranding its products. Any potential for prejudice can be mitigated by a limiting instruction reminding the jury that they may only consider the misbranding conviction for a permissible purpose under Rule 404(b). See United States v. Walker, 470 F.3d 1271, 1275 (8th Cir. 2006) ("a limiting instruction diminishes the danger of unfair prejudice arising from admission of the evidence"). Lastly, admission of the misbranding conviction will not absorb significant trial time. Abbott's conviction is undisputed, and Abbott entered into an Agreed Statement of Facts that explains the factual circumstances of the conviction (Exhibit 3).

**B.      The Misbranding Conviction is Admissible under Rule 609(a)(2).**

Rule 609(a)(2) of the Federal Rules of Evidence provides that "for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness admitting—a dishonest act or false statement." The misbranding criminal conviction is

7

admissible under Rule 609(a)(2) because it necessarily requires a finding of a dishonest act or false statement. See 21 U.S.C. § 352(a)[1]. The conviction is also admissible under Rule 609(a)(2) because Abbott admitted to misleading statements on its label in the Agreed Statement of Facts (Exhibit 3, para. 4). Convictions under Rule 609(a)(2) are automatically admissible and not subject to the Rule 403 balancing test. United States v. Collier, 527 F.3d 695, 700 (8th Cir. 2008). Because the misbranding conviction qualifies as a crime required proving "a dishonest act or false statement," and because Abbott admitted to making misleading statements on its labeling, it is per se admissible under Rule 609(a)(2).

There is a split of authority with the respect to whether a corporate conviction can be used to attack the credibility of a corporation's testimony offered through its corporate representatives. Plaintiff's research has not uncovered any authority that is binding on this Court. While Abbott cites Walden v. Georgia-Pacific Corp., 126 F.3d 506 (3rd Cir. 1997), for the proposition that "Rule 609 does not permit corporate convictions to be used to impeach the credibility of employee witnesses who were not directly connected to the underlying criminal," Abbott ignores contrary authority that has admitted corporate

---

[1] 21 U.S.C. § 321(n) states: "If an article is alleged to be misbranded because the labeling or advertising is misleading, then in determining whether the labeling or advertising is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the article to which the labeling or advertising relates under the conditions of use prescribed in the labeling or advertising thereof or under such conditions of use as are customary or usual."

8

convictions under Rule 609 when the corporate representative testifying was not involved in the events giving rise to the conviction. See Hickson Corp. v. Norfolk Southern Ry. Co., 227 F. Supp. 2d 903, 905-06 (E.D. Tenn. 2002); Stone v. C.R. Bard, Inc., 2003 WL 22902564 (S.D.N.Y. Dec. 8, 2003). Unsurprisingly, Abbott prefers the holding in Walden, which insulates corporate defendants from prior convictions and provides corporate defendants "an unreasonable advantage under Rule 609 as compared to a natural person." Hickson, 227 F. Supp. 2d at 906. Hickson and Stone state the better law.

In Hickson, a railroad sought to recover cleanup costs from the owner of a leaky tank car containing arsenic acid. The cargo owner sought admission of the railroad's 1989 felony conviction for improper paint disposal at a different rail yard in a different state. The district court permitted the evidence, reasoning that although Rule 609:

> . . . only refers to the credibility of witnesses and not the credibility of corporations, . . . a corporation can only act through the words and actions of its officers, agents and employees. When such officers, agents, and employees testify on behalf of the corporation, in reality it is the corporation testifying. In such cases it would be reasonable to allow impeachment just as if the corporation was a person. Any other ruling would give the corporation an unreasonable advantage under Rule 609 as compared to a natural person.

Id. at 905-06.

Hickson was closely followed by the court in Stone. Stone involved a fraud claim by a group of doctors against Bard, a medical devices company. Plaintiffs sought to introduce Bard's mail fraud conviction nine years earlier in an unrelated matter. As in

Hickson, the Stone court admitted the conviction under Rule 609. The court first held that the rule's reference to "a witness" should not be construed to exclude corporations, for "a corporation cannot testify as a witness but through testimony of its employees and representatives." 2003 WL 22902564 at *2. The court then reasoned that the plaintiffs:

> are seeking to impeach Bard, not [the witness], as [the witness] is a living embodiment of Bard in the eyes of the jury. Therefore, his testimony concerning Bard's reputation in the industry for "quality, integrity and service," is fairly considered the testimony of Bard itself, and is therefore subject to impeachment by Bard's prior felony convictions. Any other result would permit Bard, through its agent . . . , to put its credibility at issue through testimony about its alleged stellar reputation in the industry, without an opportunity for plaintiffs to impeach that credibility.

Id. at *3.

Plaintiff intends to offer the misbranding criminal conviction to impeach Abbott, not the corporate representatives in their individual capacity. The Abbott representatives who testify at trial are the living embodiment of Abbott in the juror's eyes, and Abbott cannot evade Rule 609 simply because it cannot testify for itself but must act through representatives. See Monell v. Department of Social Services, 436 U.S. 658, 687 (1978) ("corporations should be treated as natural persons for virtually all purposes of constitutional and statutory analysis.").

Abbott's misbranding conviction is a crime involving dishonesty or false statement. Abbott admitted to misleading statements in the Agreed Statement of Facts. The conviction is admissible under Rule 609(a)(2) without a Rule 403 inquiry.

10

**C.    The Danger of Unfair Prejudice does not Substantially Outweigh the Conviction's Probative Value.[2]**

Rule 403 "does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis." Wade v. Haynes, 663 F.2d 778, 783 (8th Cir.1981).    District courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of discretion. United States v. Henderson, 416 F.3d 686, 693 (8th Cir.2005).  The Advisory Committee's Notes to Rule 403 explain that a determination on unfair prejudice should include consideration of the possible effectiveness or lack of effectiveness of a limiting instruction.  FED.R.EVID. 403, Advisory Committee Notes; see also United States v. Hawthorne, 235 F.3d 400, 404 (8th Cir.2000) (finding that relevance of evidence was not outweighed by any potential prejudice within the meaning of either Rule 404(b) or Rule 403 where the evidence was used for a limited purpose and the district court gave a limiting instruction).

Here, the admission of Abbott's misbranding conviction is undoubtedly prejudicial.  Most if not all evidence is prejudicial to one of the parties' case.  But admission of the misbranding conviction is not unfairly prejudicial.  The conviction is properly admitted under Rule 404(b) for purposes of showing intent, motive, plan and absence of mistake.  It is also properly admitted under Rule 609(a)(2) for impeachment purposes.  The court has the means to marginalize the potential for prejudice through

---

[2] If the misbranding conviction is admitted under Rule 609(a)(2) it is not subject to Rule 403's balancing test.  United States v. Collier, 527 F.3d 695, 700 (8th Cir. 2008).

11

appropriate limiting instructions under Fed. R. Evid. 105, which provides: "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." See also United States v. Anderson, 879 F.2d 369, 377-78 (8th Cir. 1989) (approved safeguard against jury prejudice using limiting instruction stating: "[t]his evidence may be considered by you solely for the purpose of determining [defendants'] intent, knowledge, or absence of mistake or accident in the alleged conspiracy . . .").

## II.    ABBOTT'S 2010 RECALL OF SIMILAC PIF IS ADMISSIBLE.

Abbott's 2010 recall of 117,420,638 containers of Similac PIF in 2010 is relevant to the issues of Abbott's sampling and testing of its in finished PIF, and Abbott's manufacturing and control processes. These are both at issue in this case. Plaintiff alleges that the PIF consumed by Jeanine Kunkel was contaminated with *E. sak* and caused her injuries. Abbott denies these allegations. Evidence that Abbott recalled 117,420,628 containers of PIF due to insect contamination, a known source of *E. sak,* is relevant to the issues in this case, even if the recalled PIF originated from a different facility. The recall implicates Abbott's company-wide manufacturing and testing procedures and policies for its PIF.

In the Declaration of John J. Farmer III, Ph.D, he states the following with respect to the 2010 recall:

- Abbott has released products and then recalled them because of contamination, including contamination with pathogenic microorganisms. The most recent Abbott recall covered powdered formula products produced from November 2007 to September 22, 2010 and involved 117,420,638 containers of Similac powdered infant formula products that had been produced at its facility in Sturgis, Michigan. This infant formula was adulterated with adult beetles and beetle larvae.

  . . .

  The methods that Abbott used to sample and test batches of powdered formula for "viable and culturable" bacteria was inadequate to insure that they were free of contamination with E. sakazakii, Enterobacteriaceae, other pathogens, and bacteria which Abbott detected but never tested for their pathogenic potential. The methods that Abbott used were neither sensitive nor specific. [Exhibit 4 at 7, lines 206-22]

- . . . The greatest danger is that when insects come in contact with powdered formula after the final heating step. Insects are known to carry strains of Enterobacteriaceae in their intestines, including strains of Cronobacter/E. sakazakii. When an insect defecates thousands/millions/billions of viable cells of Enterobacteriaceae in the feces are deposited in the environment of the insect. This is a well-established mechanism by which Enterobacteriaceae contaminate food products and the environment. [Id. at 29, lines 1337-43]

- Abbott had such poor control of one of its manufacturing facilities that it had to issue a nationwide recall of over 117 millions of units of Similac powdered formula because it was adulterated. Infants who ingested this adulterated powdered formula were at significant risk of canthariasis, several other kinds of intestinal problems and bacterial infections.

  . . .

  Powdered formula made at Casa Grande may have had a similar problem of adulteration with insects.

  . . .

  There are anecdotal reports of illnesses in infants following ingestion of formula adulterated by insects (parents' comments in relation to the recall as posted in on the internet). Insects typically have strains of Enterobacteriaceae in their intestinal tract, thus it will be interesting to see the complete CDC and FDA files on illnesses and the microbiological results related to this recall. . . .

  An outside pest control agency was apparently used (ABT/B000180) at Casa Grande, but neither Abbott nor the contractor produced records about insect contamination at the Casa Grande production facility. These records are not currently available to me.

13

Ecolabs had a contract as an outside pest control agency (ABT/K00050). Fumigation was done by Karsten Pest Technologies (ABT/K00050). No documents were produced by Abbott for the Casa Grande production facility. Thus, this aspect cannot be evaluated in relation to the Abbott recall due to beetle contamination at its Sturgis, Michigan production facility. Insects can harbor E. sakazakii and insect contamination is a risk factor for contamination of powdered formula with bacterial pathogens. [Id. at 63-64, lines 2945-84].

The recall evidence is relevant to prove that Abbott's testing procedures of batches of powdered infant formula for viable and culturable bacteria are inadequate. The recall evidence also has a tendency to prove Abbott's manufacturing processes are flawed because known sources of E. sak have contaminated the finished product. Although the recalled product originated from a different plant, the same defect is at issue in this case as the recall — i.e., bacterial contamination of powdered infant formula. See Hessen for Use and Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc., 915 F.2d 641, 649 (11th Cir. 1990) (recall evidence is relevant and admissible when the alleged defect is the same). And Abbott's company-wide testing and manufacturing processes and procedure are relevant to Plaintiff's design and manufacturing defect claims. See Farner v. Paccar, Inc., 562 F.2d 518, 527 (8th Cir. 1977) (recall letter is probative both of existence of a designed defect).

## III. ABBOTT'S BROAD AND VAGUE REQUEST TO EXCLUDE ALL "ANECDOTAL CASE REPORTS" IS PROPERLY DENIED.

Abbott requests a blanket ruling from the Court precluding the admission of "anecdotal case reports" collected by non-party investigators about other children who developed E. sak infections" (Abbott Memorandum at 8). Abbott's request in this regard

14

is vague, overbroad and devoid of the specificity required to permit the Court to consider Abbott's motion, or for Plaintiff to effectively respond. Abbott does not identify any specific case reports it claims are inadmissible. Nor does Abbott identify the so-called "anecdotal case reports" in Janine Janson's or Jim Farmer's expert opinions. Courts generally refuse to rule on motions in limine that are vague, speculative, or overbroad and defer ruling on the admissibility of such evidence until trial. See <u>United States v. Johnson</u>, 403 F. Supp. 2d 721, 806 (N.D. Iowa 2005) (ruling that a motion in limine must not be so vague that it prevents the court from determining "what evidence was at issue and what grounds might exist for the admissibility or inadmissibility of that evidence"); <u>Bleek v. Supervalu, Inc.</u>, 95 F. Supp. 2d 1118, 1122 (D. Mont. 2000) (grounds for excluding testimony were too vague and speculative to permit a decision in limine). Abbott's motion in limine regarding "anecdotal case reports of E. sak illness" should be denied on this basis alone. Abbott is not entitled to broad, overreaching pretrial orders that undoubtedly encompass admissible evidence.

Moreover, to the extent Abbott is attempting to attack or question the admissibility or reliability of Plaintiff's experts' opinions, the Court has already ruled Plaintiff's experts' opinion meet the admissibility standards of <u>Daubert</u> and Fed. R. Evid. 702. (ECF 108). Abbott's motion to exclude case reports relied upon by Janine Jason and Jim Farmer is an impermissible collateral attack on this Court's prior order.

And, even if the Court were to find that case reports are not admissible, Plaintiff's experts are permitted to testify about the contents of the case report to explain the basis of

their opinions. "It is well-established that an expert may rely upon evidence not otherwise admissible to form his opinion." Olson v. Ford Motor Co., 410 F. Supp. 2d 855, 864 (D.N.D. 2006), citing Fed. R. Evid. 703, United States v. LeClair, 338 F.3d 882, 885 (8th Cir. 2003) (facts or data that form the basis for an expert opinion need not be admissible in evidence in order for the expert's opinion to be admitted so long as the evidence is a type reasonably relied on by the experts in the field). An expert may "testify about facts and data outside of the record for the limited purpose of exposing the factual basis of the expert's opinion." Id., quoting Sphere Drake Ins. PLC v. Trisko, 226 F.3d 951, 955 (8th Cir.2000).

Further, the case reports are independently admissible to prove knowledge of defects, the ability to cure known defects, the magnitude of the danger, causation, and punitive damages. See Arabian Agriculture Services, Co. v. Chief Industries, Inc., 309 F.3d 479, 485 (8th Cir. 2002); Kehm v. Proctor and Gamble Mfg. Co., 724 F.3d 613, 625-26 (8th Cir. 1983); Lewy v. Remington Arms Co. Inc., 836 F.2d 1104, 1108-09 (8th Cir. 1988). Case reports showing that infants have consumed powdered infant formula contaminated with E. sak and suffered injuries as a result are relevant to Abbott's knowledge of the risk of E. sak in its powdered infant formula, the magnitude of the risk presented by powdered infant formula, causation, and Plaintiff's claim for punitive damages. In particular, the case reports demonstrate that Abbott was aware of the risk presented by E. sak and intentionally choose not to warn consumers in a willful and

16

wanton manner with disregard for the rights or safety of another. See <u>Iowa Statute</u> §
668A.1(1)(a).

Finally, Abbott has not demonstrated that the case reports constitute inadmissible
hearsay. Abbott has not presented any of the case reports it seeks to exclude. Scientific
reports are often admissible under the public records hearsay exceptions under Fed. R.
Evid. 803(8)(C). See <u>Kehm</u>, 724 F.2d at 618-19; <u>Ellis v. International Playtex, Inc.</u>, 745
F.2d 292, 301 (4th Cir. 1984). The burden is on the party opposing admission to
demonstrate that the report is not reliable under Fed. R. Evid. 803(8)(C). <u>Id.</u> Moreover,
case reports may be offered to prove that Abbott had knowledge of the defect. See Fed.
R. Evid. 801(C)(definition of hearsay). Without presenting which case reports Abbott
seeks to exclude as hearsay, the Court cannot evaluate whether case reports are hearsay
or meet a hearsay exception. It is improper for the Court to issue a blanket ruling finding
that all case reports inadmissible without evaluating their contents.

Accordingly, Abbott's motion in limine to exclude "anecdotal case reports of E.
sak illness" is properly denied.

## IV. ABBOTT'S MOTIONS IN LIMINE NOS. 4 AND 5 ARE PREMATURE AND PROPERLY DENIED.

### A. Abbott's "Cumulative" Argument is Premature.

In its fourth motion in limine, Abbott requests that the Court "enter an Order
prohibiting duplicative and cumulative testimony by Plaintiff's testifying experts." This
motion is premature. While the court has discretion to exclude repetitious and

cumulative testimony, it is difficult for the court to determine the necessity and cumulative effect of testimony pretrial. See Kuiper v. Givaudan, Inc., 602 F. Supp. 2d 1036, 1050 (N.D. Iowa 2009). The Court cannot rule on Abbott's hypothetical before trial without the benefit of hearing the evidence of testimony, particularly where Abbott has characterized Plaintiff's expert testimony in broad, general terms. Abbott's motion should therefore be denied.

Moreover, Plaintiff is quite mindful of Rule 403 which provides that otherwise relevant evidence "may be excluded if its probative value is substantially outweighed . . . by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." This trial will involve two weeks of complicated scientific evidence. It is important to Plaintiff to keep the evidence simple and direct as possible. To paraphrase Tallyrand, the needless presentation of cumulative evidence would be worse than a rule violation; it would be a mistake.

On behalf of Plaintiff, four experts will provide opinions relating to causation. Plaintiffs did not hire four experts with the same qualifications in order to provide the same opinions. The testimony and opinions of the first of these four experts will not duplicate anything. When that first expert testifies, the expert may defer to another's opinion. For example, Dr. Jason's training and life experiences may qualify her to provide observations relating to the hygienic conditions and procedures at the Abbott plants. She may, however, defer to Dr. Scott Donnelly who has more expertise in that area.

18

No need exists for an Order requiring Plaintiff to obey Rule 403. Plaintiff's own self-interest requires compliance. Moreover, both Abbott and the Court will monitor the testimony to determine if a question put to Expert No. 3 or Expert No. 4 calls for duplicative evidence. The process will discipline itself and, if Plaintiff pushes the envelope, the Court has the power to make appropriate rulings as the evidence develops. Finally, Abbott's cross-examination of one expert may well open the door to testimony from a subsequent expert addressing the same subject matter.

**B. Abbott's Fifth Motion in Limine is a Thinly-Veiled Attempt to Re-Argue Daubert.**

Defendant's fifth motion in limine is an attempt to take another bite at the Daubert apple. On March 20, 2013, Abbott moved this court "for an Order excluding or limiting expert testimony of three of Plaintiff's experts – Catherine Donnelly, James Farmer, and Janine Jason . . ." based upon Rule 702. The Court denied Abbott's Daubert motion and stated "submission of the experts' opinions to a jury is warranted" (ECF 108 at 20). In this motion in limine, Abbott invokes Rule 702 in its argument that some experts are not qualified to give opinions on some topics. Abbott has no right to use the motion in limine process in order to raise Daubert issues that it neglected in the first go-round. Obviously, Abbott could have made those points in its Daubert motion, but declined to do so. In effect, in March, Abbott attempted to hit a home run, but struck out. Now, Abbott wants a re-bat in order to see if it can hit a few singles. Abbott's motion must be denied. Abbott's motion goes to the weight of Plaintiff's experts' opinion, their admissibility has

already been determined. The weight given to an expert's opinions is an issue for the jury. Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc., 219 F.R.D. 135, 140 (N.D. Iowa 2003).


LOMMEN, ABDO, COLE, KING & STAGEBERG, P.A.


Dated: August 2, 2013     BY  /s/ Stephen C. Rathke
                                Stephen C. Rathke
                                2000 IDS Center
                                80 South 8th Street
                                Minneapolis, MN 55402
                                Phone: (612) 339-8131

                                and

                                VRIEZELAAR, TIGGES, EDGINGTON,
                                BOTTARO, BODEN & ROSS, L.L.P.
                                Amanda Van Wyhe and Timothy Bottaro
                                613 Pierce Street
                                P.O. Box 1557
                                Sioux City, IA 51102
                                Phone: (712) 252-3226

                                *ATTORNEYS FOR PLAINTIFF*