**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

THE SECURITY NATIONAL BANK OF
SIOUX CITY, IOWA, as Conservator for
J.M.K, a Minor,

        Plaintiff,

vs.

ABBOTT LABORATORIES,

        Defendant.

No. C 11-4017-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING THE PARTIES'
MOTIONS IN LIMINE AND
DEFENDANT'S MOTION TO STRIKE
A "SUMMARY" EXHIBIT**

**FILED UNDER SEAL**

———————————————

**TABLE OF CONTENTS**

I.   **INTRODUCTION**................................................................3

II.  **LEGAL ANALYSIS** ......................................................4
    A.   *Standards For "Bad Acts" Evidence*............................4
        1.   *Rule 608 and evidence of a witness's character for truthfulness*....................................................4
        2.   *Rule 609 and evidence of a witness's criminal convictions*.........................................................5
        3.   *Rule 403 and the balance of probative value against prejudice* ........................................................7
        4.   *Rule 404(b) and evidence of a party's "bad acts"*....................9
    B.   *The Conservator's Motion In Limine*.........................11
        1.   *Evidence still in dispute* .....................................11
        2.   *The "child endangerment" conviction* ...............12
            *a.*   *Arguments of the parties* ......................12
            *b.*   *Analysis* ...............................................13
        3.   *The "probation violations" conviction* ...............16
            *a.*   *Arguments of the parties* ......................16

     *b.*  *Analysis* ................................................................. 17

    **4.**  *Mr. Kunkel's admission of past drug use* ........................... 21

     *a.*  *Arguments of the parties* ..................................... 22

     *b.*  *Analysis* ......................................................... 23

  **C.**  *Abbott's Omnibus Motion In Limine* ....................................... 25

    **1.**  *Evidence of the plea and settlement relating to "Depakote"* ............................................................... 25

     *a.*  *Arguments of the parties* ..................................... 26

     *b.*  *Analysis* ......................................................... 27

      *i.*  *Admissibility under Rule 404(b)* ..................... 27

      *ii.*  *Admissibility under Rule 609(a)(2)* .................. 28

    **2.**  *Evidence of the 2010 PIF recall* ................................. 33

     *a.*  *Arguments of the parties* ..................................... 34

     *b.*  *Analysis* ......................................................... 35

    **3.**  *"Anecdotal" case reports of other E. sak infections* .............. 38

     *a.*  *Arguments of the parties* ..................................... 38

     *b.*  *Analysis* ......................................................... 39

    **4.**  *Duplicative and cumulative expert testimony* ...................... 41

     *a.*  *Arguments of the parties* ..................................... 41

     *b.*  *Analysis* ......................................................... 42

    **5.**  *Expert opinions outside the experts' areas of expertise* ................................................................. 43

     *a.*  *Arguments of the parties* ..................................... 44

     *b.*  *Analysis* ......................................................... 44

  **D.**  *Abbott's Motion To Strike A "Summary" Exhibit* ......................... 45

    **1.**  *Arguments of the parties* .............................................. 45

    **2.**  *Analysis* ................................................................. 47

**III.**  ***CONCLUSION*** ................................................................. 50

## I.  INTRODUCTION

This action was brought by plaintiff Security National Bank, as Conservator for a child, JMK, who suffered severe brain damage from bacterial meningitis as a neonate.  The Conservator originally asserted product defect, breach of warranty, and fraud claims against Abbott Laboratories, the manufacturer of the powdered infant formula (PIF) that was allegedly the source of the bacteria that caused JMK's injuries. After I granted in part and denied in part Abbott's motion for summary judgment and denied Abbott's motion to exclude or limit plaintiff's proposed expert testimony on medical and scientific causation (Abbott's original *Daubert* motion), *see Security Nat'l Bank of Sioux City, Iowa v. Abbott Labs.*, ___ F. Supp. 2d ___, 2013 WL 2420841 (N.D. Iowa June 3, 2013), this matter is set to proceed to a jury trial, beginning on September 3, 2013, on the Conservator's product defect claims in **Counts 1** (manufacturing defect), **2** (design defect), and **3** (warning defect).  In anticipation of trial, the parties have both filed multi-part motions in limine.  Both motions have been duly resisted, at least in part.  On August 1, 2013, after the deadline for motions in limine, Abbott filed a Motion To Strike Plaintiff's Proposed Exhibit 139 (docket no. 117), seeking an order striking what Abbott contends is an improper "summary" exhibit.  That motion was also duly resisted.

In light of the nature of the issues and the sufficiency of the briefing, I have decided that it is unnecessary to hear oral arguments on any of the pending motions. Therefore, the motions are considered fully submitted on the parties' written submissions.

## II.    LEGAL ANALYSIS

### A.    Standards For "Bad Acts" Evidence

The admissibility of much of the evidence still in dispute is "bad acts" evidence, either "bad acts" of a witness, controlled by the interaction of Rules 608, 609, and 403 of the Federal Rules of Evidence, or "bad acts" of a party, controlled by Rule 404(b). Thus, I will begin my analysis of the admissibility of the "bad acts" evidence still in dispute with a brief survey of the standards for admissibility of evidence under these rules.

### 1.    Rule 608 and evidence of a witness's character for truthfulness

Under Rule 608, extrinsic evidence of a witness's "bad acts," not resulting in a felony conviction, is "not admissible . . . in order to attack or support the witness's character for truthfulness." FED. R. EVID. 608(b); *United States v. Riddle*, 193 F.3d 995, 998 (8th Cir. 1999) ("Rule 608(b) forbids the use of extrinsic evidence to prove that . . . *specific bad acts* occurred.") (emphasis added). On the other hand, "Federal Rule of Evidence 608(b) provides that the court may allow specific instances of a witness's conduct 'to be *inquired into* if they are probative of the character for truthfulness or untruthfulness of . . . the witness.'" *United States v. Olsson*, 713 F.3d 441, 445 (8th Cir. 2013) (quoting Rule 608(b), with emphasis added); *United States v. Reaves*, 649 F.3d 862, 866 (8th Cir. 2011) ("Under Rule 608(b), a district court, at its discretion, may permit impeachment of a witness by cross-examination regarding specific instances of conduct not resulting in conviction, if the conduct is probative of the witness's character for truthfulness or untruthfulness."). Whether to permit such an inquiry on cross-examination "is within the discretion of the district court, and is subject to the limitations of Rule 403." *See Firemen's Fund Ins. Co. v. Thien*, 63 F.3d 754, 760 (8th Cir. 1995) (citing FED. R. EVID. 608(b), advisory committee's notes); *accord United States v. Frederick*, 683 F.3d 913, 919 (8th Cir. 2012) ("'The district

4

court under Rule 608(b) may determine if evidence is probative of truthfulness and under Rule 403 may exclude evidence, even though probative, if the probative value is outweighed by the prejudicial effect.'" (quoting *Crimm v. Missouri Pac. R.R. Co.*, 750 F.2d 703, 708 (8th Cir. 1984)). Indeed, "'[t]he Rule 403 balancing of probative value versus prejudicial effect is an integral step toward a determination of admissibility under . . . Rule 608(b).'" *United States v. Alston*, 626 F.3d 397, 404 (8th Cir. 2010) (citation omitted).

### 2. *Rule 609 and evidence of a witness's criminal convictions*

As most recently "restyled," in the 2011 Amendments, Rule 609(a) of the Federal Rules of Evidence provides as follows:

> **(a)    In General.**    The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
> > **(1)** for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
> >
> > > **(A)** must be admitted, subject to Rule 403, in a civil case or a criminal case in which the witness is not a defendant; and
> > >
> > > **(B)** must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to the defendant; and
> >
> > **(2)** for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.

FED. R. EVID. 609(a)(1).

Thus, in the case of an accused in a criminal trial, Rule 609(a)(1) modifies the language of the Rule 403 balancing test to tip the scales in favor of exclusion, because it requires only that the prejudice "outweigh" the probative value, not "substantially outweigh" the probative value. *Compare* FED. R. EVID. 609(a)(1)(B), *with* FED. R. EVID. 403. In the case of a witness who is not an accused, as is the case here, however, evidence of a conviction is subject to the standard Rule 403 test. *See* FED. R. EVID. 609(a)(1)(A). Thus, notwithstanding the "must be admitted" language of Rule 609(a)(1)(A), the admissibility of evidence within the scope of the rule is not "mandatory," because it is expressly "subject to Rule 403." *United States v. Chaika*, 695 F.3d 741, 744 (8th Cir. 2012) (recognizing that the "subject to Rule 403" limitation in Rule 609(a)(1)(A) means that the court may exclude evidence that is substantially more prejudicial than probative, within the meaning of Rule 403).

Rule 609(a)(2) authorizes admitting evidence of crimes, felony or misdemeanor, involving "a dishonest act or false statement." FED. R. EVID. 609(a)(2). As the Eighth Circuit Court of Appeals has explained,

> According to the Advisory Committee Notes on the 1990 Amendment to Rule 609(a)(2), by "dishonesty and false statement," the Conference Committee meant "crimes such as perjury, subornation o[f] perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi*, commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." . . . A crime that includes the statutory element of intent to defraud by definition involves some element of deceit, which would bear upon one's propensity to testify truthfully. Crimes containing a statutory element requiring proof of deceit are considered acts of dishonesty or false statement under Rule 609(a)(2). 3 Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, *Federal Rules of Evidence Manual* § 609.02[4] (LexisNexis 9th ed.2006).

*United States v. Collier*, 527 F.3d 695, 699 (8th Cir. 2008). As the Eighth Circuit Court of Appeals has also explained, "Evidence of a conviction requiring proof or admission of an act of dishonesty or false statement is automatically admissible and not subject to Rule 403 balancing by the court," but is subject to the ten-year limitation in Rule 609(b). *Id*. at 700.

Rule 609(b) imposes limits on use of evidence of a witness's conviction after ten years have passed since that conviction or the witness's release from confinement, whichever comes later. Those limits include a balance of probative value against prejudice essentially the same as a Rule 403 balance, discussed below, because the rule requires a determination of whether the probative value of the conviction, "supported by specific facts and circumstances, substantially outweighs the prejudicial effect." FED. R. EVID. 609(b)(1). Those limits also require adequate written notice to the adverse party, so that the adverse party "has a fair opportunity to contest the use" of the evidence. FED. R. EVID. 609(b)(2).

### 3.     *Rule 403 and the balance of probative value against prejudice*

Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

FED. R. EVID. 403.[1] As the Eighth Circuit Court of Appeals recently explained,

> [U]nder Rule 403, the [challenged evidence's] probative value must be *substantially* outweighed by *unfair* prejudice. "Evidence is not unfairly prejudicial because it tends to prove guilt, but because it tends to encourage the jury to

---

[1] Stylistic amendments to this rule also became effective on December 1, 2011.

> find guilt from improper reasoning. Whether there was
> unfair prejudice depends on whether there was an undue
> tendency to suggest decision on an improper basis." *United
> States v. Farrington*, 499 F.3d 854, 859 (8th Cir. 2007)
> (quotations omitted).

*United States v. Muhlenbruch*, 634 F.3d 987, 1001 (8th Cir. 2011) (emphasis in the original); *United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007) ("Rule 403 'does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis.'" (quoting *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)).

The Advisory Committee Notes to Rule 403 explain that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (quoting this note); *United States v. Dierling*, 131 F.3d 722, 730-31 (8th Cir. 1997) (considering whether evidence was unfairly prejudicial, because it might lead to a decision on an improper basis, where it purportedly had no connection to the charged offense and revealed grisly or violent behavior that made the defendant appear "dangerous"). Unfairly prejudicial evidence has also been described as evidence that is "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.'" *United States v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005) (quoting *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995)). "Under Rule 403, district courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of discretion." *Myers*, 503 F.3d at 681 (citing *United States v. Henderson*, 416 F.3d 686, 693 (8th Cir. 2005), *cert. denied*, 546 U.S. 1175, 126 S. Ct. 1343, 164 L. Ed. 2d 57 (2006)); *accord Muhlenbruch*, 634 F.3d at 1001 ("We

review the district court's decision not to exclude evidence under Rule 403 for an abuse of discretion.").

Where evidence may otherwise be inadmissible pursuant to Rule 403, the Eighth Circuit Court of Appeals and the Federal Rules of Evidence recognize that a limiting instruction on the proper uses of certain evidence may mitigate potential prejudice from such evidence. *See, e.g, United States v. Cowling*, 648 F.3d 690, 699 (8th Cir. 2011) ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted."); *United States v. Young*, 644 F.3d 757, 761 (8th Cir. 2011) (concluding that the district court did not abuse its discretion in admitting evidence for the limited purpose set forth in its instruction); *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose).

### 4.     Rule 404(b) and evidence of a party's "bad acts"

Rule 404(b) of the Federal Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," FED. R. EVID. 404(b)(1), but "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2). Thus, "'[w]hether Rule 404(b) prohibits the admission of a particular piece of evidence depends, therefore, on the purpose for which it is offered.'" *United States v. Maxwell*, 643 F.3d 1096, 1101 (8th Cir. 2011) (quoting *Huddleston v. United States*, 485 U.S. 681, 687 (1988)). The Eighth Circuit Court of Appeals has interpreted this rule to permit the admission of evidence of prior acts "if it is '(1) relevant to a material issue; (2) proved

by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to [the event at issue].'" *Bair v. Callahan*, 664 F.3d 1225, 1228–29 (8th Cir. 2012) (quoting *Batiste–Davis v. Lincare, Inc.*, 526 F.3d 377, 380 (8th Cir. 2008)). The third requirement here is the same as the balancing of the probative value and prejudice factors pursuant to Rule 403. *See Batiste–Davis*, 526 F.3d at 380 (noting that the third requirement under Rule 404(b), "whether the probative value exceeds the unfair prejudice," is "an analysis equivalent to that in Rule 403").

Where evidence may otherwise be inadmissible pursuant to 404(b), like evidence that might be inadmissible under Rule 403, the Eighth Circuit Court of Appeals and the Federal Rules of Evidence recognize that a limiting instruction on the proper uses of certain evidence may mitigate potential prejudice of such evidence. *See, e.g, Cowling*, 648 F.3d at 699; *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose).

As to the differences between Rule 404(b) and Rule 609, the Eighth Circuit Court of Appeals explained some time ago,

> [T]he respective rules operate in two completely different situations. In a criminal setting, evidence offered under Rule 404(b) is substantive evidence against the accused, i.e., it is part of the government's case offered to prove his guilt beyond a reasonable doubt. Rule 609 evidence on the other hand has to do with the accused's ability to tell the truth when testifying on his or her own behalf. While both rules speak of "probative value" and "prejudice," it is critical to note that evidence offered under the respective rules is probative as to different matters. The probative character of evidence under Rule 609 has to do with credibility of a witness, while 404(b) "probativeness" essentially goes to the question of whether or not the accused committed the crime charged. Any similarity or overlap in the standards of

> admissibility under the respective rules is irrelevant because
> the rules apply to completely distinct situations.

*United States v. Valencia*, 61 F.3d 616, 619 (8th Cir. 1995).

With these standards in mind, I turn to consideration of the admissibility of the "bad acts" and other evidence still in dispute.

## B.     The Conservator's Motion In Limine

### 1.     Evidence still in dispute

In its July 18, 2013, Motion In Limine To Exclude Evidence Of Prior Convictions And Drug Use (docket no. 112), the Conservator seeks to exclude the following three categories of evidence:  (1) evidence of a 1993 theft conviction of Megan Surber, the injured minor child's mother; (2) evidence of the prior criminal convictions of and past drug use by Troy Kunkel, the injured minor child's father; and (3) evidence of the 2003 misdemeanor conviction for possession of marijuana of Gerald M. Goldhaber, one of the Conservator's expert witnesses.  In its Opposition To Plaintiff's Motion In Limine To Exclude Evidence Of Prior Convictions And Drug Use (docket no. 115), Abbott represents that it does not intend to use evidence in either the first or third category as impeachment evidence at trial and, as such, Abbott does not object to exclusion of those categories of evidence.  Abbott does contend, however, that evidence of Troy Kunkel's prior criminal convictions and past drug use are highly probative impeachment evidence, as such evidence speaks to Mr. Kunkel's ability to remember events that happened over five years ago and to his character for truthfulness.  Thus, I will grant the Conservator's motion to exclude the first and third categories of evidence identified in its motion and consider in more detail only the admissibility of the evidence pertaining to Mr. Kunkel.

More specifically, the Conservator seeks to exclude evidence of Mr. Kunkel's 2000 conviction for assault, resulting from his guilty plea and a deferred judgment; a 2003 charge and subsequent conviction for child endangerment; a 2005 guilty plea to probation violations, including "escape" from a residential treatment facility program; a 2007 guilty plea for illegal dumping on public land; and admissions of past drug use. Abbott does not oppose exclusion of evidence of Mr. Kunkel's assault conviction or his illegal dumping conviction, but does oppose exclusion of the evidence of the convictions for child endangerment and probation violations, as well as evidence of drug use. Thus, my analysis will focus on the contested parts of the evidence of Mr. Kunkel's "bad acts."

## 2. The "child endangerment" conviction

### a. Arguments of the parties

The Conservator admits that Mr. Kunkel's 2003 charge and subsequent conviction for "child endangerment" is a felony and, consequently, potentially admissible pursuant to Rule 609(a) of the Federal Rules of Evidence. Nevertheless, the Conservator argues that evidence of that conviction should be excluded, because any probative value that it may have is outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury, where such balancing of probative value against prejudice applies to convictions otherwise admissible under Rule 609(a). More specifically, the Conservator argues that evidence of this conviction is remote in time, does not bear on Mr. Kunkel's truthfulness, and has no other relevance here, but is offered only for the purpose of arousing juror sentiment against Mr. Kunkel, who is not a party to this lawsuit. Indeed, the Conservator argues that admitting this evidence would prejudice JMK, who was not even born at the time of this offense. For much the same reason, the Conservator argues that such evidence is not admissible under Rule

608(b), because inquiry into a particular instance of Mr. Kunkel's conduct is inappropriate, where that incident is not probative of his truthfulness.

In response, Abbott argues that the "child endangerment" conviction, which related to injuries (numerous bruises and a broken right arm) sustained by a 3-year-old male child in Mr. Kunkel's care, is admissible under Rule 609(a)(1) of the Federal Rules of Evidence, because it goes to his credibility and truthfulness under oath. That is so, Abbott argues, because Abbott reads Rule 609(a)(1) to *require* admission of evidence of a felony criminal conviction of a witness, and argues that such a conviction is probative because of the commonsense proposition that one who has a felony conviction is not likely to be deterred from lying under oath. Abbott also argues that this evidence is probative to impeach Mr. Kunkel's testimony about his purportedly careful childcare habits in relation to JMK and her siblings. Abbott argues that the evidence of the "child endangerment" conviction is to be used for the proper purpose of impeaching Mr. Kunkel's character for truthfulness, particularly where it is a conviction that will impeach the truthfulness of his testimony about his later carefulness in caring for JMK. Abbott also points out that, although the conviction was based on a 2003 information, the *conviction* for the offense actually occurred in 2004, so that it is not subject to the limitations on use of 10-year-old convictions in Rule 609(b).

### b. Analysis

Because the "child endangerment" charge did result in a conviction, evidence of that conviction is controlled by Rule 609, rather than Rule 608. *See* FED. R. EVID. 608(b) ("Except for a criminal conviction under Rule 609 . . . ."). The "child endangerment" offense to which Mr. Kunkel pleaded guilty in May 2004, is a Class "D" felony under Iowa law. *See* Abbott's Opposition, Exhibit B (written plea of guilty to violation of IOWA CODE § 726.6(6)); IOWA CODE § 726.6(6) (identifying such an offense as "a class 'D' felony"). Thus, this conviction falls squarely within Rule

609(a)(1). Abbott is correct that Rule 609(b), which imposes limits on use of evidence after ten years have passed since the witness's conviction or release from confinement, whichever comes later, is inapplicable to Mr. Kunkel's "child endangerment" conviction, because that conviction actually occurred in 2004, nine years ago. Therefore, the admissibility of this conviction turns on a Rule 403 analysis. *See* FED. R. EVID. 609(a)(1)(A) (felony convictions are admissible, subject to a Rule 403 analysis).

As to probative value, Abbott is correct that, as to a felony conviction, Rule 609 reflects "'the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath.'" *United States v. Collier*, 527 F.3d 695, 700 (8th Cir. 2008) (quoting *United States v. Chauncey*, 420 F.3d 864, 874 (8th Cir. 2005)). As far as the specific nature of a felony conviction, the Eighth Circuit Court of Appeals has explained, "'most jurors probably do not understand the range of offense connoted by the term felony, and thus [may] need to know the specific crime in order to evaluate its effect on credibility.'" *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 360 (8th Cir. 2003) (quoting *United States v. Ford*, 17 F.3d 1100, 1103 (8th Cir. 1994)). On the other hand (or arm of the scales), as to prejudice, the Eighth Circuit Court of Appeals recognized some time ago that "[t]he introduction of [the witness's] specific felony could easily have distracted the jury from its task without adding any real probative information to their deliberations." *Ford*, 17 F.3d at 1103; *Jones*, 319 F.3d at 360 (excluding specific details of the crimes and giving a limiting instruction on use of the evidence minimized the potential prejudice, even though the crimes for which the witnesses were convicted were admitted). Ultimately, "'[t]he weighing of probative value against prejudicial effect is committed to the sound discretion of the trial court.'" *Chaika*, 695 F.3d at 744 (quoting *United States v. Folley*, 683 F.2d 273, 278 (8th Cir. 1982)).

Here, contrary to the Conservator's protestations, there is some probative value to evidence of Mr. Kunkel's prior felony conviction as it reflects upon the truthfulness of his testimony. *See Collier*, 527 F.3d at 700. That probative value, however, does not arise from the fact that the felony conviction was for "child endangerment," but simply from the fact that it was a "felony." *Cf. Chauncey*, 420 F.3d at 874 (pointing to the probative value of a prior drug felony for Rule 609 purposes as relating to commission of a felony, not as relating to the nature of the felony). Abbott attempts to connect the nature of the felony offense as "child endangerment" to its probative value here as undermining the truthfulness of Mr. Kunkel's testimony about his carefulness in caring for JMK, that is, in keeping the house and kitchen clean. I do not believe that Abbott has made that connection, because the nature and details of the "child endangerment" at issue in the 2004 conviction, a 3-year-old's bruises and broken arm, are so entirely different from issues of the adequacy of care in keeping a house and kitchen clean for a neonate. Indeed, I think that the introduction of Mr. Kunkel's specific felony of "child endangerment" and the details of the injuries to the child from which that felony conviction arose could easily distract the jury from the task of assessing Mr. Kunkel's credibility, without adding any real probative information to their deliberations. *See Ford*, 17 F.3d at 1103; *Jones*, 319 F.3d at 360. The specific details of that conviction are precisely the sort of information that is likely to provoke a jury to make a decision about Mr. Kunkel's credibility on an improper, emotional basis, particularly where those details are not sufficiently similar to the details of child care about which Mr. Kunkel will testify here to be instructive on the issue of his credibility. *See Muhlenbruch*, 634 F.3d at 1001; FED. R. EVID. 403, Advisory Committee Notes.

Therefore, this part of the Conservator's Motion In Limine is denied, to the extent that Abbott may impeach Mr. Kunkel with the *fact* of a prior felony conviction,

but granted to the extent that evidence of the nature of the felony as "child endangerment" or the details of the incident giving rise to the charge will be excluded.

### 3. The "probation violations" conviction

Next, the Conservator seeks to exclude evidence of Mr. Kunkel's 2005 guilty plea to what the Conservator calls "escape." Abbott argues that the 2005 conviction is actually for probation violations, including dishonest acts and false statements, as well as Mr. Kunkel's "escape" from a residential treatment facility program. Before resolving the nature of this conviction, I will summarize the parties' arguments concerning admissibility of evidence about it.

### a. Arguments of the parties

The Conservator argues that this conviction is not for a felony, so that it is not admissible under Rule 609(a)(1). Furthermore, the Conservator argues that this conviction is not admissible under Rule 609(a)(2), because it was not for a crime involving dishonesty or false statement, and is not admissible under Rule 608, because it is not for an offense that is probative of truthfulness. Finally, any probative value such a conviction may have, the Conservator argues, is substantially outweighed by its potential for prejudice.

Abbott argues that Mr. Kunkel not only violated various conditions of his probation, but attempted to cover up the violations by lying to law enforcement officers and other rehabilitation personnel. Abbott points to Mr. Kunkel's "major violations" of residential treatment program rules, by making false statements that resulted in Mr. Kunkel being terminated from the residential treatment program, and argues that termination from that program resulted in his conviction for a probation violation for failing to complete residential treatment. In short, Abbott argues, the evidence demonstrates Mr. Kunkel's propensity to misstate facts or to omit material information when he sees fit. Thus, Abbott argues that this conviction is admissible, because it

involved dishonesty or false statements within the meaning of Rule 609(a)(2). Abbott also argues that a Rule 403 analysis does not change the admissibility of the evidence, because a conviction for an offense involving an act of dishonesty or a false statement is not subject to Rule 403 balancing under Rule 609(a)(2).

In reply, the Conservator argues that Mr. Kunkel's misdemeanor conviction for "escape" itself has nothing to do with dishonesty and should not be admitted.

### b.    Analysis

The parties agree that the 2005 conviction is not for a felony, so that Rule 609(a)(1) is inapplicable. As noted above, Rule 609(a)(2) provides for admission of evidence of a criminal conviction "for any crime regardless of the punishment . . . if the court can readily determine that establishing the elements of the crime require proving—or the witness's admitting—a dishonest act or false statement." FED. R. EVID. 609(a)(2). As I also noted, above, in passing, under Rule 609(a)(2), "[e]vidence of a conviction requiring proof or admission of an act of dishonesty or false statement is automatically admissible and not subject to Rule 403 balancing by the court," but is subject to the ten-year limitation in Rule 609(b). *Collier*, 527 F.3d at 700.

Thus, the first questions here for admissibility of the 2005 conviction pursuant to Rule 609(a)(2) are the nature of the 2005 conviction and the conduct on which it is based. On February 4, 2005, Mr. Kunkel signed an Order Re: Probation Revocation Hearing in the Iowa District Court for Woodbury County, which stated, in part, the following:

> The defendant admits, by his signature below, that he violated his conditions of probation, as follows: Condition Number 1 — Obey all laws, by committing the criminal offenses of Absence from Custody and Contempt of Court; Special Condition Number 7 — Successfully complete the Residential Treatment Facility, by absconding from the Residential Treatment Facility; Condition Number 5 —

> Obtain prior permission before changing residency, by
> failing to obtain prior permission before changing residence;
> and Condition Number 9 — Abstain from alcohol and illegal
> drugs, by using marijuana.
>
> The parties agree that the defendant's probation shall
> be revoked and a 365-day jail sentence shall be imposed.

Abbot's Opposition, Exhibit A. It does not "readily" appear that establishing the elements of the probation violation, itself, requires proof or admission of a "dishonest act or false statement." Fed. R. Evid. 609(a)(2). None of the violations are identified as expressly requiring intentionally deceptive conduct. Indeed, they appear to have involved only factual conduct, with no specific mental state or deception required: absence from or leaving the treatment facility without permission, failure to complete the treatment program, for any reason, and using marijuana.

Similarly, the Probation Agreement, in which the conditions of Mr. Kunkel's probation are stated, *see* Abbott's Opposition, Exhibit I, does not identify, in its formulation of any conditions, any prohibition of a false statement or a dishonest act. Neither does the Report of Violation charging Mr. Kunkel with violating conditions of his probation, *see* Abbott's Opposition, Exhibit J, identify any false statement or dishonest act as the basis for the violation. Indeed, the Report of Violation confirms my reading of the order on the probation revocation as involving no elements of dishonest acts or false statements, because the violations are cast in terms of Mr. Kunkel's "terminat[ion] from the Residential Treatment Facility program," Mr. Kunkel "not ma[king] his current whereabouts known to [his probation] officer since leaving the Sioux City [Residential Treatment Facility]," and Mr. Kunkel's submission of a urine sample that "was positive for THC (marijuana)," again without any reference to any dishonest act or false statement as an element of any violation.

Thus, the conviction for the probation violation *itself* is not admissible pursuant to Rule 609(a)(1) or Rule 609(a)(2).

It is readily apparent from Abbott's arguments, however, that what Abbott wishes to use is the evidence of the dishonest conduct by Mr. Kunkel that got him terminated from the Residential Treatment Facility program. That conduct is set out in a Report on Mr. Kunkel's Termination from the Residential Treatment Facility. *See* Abbott's Opposition, Exhibit J. The Report identifies, among others, four "major violations" of Residential Treatment Facility program rules and regulations involving "false statements," and "major violations" for being "out of place of assignment" and "escape." These last two "major violations" are based on Mr. Kunkel signing out of the facility for an appointment and a stop at a pharmacy, but not returning by the time indicated, with his whereabouts thereafter unknown. In administrative proceedings, Mr. Kunkel was found guilty of violations for "escape" and being "out of place of assignment," and "[t]he sanction imposed was termination from the Residential Treatment Facility program." Exhibit J.

As noted above, under Rule 608, "extrinsic evidence" of a witness's "bad acts," not resulting in a felony conviction, is "not admissible . . . in order to attack or support the witness's character for truthfulness." FED. R. EVID. 608(b); *Riddle*, 193 F.3d at 998 ("Rule 608(b) forbids the use of extrinsic evidence to prove that . . . *specific bad acts* occurred.") (emphasis added). Thus, for example, the Report on Termination from the Residential Treatment Facility *itself* is not admissible. The question, then, is the extent to which the incidents of dishonest conduct detailed in the Report can be inquired into. FED. R. EVID. 608(b) (permitting inquiry into incidents of a witness's conduct probative of the witness's character for truthfulness). As Abbott argues, the circumstances of the "major violations" of Residential Treatment Facility rules and regulations for "false statements," "escape," and being "out of place of assignment,"

where the latter two violations were committed by means of lying about where Mr. Kunkel was going and when (or if) he would return, in order to obtain release from the Residential Treatment Facility, are at least somewhat probative of Mr. Kunkel's truthfulness, so that they are "bad acts" that come within the scope of permissible inquiry under Rule 608(b). *Olsson*, 713 F.3d at 445; *Reaves*, 649 F.3d at 866. The remaining question is whether to permit such an inquiry into the "bad acts" of dishonesty on cross-examination, after balancing probative value against prejudice under Rule 403. *Frederick*, 683 F.3d at 919; *Thien*, 63 F.3d at 760.

The parties have not squarely addressed that issue. The Conservator only addressed the potential for prejudice from the *conviction* for "escape," asserting that such a *conviction* does not involve dishonesty and could cause the jurors improperly to allow their distaste for Mr. Kunkel's "escape" conviction to affect their judgment as to JMK. Abbott does not address the balance of probative value of the underlying dishonest conduct against its potential for prejudice, because Abbott has cast its entire opposition to exclusion of the evidence relating to the probation violation in terms of a "conviction" for a crime involving dishonesty within the meaning of Rule 609(a)(2) that is not subject to Rule 403 balancing, but I have rejected the applicability of Rule 609(a)(2) to the evidence in question.

Notwithstanding the failure of the parties to address the issue squarely, I conclude that the Rule 403 balancing test leads to the conclusion that I should preclude even limited inquiry into Mr. Kunkel's violations of Residential Treatment Facility rules involving dishonest conduct. First, whatever probative value inquiries into Mr. Kunkel's citations for rules violations might have—that is, rules violations for making "false statements," for lying about how he incurred certain injuries (from "horseplay" rather than "falling"), for lying about being "let go" from employment (when he had "quit"), and for lying about using marijuana (when he had a urine sample

that tested positive for THC), and using false statements about an appointment and errand, including his expected time of return to the facility, in order to abscond from the facility—that probative value is slight and very attenuated, in light of the nature and circumstances of the falsehoods and the fact that the incidents occurred the better part of a decade ago.  On the other side of the balance, there is significant potential for prejudice from such inquiries, particularly where the nature and circumstances of the falsehoods, like the nature and circumstances of a felony conviction, could easily distract the jury from its task without adding any real probative information to their deliberations on the credibility of Mr. Kunkel's anticipated testimony in this case.  *Cf. Ford*, 17 F.3d at 1103 (making this observation as to the potential for prejudice of a felony conviction).  Indeed, allowing any inquiry into these incidents could rapidly devolve into a sideshow "minitrial" concerning the whether the statements were made and the extent to which they were false or dishonest, unnecessarily prolonging the litigation on a point of minimal probative value.  *See* FED. R. EVID. 403 (permitting exclusion of probative evidence for, *inter alia*, waste of time or confusion of the issues).

Therefore, this part of the Conservator's Motion In Limine is granted in its entirety.

### 4.    *Mr. Kunkel's admission of past drug use*

The last contested category of evidence in the Conservator's Motion In Limine is evidence of Mr. Kunkel's drug use.  This part of the Conservator's Motion In Limine arises from Mr. Kunkel's admissions of certain drug use—involving methamphetamine and marijuana—during his deposition.  *See* Conservator's Motion In Limine, Exhibit 3,

Deposition of Troy Kunkel, 45-47, 156-59; Abbott's Opposition, Exhibit C, Deposition of Troy Kunkel, 48-49.[2]

### a.    Arguments of the parties

The Conservator contends that evidence of Mr. Kunkel's drug use is inadmissible under Rule 403 and Rule 608(b)(1).  The Conservator argues that such evidence has no bearing on the facts in the case or the truthfulness of Mr. Kunkel's testimony.  The Conservator also contends that such evidence is unduly prejudicial, because it may arouse juror sentiment against Mr. Kunkel and, by extension, against his daughter, JMK.

Abbott argues that such evidence is admissible, because of the deleterious effect of use of methamphetamine and marijuana on users' memories, documented in peer-reviewed, published research and studies, some of which Abbott has attached to its Opposition.  Thus, Abbott argues that Mr. Kunkel's admitted drug use before, during, and after the relevant events in this case likely affected his ability to form memories at the time that the events occurred and will likely affect his ability to remember and testify credibly now about details of those events.  Therefore, Abbott argues that it should be allowed to impeach Mr. Kunkel on cross-examination with his admissions of his past methamphetamine and marijuana use.  Abbott also argues that it is not offering such evidence for the purpose of showing Mr. Kunkel's character for truthfulness, so that Rule 608(b)(1) is not implicated, and that a witness's drug use is not unfairly prejudicial within the meaning of Rule 403.

In reply, the Conservator argues that Abbott offers only a number of scientific journals to support its contention that methamphetamine and marijuana use may impair a person's memory, but no evidence to support that argument.  The Conservator also

---

[2] I do not find either party's characterization of this testimony entirely accurate, but I do not find it necessary to recount that testimony here to clarify its admissibility.

argues that Mr. Kunkel's testimony will present no credibility issues, because he did not prepare JMK's formula and he has no memory of the events that took place on the evening of April 23 or April 24, 2008, during the period that the parties dispute whether or not JMK was already showing symptoms of meningitis infection, and because he was admitted to the hospital on April 25, 2008. Thus, the Conservator argues that the purpose of admitting this irrelevant evidence of drug use is to get prejudicial information in front of the jury.

### b. Analysis

Some time ago, the Eighth Circuit Court of Appeals recognized that "[m]isconduct involving violations of narcotics laws is not an act involving dishonesty or untruthfulness and therefore may not be inquired into under Federal Rule of Evidence 608(b)." *United States v. Turner*, 104 F.3d 217, 223 (8th Cir. 1997). Nevertheless, some federal Circuit Courts of Appeals have recognized that evidence of a witness's drug use is appropriate on cross-examination, as it bears directly on the witness's ability to perceive or recall events or to testify accurately about them. *See, e.g., United States v. Robinso*n, 583 F.3d 1265, 1272, 1274–75 (10th Cir. 2009); *Kunz v. DeFelice*, 538 F.3d 667, 677 (7th Cir. 2008) (explaining that evidence of drug use may be used to impeach a witness's recollection of events but not for the impermissible "inference that drug users tend to lie"). The Eighth Circuit Court of Appeals has also suggested that personal drug use and its effect on memory may be appropriate matters for a jury to weigh in determining the weight to give to a witness's testimony. *See United States v. Maynie*, 257 F.3d 908, 918 (8th Cir. 2001). Abbott has added to such judicial authority some scientific authority concerning the effects of drug use on a witness's memory and recall. My own stock instruction on "testimony of witnesses," in both criminal and civil cases, has for some years listed among the factors that the jury should consider in weighing a witness's testimony the witness's "drug or alcohol

use or addiction, if any." Yet, the Seventh Circuit Court of Appeals has also recognized that such evidence may "'so prejudice the jury that it will excessively discount the witness' testimony,'" so that "'[a] court must, therefore, be chary in admitting such evidence when it is offered for the sole purpose of making a general character attack.'" *Kunz*, 538 F.3d at 677 (quoting *United States v. Cameron*, 814 F.2d 403, 405 (7th Cir. 1987)).

I believe that Mr. Kunkel's admissions show that his drug use was sufficient— that is, both sufficiently close in time to incidents about which he will likely testify and sufficiently frequent and/or continuous, both before and after those events—to raise a jury question about the effects of his drug use on his ability to remember and testify accurately about events relevant to this case. *See, e.g., Maynie*, 257 F.3d at 918. While I acknowledge the possibility that such evidence could encourage jurors to discount his testimony excessively, *see Kunz*, 538 F.3d at 677, I believe that such potential prejudice will be mitigated by a limiting instruction on the proper use of such evidence as it relates to a witness's ability to recall and testify accurately about events pertinent to the case. As I mentioned above, the Eighth Circuit Court of Appeals and the Federal Rules of Evidence recognize that a limiting instruction on the proper uses of certain evidence may mitigate potential prejudice from such evidence. *See, e.g, Cowling*, 648 F.3d at 699 ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted."). Furthermore, the Conservator's argument that Mr. Kunkel's credibility will not be at issue, so that the effects of drug use on his memory and ability to testify are irrelevant, rings hollow, where the Conservator insists that Mr. Kunkel's testimony is relevant to show that he did the cooking and the cleaning, but did not prepare JMK's formula, particularly where the source of the *E. sak* that infected JMK is in dispute.

Therefore, this part of the Conservator's Motion In Limine is denied, and evidence of Mr. Kunkel's admissions of drug use will be admissible, subject to a limiting instruction concerning the proper use of such evidence to allow the jury to weigh the effect of his drug use on his ability to recall and testify about pertinent events.

### C.   *Abbott's Omnibus Motion In Limine*

In its July 19, 2013, Omnibus Motion In Limine (docket no. 114), Abbott seeks to exclude the following five categories of evidence:  (1) evidence pertaining to a criminal plea agreement and a civil settlement agreement pertaining to marketing of "Depakote," a pharmaceutical manufactured by Abbott; (2) evidence or mention of an "unrelated" 2010 voluntary recall of Abbott PIF products manufactured at its Sturgis, Michigan, plant (not the Casa Grande, Arizona, plant that was the source of the PIF that JMK consumed); (3) "anecdotal" case reports regarding other infants with *E. sak* infections; (4) duplicative and cumulative testimony by the Conservator's testifying experts; and (5) opinion testimony that is outside the Conservator's expert witnesses' areas of expertise.  The Conservator contests exclusion of all of these categories of evidence.  Therefore, I will consider the admissibility of these categories of evidence in turn.

### 1.   *Evidence of the plea and settlement relating to "Depakote"*

In support of this part of its Motion In Limine, Abbott explains that, in May 2012, it entered into a plea agreement with the government in connection with misdemeanor misbranding charges and agreed to a settlement to resolve both civil and criminal proceedings relating to the marketing of Depakote, a pharmaceutical indicated for treatment of bipolar disorder, seizure disorders, and migraine headaches in adults. Abbott asserts that the civil settlement did not contain any admission of liability.  In its

response, the Conservator explains that the plea agreement in the criminal case was to five years of probation, a fine of $500,000,000.00, a financial sanction of $1,500,000.00, the forfeiture of $198,500,000.00, and admissions of various kinds of misconduct, including misbranding in the form of inadequate directions for use for the control of behavioral symptoms exhibited by elderly patients with dementia, inadequate directions for use for the treatment of schizophrenia, misleading labeling, and promotion of Depakote for unapproved uses.

### a.   *Arguments of the parties*

Abbott argues, in essence, that evidence of the Depakote investigation, plea agreement, and settlement are irrelevant to this product liability case involving PIF. Abbott also argues that the evidence cannot properly be used for impeachment purposes, because the Abbott witnesses who may be called at trial had nothing to do with the conduct underlying the Depakote investigation and resolution of the criminal and civil suits.  Finally, Abbott argues that this evidence should be excluded under Rule 403 as unduly prejudicial, confusing, and a waste of time.

The Conservator argues that this evidence is admissible pursuant to both Rule 404(b) and Rule 609(a).  As to admissibility under Rule 404(b), the Conservator argues that the fact that Abbott has shown a willingness to place false and misleading information on its product labels is probative of Abbott's intent, plan, knowledge, and absence of mistake in this case, with respect to the Conservator's failure to warn claim and prayer for punitive damages, and that this evidence satisfies the other requirements of Rule 404(b).  As to admissibility under Rule 609(a)(2), the Conservator argues that even witnesses who did not participate in corporate wrongdoing may be impeached, as representatives of a corporation, with evidence of the corporation's conviction for a crime involving a dishonest act or false statement.  Abbott argues that this evidence is admissible as evidence of a crime involving dishonesty or false statements, to which

Rule 403 is inapplicable. The Conservator also argues that, if a Rule 403 balancing test is applicable, the evidence satisfies that test, because it is clearly probative and not *unfairly* prejudicial.

### b. Analysis

### i. Admissibility under Rule 404(b)

As to admissibility pursuant to Rule 404(b), assuming that all other requirements could be met,[3] *see Bair*, 664 F.3d at 1228–29, the third requirement, which requires that the probative value of evidence of a party's "bad acts" outweigh its prejudicial effect, *id.*, weighs against the admissibility of evidence regarding the Depakote investigation, plea agreement, and settlement. Again, this factor is the same as the balancing of the probative value and prejudice factors pursuant to Rule 403. *See*

---

[3] One commentator has noted the following about the applicability of Rule 404(b) to misconduct of a corporation:

> An intriguing question is whether Rule 404(b) prohibits proof of other wrongdoing by corporations. While the word "person" can be read to include corporations and other entities, the later reference to "he" sheds some doubt on this interpretation. Moreover, the rule bars misconduct only as proof of "character" and it is doubtful that corporations have this attribute. However, there are a number of prior decisions applying the exclusionary other crimes rule to corporate defendants, though none of these show any awareness of the issue. It is also possible to disregard the corporate entity and to analyze the issue solely in terms of proof of other conduct of the particular corporate agents involved. Post-codification cases have not addressed this issue directly. It should, however, be noted that some other acts may be admissible to prove "routine practice" under Rule 406.

22A Fed. Prac. & Proc. Evid. (2d ed.) § 5239 (Other Crimes, Wrongs, or Acts—General Rule) (footnotes omitted).

*Batiste–Davis*, 526 F.3d at 380 (noting that the third requirement under Rule 404(b), "whether the probative value exceeds the unfair prejudice," is "an analysis equivalent to that in Rule 403"). The issues in the Depakote case, which involved marketing of a pharmaceutical in a manner contrary to federal statutes and regulations, are so far afield from the issues of product liability here as to give the Depakote evidence very little probative value for any proper Rule 404(b) purpose. *See* FED. R. EVID. 404(b)(2) ("bad acts" evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). On the other hand, the evidence is potentially very prejudicial, as it would encourage jurors to make a decision in this product liability case based on an emotional reaction to criminal regulatory violations unrelated to product liability standards, rather than on the basis of the evidence and the proper legal standards in the case before them. *See Muhlenbruch*, 634 F.3d at 1001; FED. R. EVID. 403, Advisory Committee Notes. I doubt very much that any limiting instruction, however carefully formulated for the circumstances of this case, could dispel that prejudice, where the probative value of the evidence for any proper purpose is extremely attenuated. *But see Cowling*, 648 F.3d at 699 (explaining that a limiting instruction may mitigate prejudice); *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose).

The evidence of the investigation, plea agreement, and civil settlement concerning Depakote is not admissible pursuant to Rule 404(b).

### ii.    *Admissibility under Rule 609(a)(2)*

As to admissibility pursuant to Rule 609(a)(2), I will assume, without deciding, that the "misbranding" conviction is for a crime involving "a dishonest act or false statement." FED. R. EVID. 609(a)(2). I am mindful that evidence admissible pursuant to Rule 609(a)(2) is not subject to a balancing test of probative value versus potential

prejudice—the ground on which I excluded the evidence if offered pursuant to Rule 404(b). *Collier*, 527 F.3d at 700 ("Evidence of a conviction requiring proof or admission of an act of dishonesty or false statement is automatically admissible and not subject to Rule 403 balancing by the court."). Although a district court cannot consider Rule 403 balancing, if the evidence is admissible pursuant to Rule 609(a)(2), "the district court is not precluded from determining whether [a] prior corporate conviction falls within the ambit of Rule 609 at all." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 524 (3d Cir. 1997). That, in my view, is the key question here.

As Judge Leisure of the Southern District of New York explained, the use of a corporate conviction pursuant to Rule 609(a)(2) raises an "interesting evidentiary issue," on which there is little case law—even in the 8 years since his decision—and none of it controlling here:

> While the Second Circuit [like the Eighth Circuit Court of Appeals] has not addressed whether a corporation's criminal conviction can be imputed to its CEO for purposes of Rule 609(a) impeachment, in *Stone v. C.R. Bard, Inc.*, No. 02 Civ. 3433, 2003 U.S. Dist. LEXIS 22035 [2003 WL 22902564] (S.D.N.Y. Dec. 8, 2003), Judge William H. Pauley III examined caselaw from the Third and Sixth Circuits dealing with the issue. In *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506 (3d Cir.1997), the Third Circuit held that Rule 609 "does not permit corporate convictions to be used to impeach the credibility of employee witnesses who are not directly connected to the underlying criminal act." *Id.* at 510. The court reasoned that, because "it is only the testifying witness' own convictions that will bear directly on the likelihood that he or she will testify truthfully ... it is axiomatic that it is only the testifying witness' own prior convictions that should be admissible on cross-examination to impeach his credibility." *Id.* at 524. The court found a West Virginia Supreme Court case, *CGM Contractors v. Contractors Envtl. Servs., Inc.*, 383 S.E.2d 861, 181 W. Va. 679 (1989), persuasive in that

it held "a corporate conviction is admissible against a witness only if the witness 'held a managerial position at the time the crime occurred such that it may be fairly inferred that he shared responsibility for the criminal act, or have actually participated in the criminal act.'" *Walden*, 126 F.3d at 524 n. 16. However, the Eastern District of Tennessee adopted a far broader standard in *Hickson Corp. v. Norfolk S. Ry. Co.*, 227 F.Supp.2d 903 (E.D.Tenn.2002). There, the court decided that "because a corporation speaks through its officers, employees, and other agents … it stands to reason that a corporation can be a vicarious witness…. [T]herefore, Rule 609 allows the use of a corporation's felony conviction to impeach the corporation's vicarious testimony." *Hickson*, 227 F.Supp.2d at 907. "Any other ruling would give the corporation an unreasonable advantage under Rule 609 as compared to a natural person." *Id*. at 906.

Despite noting that *Hickson's* standard appeared to conflict with the axiom that "corporations should be treated as natural persons for virtually all purposes of constitutional and statutory analysis," Judge Pauley found *Hickson* persuasive and admitted the corporation's conviction under Rule 609. *See Stone*, 2003 U.S. Dist. LEXIS 22035, at *9 n. 4, 10-11 (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 687 (1978)). Judge Pauley followed *Hickson's* theory of vicarious witnesses because the case before him was similar in that the proponent sought to impeach the corporation rather than the witness. *Id*. at *10-11. He further noted that a case in this District supported his finding, "in which the district court noted that 'artificial entities such as corporations may act only through their agents.'" *Id*. at *10 n. 5 (citing *United States v. Jacques Dessange, Inc.*, No. 99 Cr. 1182, 2000 U.S. Dist. LEXIS 2886, at *5 (S.D.N.Y. Mar. 14, 2000)).

*Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, No. 01 Civ. 3796(PKL), 2005 WL 1026515, *7 (S.D.N.Y. May 2, 2005) (footnote omitted). In the case before him, Judge Leisure found that the corporate party's conviction was

admissible to impeach the CEO of the corporation, because the proponent of the evidence was not impeaching the corporation vicariously, through the CEO as its representative, but impeaching the CEO, so that *Hickson* and *Stone* were inapposite. *Id*. at *8. Following *Walden*, Judge Leisure concluded that the CEO had been personally named in the criminal information and was the CEO of the corporate defendant, so that it was an "overwhelmingly reasonable inference" that he had the necessary involvement with the underlying criminal act for the conviction to impeach his credibility. *Id.*

The problem here is that the Conservator wants it both ways: The Conservator wants to impeach the corporation vicariously, but apparently also wants to impeach the corporation's witnesses with the corporation's conviction—indeed, it appears that the Conservator wants it a third way, using evidence ostensibly admissible under Rule 609(a)(2) as substantive evidence of the corporation's purported pattern of dishonest conduct. While there may be a valid distinction between impeaching a corporation's witnesses with the corporation's wrongdoing—impermissible under *Walden*—and impeaching a corporation's truthfulness vicariously, because the corporation can only testify through its employees—permissible under *Stone* and *Hickson*—in order to do either one, the evidence of the corporation's conviction must first be *relevant*. *See* FED. R. EVID. 402 (relevant evidence is generally admissible; irrelevant evidence is not). I am mindful that the purpose for which evidence of a corporate conviction would be used is very different pursuant to Rule 609 than it is pursuant to Rule 404(b)— impeachment of a witness's character for truthfulness, rather than evidence going to whether or not the defendant committed the wrongdoing in question. *Valencia*, 61 F.3d at 619. Of course, impeachment of a witness's (or corporation's) character for truthfulness is only appropriate when the witness's (or corporation's) character for truthfulness has been asserted on *direct* examination. Rule 609 is, after all, a rule of

impeachment, not a rule of substantive evidence. *See* FED. R. EVID. 609 (providing standards and limitations on evidence to attack a witness's character for truthfulness). To put it another way, until the witness's (or corporation's) character for truthfulness has been asserted on *direct* examination, evidence impeaching that character for truthfulness simply is not relevant. FED. R. EVID. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). Just because a witness is testifying as a witness for a corporation does not make the truth of any statement that the witness may make impeachable with a corporation's conviction for a crime of dishonesty. Rather, a corporation's conviction for a crime of dishonesty simply is not *relevant* until or unless the corporation's character for truthfulness is put at issue.

Indeed, in *Hickson*, the court recognized this requirement when it permitted the plaintiff to impeach the corporation's representative's testimony concerning the corporation's allegedly exemplary environmental and safety record with evidence of the corporation's prior felony conviction for improper disposal of paint. 227 F. Supp. 2d at 907-08. The court in *Stone* recognized this distinction, too, noting that the witnesses in *Hickson* had put the corporation's credibility at issue by testifying that the corporation had a good environmental and safety record. *Stone*, 2003 WL 22902564 at *3. The court in *Stone,* likewise, allowed impeachment of the corporation's witness, who had been the corporation's representative at counsel table throughout the trial, after he testified to the corporation's reputation in the industry for quality, integrity, and service, with evidence of the corporation's prior felony convictions. *Id.* The court noted, "It was the [corporate] defendants who opened the door to this inquiry [into the corporation's felony convictions] by introducing evidence of [the corporation's] good character, and plaintiffs should be permitted to impeach that evidence." *Id.* at *4.

Thus, even to the extent that the purpose of the Depakote evidence is to impeach the corporation vicariously with its criminal conviction, the corporation must have put its character for truthfulness at issue before such impeachment is allowed. *See Stone*, 2003 WL 22902564 at *3-*4; *Hickson*, 227 F. Supp. 2d at 907-08. To the extent that the purpose of such evidence is to impeach a witness for the corporation with the corporation's conviction, the witness's character for truthfulness must be at issue and the witness must have had the necessary involvement with the underlying criminal act for the conviction to impeach that witness's credibility. *See Walden*, 126 F.3d at 524; *Commerce Funding Corp.*, 2005 WL 1026515 at *8.

Until and unless the corporation or a witness opens the door by testifying that Abbott *always* followed all statutory, regulatory, or other legal requirements for labeling, branding, and warnings for its products, the Depakote evidence is inadmissible pursuant to Rule 609(a)(2),[4] and this part of Abbott's Omnibus Motion In Limine is granted.

### 2. Evidence of the 2010 PIF recall

Next, Abbott seeks to exclude evidence or mention of an "unrelated" 2010 voluntary recall of Abbott PIF products manufactured at its Sturgis, Michigan, plant. Abbott explains that it initiated a voluntary recall of products manufactured at its Sturgis plant, because of the "remote possibility" of the presence of a small, common beetle in products produced in one area of that plant. Abbott asserts that the PIF that JMK consumed was manufactured at its Casa Grande, Arizona, plant, not the Sturgis plant. Abbott also asserts that the Sturgis plant is a completely separate facility from the Casa Grande plant and that it has different product layouts, different product lines, and different employees, located thousands of miles from Casa Grande. Abbott asserts

---

[4] Abbott would not "open the door" by offering evidence that it complied with labeling, branding, and warnings requirements *for the PIF at issue in this case*.

that there has been no discovery concerning the Sturgis recall, but that one of the Conservator's experts mentioned it in his report and may do so in his testimony. The Conservator adds that the 2010 recall involved 117,420,638 containers of Similac PIF, produced from November 2007 to September 22, 2010, owing to possible insect contamination, and that insect contamination is a known source of *E. sak.*

### a.     *Arguments of the parties*

Abbott argues that this evidence has no probative value, because it is wholly unrelated to the manufacture of the PIF at issue here, and that it is potentially unduly prejudicial, misleading, and a waste of time to explore, so that it should be excluded under Rules 401, 402, and 403. Abbott points out that the parties do not dispute that there has never been a recall related to the specific product, Similac NeoSure PIF or the specific bacteria, *E. sak*, at issue here. Abbott also argues that courts have rejected "recall" evidence, where the defect or product involved differed from the one in dispute, or where the manufacturing facility involved in the recall was not the one that produced the product at issue. Such evidence would also be unduly prejudicial, Abbott argues, because of the difference in products and the difference between a beetle contamination and an *E. sak* contamination. Abbott asserts that it would have to engage in a "minitrial" to explain and defend against the recall evidence, where there has been no discovery of that issue, and that the issue and a "minitrial" on it would confuse the issues in this case.

The Conservator counters that evidence of the 2010 recall is admissible, because it is relevant to Abbott's sampling and testing of its finished PIF and its manufacturing and control processes. The Conservator also argues that insect contamination is a known source of *E. sak*, so that the recall evidence is relevant, even if the PIF originated at a different facility, because it implicates Abbott's company-wide manufacturing and testing procedures and policies for its PIF, where it will show that

Abbott's testing procedures are inadequate to discover one of the best known sources of *E. sak*. Contrary to Abbott's arguments, the Conservator argues that the same defect is at issue in this case as in the recall, that is, bacterial contamination of PIF.

### b. Analysis

I conclude that this evidence, whether offered as "bad acts" evidence pursuant to Rule 404(b) or on some other basis, should be excluded pursuant to Rule 401 and Rule 403. *See Batiste–Davis*, 526 F.3d at 380 (noting that the third requirement under Rule 404(b), "whether the probative value exceeds the unfair prejudice," is "an analysis equivalent to that in Rule 403"). In *Ahlberg v. Chrysler Corp.*, 481 F.3d 630 (8th Cir. 2007), the Eighth Circuit Court of Appeals affirmed a magistrate judge's exclusion of evidence of a Jeep retrofit program, in a product liability case involving a Dodge Ram truck, under both Rules 401 and 403. 481 F.3d at 632-34. As the court explained,

> *Bizzle v. McKesson Corp.*, 961 F.2d 719 (8th Cir. 1992), is instructive. In *Bizzle*, the plaintiffs sued the manufacturer of a cane under strict-liability, negligence, and breach-of-warranty theories. 961 F.2d at 720-21. The plaintiffs attempted to introduce evidence of the recall of a cane model, but this evidence was excluded by the district court. *Id.* at 721. This Court affirmed, holding that "[t]he recall's minimal probative value was easily outweighed by the dangers of unfair prejudice … and of misleading the jury" because the cane subject to the recall may not have been the same model as the one involved in the accident. *Id.* The same problem exists in this case—evidence of the Jeep-retrofit program raised substantial issues of confusion and prejudice with regard to the Dodge Ram. Given that the Jeep-retrofit evidence involved an entirely different vehicle, its probative value for the negligence and strict-liability claims was minimal.

*Ahlberg*, 481 F.3d at 633-34. Thus, *Ahlberg* stands for the principle that recall evidence involving a different product has so little probative value that it is properly

excluded under Rules 401 and 403. *See also Olson v. Ford Motor Company*, 410 F. Supp. 2d 869, 873-74 (D.N.D. 2006) (excluding evidence of a recall involving a different model of truck); *Verzwyvelt v. St. Paul Fire & Marine Insurance Company*, 175 F. Supp. 2d 881, 888 (W.D. La. 2001) (holding that evidence of a recall involving a different product was inadmissible). As the Eighth Circuit Court of Appeals had explained, in somewhat more detail, in *Bizzle*, the reason for exclusion of such minimally probative evidence is that it is "easily outweighed by the dangers of unfair prejudice to [the manufacturer] and of misleading the jury caused by the very real possibility that [the product used by the plaintiff] was not subject to the recall." 961 F.2d at 721; *see also Olson*, 410 F. Supp. 2d at 873; *Verzwyvelt*, 172 F. Supp. 2d at 888. On the other hand, the Eleventh Circuit Court of Appeals recognized, in *Hessen ex rel. Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641 (11th Cir. 1990), that the fact that the product involved in a recall is different from the product involved in the lawsuit does not necessarily preclude admission of the evidence of a recall, if there is expert testimony demonstrating that the *defect* in the recalled product was the same as the defect alleged in the product at issue in the lawsuit. 915 F.2d at 649; *but see Verzwyvelt*, 172 F. Supp. 2d at 888-89 (excluding recall evidence involving the same defect, but in a different product from a different manufacturing facility).

Other courts have excluded evidence of a recall, pursuant to Rule 403, where the recall, like the one at issue here, involved the same manufacturer, but "an entirely different product, manufactured at an entirely different manufacturing facility, located at opposite ends of the country," because of the unfair prejudice and possibility of confusing or misleading the jury, if the plaintiff was "permitted to parade before the jury evidence of [such] a product recall," which might lead jurors improperly to conclude was convincing proof that the product in question in the lawsuit was defective. *Verzwyvelt*, 175 F. Supp. 2d at 888; *see Olson*, 410 F. Supp. 2d at 873 (excluding

evidence of a recall involving a different product and a different defect, as irrelevant and because its probative value was substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, and undue delay and waste of time); *Jordan v. General Motors Corp.*, 624 F. Supp. 72, 77 (E.D. La. 1985) (excluding evidence of recall involving different model year and different defect).

Here, the 2010 product recall for Similac did not involve precisely the same product at issue here, Similac NeoSure. Thus, the admissibility of the evidence is doubtful, in light of the controlling precedent of *Ahlberg*, 481 F.3d at 633-34, and *Bizzle*, 961 F.2d at 720-21. The Conservator has attempted to show that the defect at issue in the 2010 recall is the same as the defect at issue here, notwithstanding that precisely the same product was not at issue, by arguing, based on expert testimony, that insect contamination is a known source of *E. sak* contamination. *See Hessen*, 915 F.2d at 649. Even if the insect contamination at issue in the recall is accepted as a sort of "proxy" for *E. sak* contamination, so that I could conclude that the defect is the same, there are other factors severely limiting the probative value of the recall evidence and weighing strongly on the unfair prejudice side of a Rule 403 balancing. Here, as in *Verzwyvelt*, 175 F. Supp. 2d at 88, the 2010 recall involved the same manufacturer, but "an entirely different product, manufactured at an entirely different manufacturing facility, located at opposite ends of the country." Evidence of the 2010 recall also involves unfair prejudice and the possibility of confusing or misleading the jury, if the Conservator is allowed to present evidence through an expert (not even through any documentary evidence of the recall itself). Such evidence might lead jurors to conclude, improperly, that the Conservator has convincingly proved that the product in question in this lawsuit is defective. *See also Bizzle*, 961 F.2d at 721 (concluding that the minimal probative value of recall evidence involving a different product was "easily outweighed by the dangers of unfair prejudice to [the manufacturer] and of misleading

the jury caused by the very real possibility that [the product used by the plaintiff] was not subject to the recall").

This part of Abbott's Omnibus Motion In Limine is granted.

### 3. *"Anecdotal" case reports of other* E. sak *infections*

Abbott also seeks to exclude "anecdotal" case reports regarding other infants with *E. sak* infections. Abbott contends that two of the Conservator's experts will attempt to introduce "anecdotal" case reports collected by non-party investigators about other children who developed *E. sak* infections. Abbott argues that, because these reports are secondhand (or even more remotely acquired), various legal protections prohibit Abbott from obtaining the underlying documentation in those cases. The Conservator asserts that its experts will testify about the case reports as information on which they relied to form their opinions, but that the case reports are also admissible as substantive evidence of Abbott's knowledge of defects, ability to cure known defects, the magnitude of the danger, causation, and punitive damages.

### a. *Arguments of the parties*

Abbott argues, first, that the reports are irrelevant, because they relate to other occurrences and there is (and can be) no showing that they report incidents substantially similar to the case at hand. Abbott also argues that the case reports are irrelevant, because they are not evidence of causation, because they merely show "association" between *E. sak* and PIF. Next, Abbott contends that the reports are inadmissible hearsay under Rule 801, for which no exception is available under Rule 801 or Rule 802, and no witness will be able to testify about the cases from personal knowledge, so that they are inadmissible pursuant to Rule 602. Finally, Abbott argues that any probative value that the case reports might have is substantially outweighed by their prejudicial impact and the risk of confusing the jury, because of the possibility of confusion and waste of time, as it must respond to the case reports.

In response, the Conservator argues, first, that the identification of the "anecdotal case reports" purportedly at issue is so vague that a court cannot reasonably rule on this part of Abbott's motion. Indeed, the Conservator argues, Abbott has not identified any specific "anecdotal case reports" in any expert's opinion. The Conservator also argues that this part of Abbott's Omnibus Motion In Limine is a "backdoor" attempt to revisit my ruling on Abbott's first "*Daubert*" motion regarding expert witnesses. Next, the Conservator argues that, even if the case reports are not admissible, its experts' testimony that they relied upon them in developing their opinions is admissible. The Conservator argues, however, that the reports are independently admissible to prove Abbott's knowledge of defects, the ability to cure known defects, the magnitude of the danger, causation, and punitive damages, because they show that infants that have consumed PIF contaminated with *E. sak* have suffered injuries. In particular, the Conservator argues, the case reports demonstrate that Abbott was aware of the risk presented by *E. sak*, but chose not to warn consumers about that risk. As to Abbott's hearsay objection, the Conservator argues that scientific reports are often admissible under the public records exception under Rule 803(8)(C). Thus, the Conservator argues that a "blanket" preclusion of this evidence is inappropriate.

### b.    Analysis

I have concluded that motions in limine that lack sufficient specificity may be denied without prejudice to objections at trial. *See Estate of Thompson v. Kawasaki Heavy Indus., Ltd.*, ___ F. Supp. 2d ___, 2013 WL 1248677, *29 (N.D. Iowa Feb. 25, 2013). This appears to be such a motion, because Abbott has not specifically identified or provided me with the contents of any "anecdotal case report" that it is challenging. Nevertheless, I also note that it is well-established that "Rule 703 permits an expert to 'rely on otherwise inadmissible hearsay evidence in forming his opinion if the facts and

data upon which he relies are of a type reasonably relied upon by experts in his field.'" *Sosna v. Binnington*, 321 F.3d 742, 746 (8th Cir. 2003) (quoting *Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir.1997), in turn citing FED. R. EVID. 703). Thus, to the extent that the Conservator can show not only that its experts relied on case reports, but that such case reports are the type of information on which experts in their fields reasonably rely, then testimony by the experts about the case reports may be admissible. To the extent that the Conservator intends to offer case reports as independent, substantive evidence, I also note the following:

> "[T]he party seeking admission of the evidence must demonstrate that the circumstances between the two incidents are substantially similar." *J.B. Hunt Transport, Inc. [v. General Motors Corp.]*, 243 F.3d [441,] 445 [(8th Cir. 2001)] (citing *Drabik v. Stanley–Bostitch, Inc.*, 997 F.2d 496, 508 (8th Cir. 1993)). The party asserting admission of similar-incident evidence need not show that consumer complaints or other instances involved "exact" matches with the incident at issue in the case. *Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 613, 625–26 (8th Cir. 1983). At the same time, the admission of such evidence is likely to be proper, if the opposing party is given ample opportunity to rebut the force of the other complaints by pointing out dissimilarities between the circumstances and the complaints in the allegedly similar incidents and the incident at issue. *Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 613, 625–26 (8th Cir. 1983). If the parties make these showings, it is then up to the jury to decide what weight to give the complaints from other consumers or the other incident evidence. *Id*.

*Thompson*, ___ F. Supp. 2d at ___, 2013 WL 1248677 at *21. The Conservator will have to make the required showing of substantial similarity for any "case reports" that it intends to offer as substantive evidence outside the presence of the jury, either by

Rule 104 motion prior to the trial, or early or late on a trial day in proceedings outside the presence of the jury.

This portion of Abbott's Omnibus Motion In Limine is denied without prejudice to assertion of objections at trial to "case reports" evidence.

### 4. Duplicative and cumulative expert testimony

The penultimate category of evidence that Abbott seeks to exclude is duplicative and cumulative testimony by the Conservator's testifying experts. More specifically, in this part of its Omnibus Motion In Limine, Abbott seeks an order (1) limiting the plaintiff to one expert to give a causation opinion; and (2) limiting the plaintiff to one expert to give each of the following opinions: (a) that Abbott's Casa Grande facility likely contained *E. sak*; (b) that the CDC's, FDA's, and Abbott's finished product testing protocols and Abbott's environmental testing might have missed *E. sak* that might have been present when they all did their respective testing; (c) that if a batch of infant formula contained *E. sak*, it would be unevenly distributed in the batch; and (d) that the infant's environment and caregivers were unlikely sources of *E. sak* infection.

### a. Arguments of the parties

Abbott argues that duplicative expert testimony may properly be excluded pursuant to Rule 403, or the court may specify the areas of permissible testimony for each expert, so that their testimony would not overlap. Abbott argues that the court should either exclude cumulative testimony or prevent overlap among experts, such as Catherine Donnelly and James Farmer, so that their testimony does not amount to prejudicial "piling on."

The Conservator argues that this part of Abbott's Omnibus Motion In Limine is premature, because the court has wide discretion to preclude duplicative or cumulative evidence at trial, but may have difficulty determining the necessity of certain expert

testimony or its cumulative effect pretrial. Here, the Conservator argues, contrary to Abbott's broad description of the Conservator's experts' testimony, there are gradations, distinctions, and differences in perspective among their testimony on similar issues that warrant allowing all of them to testify, and that some of the experts have relied on investigation and testimony of other experts in forming their opinions, or the experts may defer to each other on matters that they feel the other expert is best qualified or prepared to address. The Conservator also asserts that it recognizes that cumulative evidence would be a mistake, not just a violation of any rules of evidence, in a case that will necessarily involve a great deal of expert testimony. The Conservator also argues that both Abbott and I will likely monitor the evidence carefully to avoid cumulative evidence and waste of the jurors' time.

### b. Analysis

As I observed in *Kuiper v. Givaudan, Inc.*, 602 F. Supp. 2d 1036 (N.D. Iowa 2009),

> It is within the power of the court to exclude testimony that is repetitious and cumulative of testimony already offered at trial. *Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1315 (11th Cir. 2005) (noting that part of trial court's broad authority over trial management is the power to exclude cumulative testimony); *Laurent v. Ashcroft*, 359 F.3d 59, 63 (1st Cir.2004) (noting that "[c]ommon sense suggests that trial judges must be accorded considerable leeway in cutting off cumulative or redundant testimony, and the case law so holds."); *Leefe v. Air Logistics, Inc.*, 876 F.2d 409, 411 (5th Cir. 1989) ("It is within the power of the district court to exclude testimony that is repetitious and cumulative of testimony already before the court."); *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir.) ("It is well established that testimony which is merely repetitious and cumulative of testimony already introduced may be excluded by the trial court in its discretion."), *cert. denied*, 471 U.S. 1126, 105 S.Ct. 2659, 86 L.Ed.2d 276 (1985); FED. R. CIV.

P. 403. In *Leefe*, 876 F.2d 409, the Fifth Circuit Court of Appeals offered the following explanation of its deferring to the trial judge's decision to exclude at trial the testimony by a second expert physician as cumulative:

> It is difficult for this court to determine the necessity and cumulative effect of testimony by several experts. For this reason, we defer to the district court who is in the best position to make these judgments. We do want to discourage attorneys from parading additional experts before the court in the hope that the added testimony will improve on some element of the testimony by the principal expert. With this caveat, nothing in this opinion should be read to impose a precise limit on the number of experts who can testify in a given area.

*Id*. at 411.

*Kuiper*, 602 F. Supp. 2d at 1049-50. In *Kuiper*, I concluded, pretrial, that I would allow the Kuipers to call their medical experts, but that I "m[ight] well limit their testimony at trial to the extent that it is cumulative." *Id*. at 1050. I take the same course here: I will allow the Conservator to call all of its experts, but I may well limit their testimony at trial to the extent that their testimony turns out to be cumulative.

This portion of Abbott's Omnibus Motion In Limine is denied without prejudice to objections at trial to specific expert testimony as cumulative.

### 5. *Expert opinions outside the experts' areas of expertise*

In the last portion of its Omnibus Motion In Limine, Abbott seeks to exclude opinion testimony that is outside the Conservator's expert witnesses' areas of expertise. More specifically, Abbott seeks an order excluding (a) Janine Jason's opinions on *E. sak* testing methods; (b) Catherine Donnelly's, James Farmer's, and Janine Jason's opinions regarding PIF manufacturing practices and PIF product design; (c) Catherine Donnelly's, Scott Donnelly's, James Farmer's, and Janine Jason's opinions regarding

Abbott's PIF labeling; and (d) Gerald Goldhaber's opinions regarding the scope of risk posed by PIF, the likelihood PIF caused JMK's harm, and whether Abbott acted "reasonably" when forming its labels and warnings.

### a. Arguments of the parties

Abbott argues that the Conservator's experts have submitted exceedingly long opinions that digress into many subjects that stray from the experts' areas of expertise or their "knowledge bases." Abbott seeks to exclude opinion testimony by experts that fall outside of their expertise.

The Conservator argues, first, that this part of Abbott's Omnibus Motion In Limine, like the preceding part, is premature, because it is not clear that the experts will give any opinions at trial that stray beyond their areas of expertise. The Conservator also argues that this part of Abbott's Motion is a thinly-veiled attempt to revisit my *Daubert* ruling, by expanding into issues that Abbott could and should have addressed in that motion, if they had any merit. Finally, the Conservator argues that Abbott's objections really go to the weight, not the admissibility, of the experts' challenged opinions.

### b. Analysis

For essentially the same reasons that I concluded, above, that Abbott's pretrial challenges to the Conservator's experts' testimony as cumulative was premature, I now conclude that Abbott's challenges to the Conservator's experts' testimony as outside of their areas of expertise is premature. It is difficult for me to determine, pretrial, whether any expert will actually stray into opinions outside of his or her areas of expertise, even if they included various kinds of information—or even opinions—in expert reports, by way of background, that exceed the scope of their specific expertise. *Cf. Kuiper*, 602 F. Supp. 2d at 1049-50. Thus, I will allow the Conservator to call all

of its experts, but I may well limit their testimony at trial to the extent that their testimony turns out to exceed the scope of their expertise.

This portion of Abbott's Omnibus Motion In Limine is denied without prejudice to objections at trial to specific expert testimony as exceeding the scope of the expert's expertise.

### D.    Abbott's Motion To Strike A "Summary" Exhibit

The last motion now before me is Abbott's August 1, 2013, Motion To Strike Plaintiff's Proposed Exhibit 139 (docket no. 117).  Abbott asserts that the exhibit in question is an improper "summary" exhibit, concerning JMK's medical records, but the Conservator contends that Abbott failed to make any requests for modification of the exhibit.

#### 1.    Arguments of the parties

Abbott argues that the purported "summary" exhibit is a lawyer-drafted "timeline" of JMK's medical and educational records, created by selectively quoting and paraphrasing the records that the Conservator intends to enter into evidence.  Thus, Abbott argues that the document fails to accomplish any of Rule 1006's stated functions, such as fairly and accurately summarizing voluminous information to assist the jury.  Abbott also argues that the author of the "summary" is not subject to cross-examination.  Abbott argues that JMK's medical and educational records are not so voluminous as to require a cumulative "summary," where the Conservator intends to offer all of the records as exhibits 120 through 138.  Abbott argues that the "summary" will not assist the jury in understanding the evidence otherwise introduced at trial, because it detracts from an accurate understanding of those records, and it is itself so lengthy as to be difficult to understand, yet fails to include several of JMK's doctor visits and inaccurately summarizes those it describes.  Finally, Abbott argues that the

"summary" is an improper attempt to obtain admission of excerpts of medical and educational records that the Conservator failed to produce until July 19, 2013, in violation of deadlines established by the court's Scheduling Order and applicable rules. Indeed, Abbott contends that the Conservator held on to hundreds of pages of documents for several months before finally disclosing them months after the close of discovery and the filing of Abbott's summary judgment motion.

In response, the Conservator asserts that JMK's diagnosis, medical treatment, medical evaluation, therapy status, and present condition simply are not in dispute, but that it will provide evidence to support its Life Care Plan and to establish compensatory damages. Thus, the Conservator argues that it is in everyone's best interest to get the necessary medical information to the jury in the most efficient and comprehensible manner. The Conservator admits that its counsel drafted the "summary" exhibit—that is, that a nurse-paralegal for the Conservator constructed a chronology summarizing the medical and educational records, then counsel selected those events that related to the child's brain injury and were most significant. The Conservator also notes that Abbott had the same access to JMK's medical and educational records, because it was provided with authorizations by JMK's parents to obtain those records from providers. The Conservator also asserts that it requested Abbott's comments and additions to the "timeline," but Abbott refused to participate and simply moved to strike the exhibit. The Conservator also argues that the exhibit meets the requirements of Rule 1006, because it does summarize voluminous documents and that there is no requirement that it would be impossible to examine the documents themselves in the trial; the underlying records are themselves admissible; the original records have been made available to Abbott; and the summary is accurate, and Abbott has not moved to revise or correct the exhibit. The Conservator argues that, while the Eighth Circuit Court of Appeals has stated in some cases that the person who prepared the summary must be available for

cross-examination, Rule 1006 contains no such requirement, and the "summary" here is a verbatim statement from the underlying records, so that such a requirement is inapposite here. The Conservator admits that some of the underlying documents were not timely disclosed, but asserts that the failure was simply a mistake, as it has explained to Abbott.

### 2. *Analysis*

Rule 1006 of the Federal Rules of Evidence provides for "summaries to prove content," as follows:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

FED. R. EVID. 1006.[5] "Summary" exhibits properly admitted under Rule 1006 can be treated as evidence and allowed in the jury room during deliberations, but the district court should issue proper limiting instructions. *United States v. Green*, 428 F.3d 1131, 1134 (8th Cir. 2005) (citing *United States v. Possick*, 849 F.2d 332, 339 (8th Cir. 1988)).

The Eighth Circuit Court of Appeals has repeatedly stated that "'The admissibility of summary charts, graphs, and exhibits rests within the sound discretion of the trial judge, whose action in allowing their use may not be disturbed by an appellate court except for an abuse of discretion.'" *United States v. Boesen*, 541 F.3d 838, 848 (8th Cir. 2008) (quoting *United States v. Green*, 428 F.3d 1131, 1134 (8th Cir. 2005), with internal quotations and citation omitted). Similarly, the Eighth Circuit Court of Appeals has repeatedly stated,

---

[5] Rule 1006 was also "restyled" in the 2011 amendments.

> "Summary evidence is properly admitted when (1) the charts fairly summarize voluminous trial evidence; (2) they assist the jury in understanding the testimony already introduced; and (3) the witness who prepared the charts is subject to cross-examination with all documents used to prepare the summary." *Green*, 428 F.3d at 1134 (internal quotations and citation omitted).

*Boesen*, 541 F.3d at 848. Additionally, the "summary" exhibit must contain relevant information. *Id.*

Considering these requirements in a little more detail, the Eighth Circuit Court of Appeals has observed that Rule 1006 "appears to contemplate . . . that a summary will be admitted instead of, not in addition to, the documents that it summarizes." *United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997). The summary is admissible if "its overall presentation is straightforward and accurate, rather than argumentative or conclusory," for example, if it summarizes information from documents under "objective categories." *EEOC v. HBE Corp.*, 135 F.3d 543, 553 (8th Cir. 1998) (citing *Possick*, 849 F.2d at 339). Although a "summary" may "'include assumptions and conclusions, [those] assumptions and conclusions must be based upon evidence in the record.'" *Green*, 428 F.3d at 1134 (quoting *United States v. Wainright*, 351 F.3d 816, 821 (8th Cir. 2003)). Summaries are appropriate when they will assist the jury's comprehension of testimony on a significant issue in the case. *Boesen*, 541 F.3d at 848. The Eighth Circuit Court of Appeals has also repeatedly stated that Rule 1006 appears to contemplate that the summary "will have been prepared by a witness available for cross-examination, not by the lawyers trying the case," and more specifically, bars a summary that "is a written argument." *Grajales-Montoya*, 117 F.3d at 361 (citing *Possick*, 849 F.2d at 339, and *United States v. Orlowski*, 808 F.2d 1283, 1289 (8th Cir. 1986)).

A "summary" exhibit that meets these requirements may, nevertheless, be excluded pursuant to a Rule 403 balancing test. *Boesen*, 541 F.3d at 848. Again, where appropriate, the district court may give a limiting instruction on the proper use of the summary. *Green*, 428 F.3d at 1134; *Wainright*, 351 F.3d at 821.

Although Rule 1006 does not expressly require that a "summary" exhibit be prepared by a witness subject to cross-examination, and not by a lawyer trying the case, *see* FED. R. EVID. 1006, it is plain that the Eighth Circuit Court of Appeals does consider this a critical requirement for fair application of the rule. *See Boesen*, 541 F.3d at 848; *Green*, 428 F.3d at 1134; *Grajales-Montoya*, 117 F.3d at 361. Thus, the challenged "summary" exhibit here fails this basic requirement, under controlling precedent, for admission under Rule 1006. Moreover, the Conservator intends to offer the underlying records themselves as exhibits, but Rule 1006 "appears to contemplate . . . that a summary will be admitted instead of, not in addition to, the documents that it summarizes." *Grajales-Montoya*, 117 F.3d at 361. Finally, in light of the parties' dispute over the extent to which the "summary" exhibit "fairly summarizes" the underlying records—and I find that there is some basis for Abbott's complaints that the purported "summary" is not "straightforward and accurate," but "argumentative or conclusory," *HBE Corp.*, 135 F.3d at 553—it is unlikely that any real advantage from presentation of the "summary" will be achieved, as considerable time may be spent (or wasted) presenting the parties' contrary views on the accuracy of the summary in light of the underlying records, which will themselves be in evidence. *See Boesen*, 541 F.3d at 848 (explaining that a "summary" that satisfies Rule 1006's requirements may nevertheless be excluded pursuant to Rule 403); FED. R. EVID. 403 (allowing exclusion of otherwise admissible evidence, if it would mislead or confuse the jury or waste time).

Thus, the specific "summary" exhibit at issue here, the Conservator's Proposed Exhibit 139, is inadmissible. Nevertheless, if JMK's medical treatment and educational records truly are not in dispute, it seems that the jury would benefit from presentation of that information in the form of a brief, coherent, *stipulated* summary, whether prepared by lawyers for the parties or witnesses subject to cross-examination. The parties are encouraged to attempt to reach such a stipulation for presentation of the pertinent records in summary form. That being said, in the absence of a stipulated summary, only the underlying records, embodied in exhibits 120 through 138 are admissible; the "summary" exhibit, Proposed Exhibit 139, is not. *See Grajales-Montoya*, 117 F.3d at 361 (the exhibits or the summary are admissible, but not both). This exclusion of the exhibit as *evidence* does not necessarily preclude use of the exhibit as a demonstrative aid in closing arguments, although it would not be sent to the jury room with trial exhibits admitted into evidence. *See United States v. Crokett*, 49 F.3d 1357, 1362 (8th Cir. 1995).

Abbott's Motion To Strike Plaintiff's Proposed Exhibit 139 is granted.

## III.  CONCLUSION

Upon the foregoing,

1.  The Conservator's July 18, 2013, Motion In Limine To Exclude Evidence Of Prior Convictions And Drug Use (docket no. 112) is **granted in part and denied in part**, as follows:

    a.  That part of the Motion seeking to exclude evidence of a 1993 theft conviction of Megan Surber, the injured minor child's mother is **granted**;

    b.  That part of the Motion seeking to exclude evidence of the prior criminal convictions of and past drug use by Troy Kunkel is **granted in part and denied in part**, as follows:

i. The subpart of the Motion seeking to exclude Mr. Kunkel's 2003 charge and subsequent conviction for "child endangerment" is **denied**, to the extent that Abbott may impeach Mr. Kunkel with the *fact* of a prior felony conviction, but **granted** to the extent that evidence of the nature of the felony as "child endangerment" or the details of the incident giving rise to the charge will be excluded;

ii. The subpart of the Motion seeking to exclude evidence of Mr. Kunkel's 2005 guilty plea to probation violations is **granted** in its entirety; and

iii. The subpart of the Motion seeking to exclude evidence of Mr. Kunkel's admissions of drug use is **denied**, and evidence of Mr. Kunkel's admissions of drug use will be admissible, subject to a limiting instruction concerning the proper use of such evidence to allow the jury to weigh the effect of his drug use on his ability to recall and testify about pertinent events.

c. That part of the Motion seeking to exclude evidence of the 2003 misdemeanor conviction for possession of marijuana of Gerald M. Goldhaber, one of the Conservator's expert witnesses is **granted**.

2. Abbott's July 19, 2013, Omnibus Motion In Limine (docket no. 114) is **granted in part and denied in part**, as follows:

a. The part of the Motion seeking to exclude evidence concerning the investigation, plea agreement, and civil settlement involving the marketing of "Depakote" is **granted**, and such evidence will not be admissible until and unless the corporation or a witness opens the door by testifying that Abbott *always* followed all statutory, regulatory, or other legal requirements for labeling, branding, and warnings for its products;

b. The part of the Motion seeking to exclude evidence or mention of an "unrelated" 2010 voluntary recall of Abbott PIF products manufactured at its Sturgis, Michigan, plant is **granted**;

c. The part of the Motion seeking to exclude "anecdotal" case reports regarding other infants with *E. sak* infections is **denied without prejudice** to assertion of objections at trial to "case reports" evidence;

d. The part of the Motion seeking to exclude duplicative and cumulative testimony by the Conservator's testifying experts is **denied without prejudice** to objections at trial to specific expert testimony as cumulative;

e. The part of the Motion seeking to exclude opinion testimony that is outside the Conservator's expert witnesses' areas of expertise is **denied without prejudice** to objections at trial to specific expert testimony as exceeding the scope of the expert's expertise.

3. Abbott's August 1, 2013, Motion To Strike Plaintiff's Proposed Exhibit 139 (docket no. 117) is **granted**.

IT IS FURTHER ORDERED that, to avoid exposure of potential jurors to information about challenged evidence, this ruling shall be sealed until ten days after completion of the trial or notice of any settlement, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

**IT IS SO ORDERED**.

**DATED** this 13th day of August, 2013.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA