# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

THE SECURITY NATIONAL BANK OF
SIOUX CITY, IOWA, as Conservator for
J.M.K., a Minor,

        Plaintiff,

vs.

ABBOTT LABORATORIES,

        Defendant.

No. C 11-4017-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING SANCTIONS**

---

## TABLE OF CONTENTS

I.    **PROCEDURAL HISTORY** ................................................................. 5

II.   **ANALYSIS** ...................................................................................... 7
    A.    **Standards for Deposition Sanctions** ............................................ 7
    B.    **Deposition Conduct** ................................................................... 10
         1.    **"Form" Objections** ...................................................... 10
         2.    **Witness Coaching** ........................................................ 18
         3.    **Excessive Interruptions** ................................................ 30
    C.    **Appropriate Sanction** ............................................................... 31

III.  **CONCLUSION** ............................................................................. 34

Something is rotten, but contrary to Marcellus's suggestion to Horatio, it's not in Denmark.[1] Rather, it's in discovery in modern federal civil litigation right here in the United States. Over two decades ago, Griffin Bell—a former United States Attorney General, United States appeals court judge, and private practitioner—observed: "The criticism of the civil justice system has reached a crescendo in recent years. Because

---

[1] WILLIAM SHAKESPEARE, HAMLET, act 1, sc. 4.

much of the cost of litigation is incurred in discovery, the discovery process has been the focal point of considerable criticism."[2] How little things have changed.

Discovery—a process intended to facilitate the free flow of information between parties—is now too often mired in obstructionism. Today's "litigators" are quick to dispute discovery requests, slow to produce information, and all-too-eager to object at every stage of the process. They often object using boilerplate language containing every objection imaginable, despite the fact that courts have resoundingly disapproved of such boilerplate objections.[3] Some litigators do this to grandstand for their client, to intentionally obstruct the flow of clearly discoverable information, to try and win a war of attrition, or to intimidate and harass the opposing party. Others do it simply because it's how they were taught. As my distinguished colleague and renowned expert on civil procedure Judge Paul Grimm of the District of Maryland has written: "It would appear that there is something in the DNA of the American civil justice system that resists cooperation during discovery."[4] Whatever the reason, obstructionist discovery conduct is born of a warped view of zealous advocacy, often formed by insecurities and fear of the truth. This conduct fuels the astronomically costly litigation industry at the expense of "the just, speedy, and inexpensive determination of every action and proceeding."

---

[2] Griffin B. Bell et al., *Automatic Disclosure in Discovery—The Rush to Reform*, 27 GA. L. REV. 1, 1 (1992).

[3] *See* Matthew L. Jarvey, Note, *Boilerplate Discovery Objections: How They Are Used, Why They Are Wrong, and What We Can Do About Them*, 61 DRAKE L. REV. 913, 917 n.20 (2013) (collecting cases disapproving of boilerplate objections); *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 513 (N.D. Iowa 2000) (same).

[4] Hon. Paul W. Grimm & David S. Yellin, *A Pragmatic Approach to Discovery Reform: How Small Changes Can Make a Big Difference in Civil Discovery*, 64 S.C. L. REV. 495, 530 (2013).

Fed. R. Civ. P. 1.  It persists because most litigators and a few real trial lawyers—even very good ones, like the lawyers in this case—have come to accept it as part of the routine chicanery of federal discovery practice.[5]

But the litigators and trial lawyers do not deserve all the blame for obstructionist discovery conduct because judges so often ignore this conduct,[6] and by doing so we

---

[5] Judge Grimm and David Yellin aptly describe some of the misplaced motivations behind obstructionist tactics:

> The truth is that lawyers and clients avoid cooperating with their adversary during discovery—despite the fact that it is in their clear interest to do so—for a variety of inadequate and unconvincing reasons. They do not cooperate because they want to make the discovery process as expensive and punitive as possible for their adversary, in order to force a settlement to end the costs rather than having the case decided on the merits. They do not cooperate because they wrongly assume that cooperation requires them to compromise the legitimate legal positions that they have a good faith basis to hold. Lawyers do not cooperate because they have a misguided sense that they have an ethical duty to be oppositional during the discovery process—to "protect" their client's interests— often even at the substantial economic expense of the client. Clients do not cooperate during discovery because they want to retaliate against their adversary, or "get back" at them for the events that led to the litigation. But the least persuasive of the reasons for not cooperating during the discovery process is the entirely misplaced notion that the "adversary system" somehow prohibits it.

*Id*. at 525-26 (footnotes omitted).  Amen Brother Grimm and Mr. Yellin for being so insightful and refreshingly candid.

[6] *Cf.* Daniel C. Girard & Todd I. Espinosa, *Limiting Evasive Discovery: A Proposal for Three Cost-Saving Amendments to the Federal Rules*, 87 DENV. U. L. REV. 473, 475 (2010) ("The Federal Rules prohibit evasive responses . . . .  In practice, however, these

reinforce—even *incentivize*—obstructionist tactics.[7] Most litigators, while often inept in jury trials (only because they so seldom experience them), are both smart and savvy and will continue to do what has worked for them in the past. Obstructionist litigators, like Ivan Pavlov's dogs, salivate when they see discovery requests and are conditioned to unleash their treasure chest of obstructive weaponry. Unlike Pavlov's dogs, their rewards are not food but successfully blocking or impeding the flow of discoverable information. Unless judges impose serious adverse consequences, like court-imposed sanctions, litigators' conditional reflexes will persist. The point of court-imposed sanctions is to stop reinforcing winning through obstruction.

While obstructionist tactics pervade all aspects of pretrial discovery, this case involves discovery abuse perpetrated during depositions. Earlier this year, in preparation for a hard-fought product liability jury trial, I was called upon by the parties to rule on numerous objections to deposition transcripts that the parties intended to use at trial. I noticed that the deposition transcripts were littered with what I perceived to be meritless objections made by one of the defendant's lawyers, whom I refer to here as "Counsel." I was shocked by what I read. Thus, for the reasons discussed below, I find that Counsel's deposition conduct warrants sanctions.

I do not come to this decision lightly. Counsel's partner, who advocated for Counsel during the sanctions hearing related to this case (and who is one of the best trial lawyers I have ever encountered), urged that sanctions by a federal judge, especially on

---

rules are not enforced. Service of evasive discovery responses has become a routine—and rewarding—litigation tactic.").

[7] *Cf. id.* at 483 ("The reluctance of courts to impose sanctions under Rule 37 has encouraged the use of evasive and dilatory behavior in response to discovery requests. Such behavior serves no purpose other than to increase the cost and delays of litigation.").

a lawyer with an outstanding career, like Counsel, should be imposed, if at all, with great hesitation and a full appreciation for how a serious sanction could affect that lawyer's career. I wholeheartedly agree. I am still able to count each of the sanctions I have imposed on lawyers in my twenty years as a district court judge on less than all the fingers of one hand. Virtually all of those sanctions have been imposed on (or threatened to be imposed on) lawyers from out-of-state law firms.[8]

## I.    PROCEDURAL HISTORY

This matter arises out of a product liability case tried to a jury in January of 2014. Plaintiff Security National Bank (SNB), acting as conservator for a minor child, J.M.K., sued Defendant Abbott Laboratories (Abbott), claiming that J.M.K. suffered permanent brain damage after consuming baby formula, produced by Abbott, that allegedly contained a dangerous bacteria called enterobacter sakazakii. SNB went to trial against Abbott on design defect, manufacturing defect, and warning defect claims. On January 17, 2014, a jury found in favor of Abbott on SNB's product liability claims. The Clerk entered judgment in favor of Abbott on January 21, 2014.

During the trial, I addressed Counsel's conduct in defending depositions related to this case. Specifically, I filed a *sua sponte* order to show cause as to why I should not

---

[8] Iowa trial lawyers have a long and storied tradition and culture of civility that is first taught at the state's two law schools, the University of Iowa College of Law and the Drake University Law School. I know this because I have taught and lectured at both of these outstanding law schools that produce the bulk of Iowa lawyers. Civility is then taken very seriously, nourished and lead by the Iowa Supreme Court, and continually reinforced by the Iowa State Bar Association, the Iowa Academy of Trial Lawyers, and all of the other legal organizations in the state, as well as senior members of the bar, law firm partners from large to small firms, and solo practitioners across the state. There is great pride in being an Iowa lawyer, and describing someone as an Iowa lawyer almost always connotes that lawyer's high commitment to civility and professionalism. Of course, there are stinkers in the Iowa bar, but they are few and far between.

sanction Counsel for the "serious pattern of obstructive conduct" that Counsel exhibited during depositions by making hundreds of "form" objections that ostensibly lacked a valid basis. Because I did not want to burden Counsel with the distraction of a sanctions hearing during trial, I suggested we table any discussion of sanctions until after the trial was over. Thus, the same day the judgment was filed, I entered a supplemental order to show cause, ordering Counsel to address three issues that potentially warrant sanctions: (1) Counsel's excessive use of "form" objections; (2) Counsel's numerous attempts to coach witnesses; and (3) Counsel's ubiquitous interruptions and attempts to clarify questions posed by opposing counsel. My supplemental order focused on Counsel's conduct in defending two particular depositions—those of Bridget Barrett-Reis and Sharon Bottock—but I noted that I would consider any relevant depositions in deciding whether to impose sanctions. On January 24, 2014, Counsel requested a substantial extension of time to respond to my supplemental order, which I granted. On April 21, 2014, Counsel responded to my supplemental order to show cause. My chambers later contacted Counsel to set this matter for telephonic hearing. Counsel requested another one-month delay, which I granted. Counsel filed an additional brief on July 9, 2014, and the hearing was finally held on July 17, 2014. During the hearing, I requested that Counsel follow up with an e-mail suggesting an appropriate sanction, should I decide to impose one. On July 21, 2014, Counsel's partner sent an e-mail to me declining to suggest a sanction, and urging me not to impose sanctions.

After reviewing Counsel's submissions, I find that Counsel's conduct during depositions warrants sanctions. I discuss below the basis for imposing sanctions and the particular sanction that I deem appropriate in this case.

## II.    ANALYSIS

### A.    Standards for Deposition Sanctions

"It is well established that a federal court may consider collateral issues [like sanctions] after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990).  Because Counsel's deposition conduct is at issue here, Federal Rule of Civil Procedure 30 applies.  Rule 30(d)(2) provides:  "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."  Rule 30(d)(2) does not limit the types of sanctions available; it only requires that the sanctions be "appropriate."  *See Francisco v. Verizon S., Inc.*, 756 F. Supp. 2d 705, 712 (E.D. Va. 2010), *aff'd*, 442 F. App'x 752 (4th Cir. 2011) ("Although Rule 30(d)(2) does not define the phrase 'appropriate sanction,' the imposition of discovery sanctions is generally within the sound discretion of the trial court." (citations omitted)).

District courts also have a "'well-acknowledged' inherent power . . . to levy sanctions in response to abusive litigation practices." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980).  "A primary aspect of that [power] is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).  "[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 49.

Counsel incorrectly argues—without citing to any dispositive authority—that I may not impose sanctions *sua sponte* under Rule 30(d)(2).  Because SNB's lawyers did not file a motion for sanctions, Counsel argues that I am without power to impose them under the Federal Rules.[9]  Rule 30(d)(2)'s text, however, imposes no such limitation on a

---

[9] The fact that SNB's lawyers did not move for sanctions further suggests that lawyers

7

court's authority to sanction deposition conduct. The rule contains no motion-related preconditions whatsoever; it simply provides that "[t]he court may impose an appropriate sanction" on a person who obstructs a deposition. The advisory committee notes further suggest that courts may issue Rule 30(d)(2) sanctions without a motion from a party. The notes provide that sanctions under Rule 30(d) are congruent to those under Rule 26(g):

> The rule also explicitly authorizes the court to impose the cost resulting from obstructive tactics that unreasonably prolong a deposition on the person engaged in such obstruction. This sanction may be imposed on a non-party witness as well as a party or attorney, but is otherwise congruent with Rule 26(g).

Fed. R. Civ. P. 30, advisory committee notes (1993 amendments). Under Rule 26(g), courts may issue sanctions *sua sponte*: "If a certification violates this rule without substantial justification, the court, on motion *or on its own*, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3) (emphasis added). In addition to Rule 30(d)'s text and the advisory committee notes, the United States Supreme Court has noted that "court[s] generally may act *sua sponte* in imposing sanctions under the Rules." *Chambers*, 501 U.S. at 43 n.8; *see also Jurczenko v. Fast Prop. Solutions, Inc.*, No. 1:09 CV 1127, 2010 WL 2891584, at *2-4 (N.D. Ohio July 20, 2010) (imposing sanctions under Rule 30(d)(2) where party moved for sanctions only under Rule 37(d)). And even if I lacked the power to issue

---

have simply become numb to obstructionist discovery tactics, either because they are used to them, they choose to take the high ground, or perhaps because they use such tactics themselves. (After observing SNB's lead lawyer at trial, I seriously doubt the latter.) Based on my 39 years as a member of the federal bar, I surmise that SNB's lawyer did not move for sanctions because he has other enterobacter sakazakii cases against Counsel and did not want to undermine his ongoing relationship with Counsel by seeking sanctions. This rationale makes particular sense in a case like this where all of the information SNB's lawyer needed to prove SNB's manufacturing and product defect claim resided with Abbott and Counsel, and where there was no other avenue to obtaining case-critical information.

sanctions under Rule 30(d), I would retain the authority to sanction Counsel under my inherent power. *See In re Itel Sec. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986) ("Sanctions may also be awarded sua sponte under the court's inherent power." (citing *Roadway Exp.*, 447 U.S. at 765)).

Counsel also claims to have acted in good faith during the depositions related to this case. Even if that is true, it is inapposite. In imposing sanctions under either Rule 30(d)(2) or my inherent power, I need not find that Counsel acted in bad faith. "[T]he imposition of sanctions under Federal Rule[] of Civil Procedure 30(d)(2) . . . does not require a finding of bad faith." *GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 196 (E.D. Pa. 2008). Rather, the person sanctioned need only have "impede[d], delay[ed], or frustrate[d] the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). And only the most extreme sanctions under a court's inherent power—like assessing attorney's fees or dismissing with prejudice—require a bad-faith finding. *See Chambers*, 501 U.S. at 45-46 (noting that "a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" (citations and internal quotation marks omitted)); *Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 751 (8th Cir. 2004) ("A bad faith finding is specifically required in order to assess attorneys' fees." (citations omitted)); *Lorin Corp. v. Goto & Co., Ltd.*, 700 F.2d 1202, 1207 (8th Cir. 1983) ("Dismissal with prejudice is an extreme sanction and should not be imposed unless the default was wilful or in bad faith."). For less extreme sanctions, like those at issue here, "a finding of bad faith is not always necessary to the court's exercise of its inherent power to impose sanctions." *Stevenson*, 354 F.3d at 745 (citations omitted); *see also Harlan v. Lewis*, 982 F.2d 1255, 1260 (8th Cir. 1993) ("We do not believe *Roadway* extends the 'bad faith' requirement to every possible disciplinary exercise of the court's inherent power, especially because such an extension would apply the requirement to even the most routine exercises of the inherent power. We find no statement in *Roadway*,

*Chambers*, or any other decision cited by the parties, that the Supreme Court intended this 'bad faith' requirement to limit the application of monetary sanctions under the inherent power." (internal citations and footnote omitted)). Still, while I need not find bad faith before imposing sanctions, I find it difficult to believe that Counsel could, in good faith, engage in the conduct outlined in this opinion.

The Eighth Circuit Court of Appeals "review[s] the imposition of discovery sanctions for an abuse of discretion." *Craig v. St. Anthony's Med. Ctr.*, 384 F. App'x 531, 532 (8th Cir. 2010).

## B. Deposition Conduct

In defending depositions related to this case, Counsel proliferated hundreds of unnecessary objections and interruptions during the examiner's questioning. Most of these objections completely lacked merit and often ended up influencing how the witnesses responded to questions. In particular, Counsel engaged in three broad categories of improper conduct. First, Counsel interposed an astounding number of "form" objections, many of which stated no recognized basis for objection. Second, Counsel repeatedly objected and interjected in ways that coached the witness to give a particular answer or to unnecessarily quibble with the examiner. Finally, Counsel excessively interrupted the depositions that Counsel defended, frustrating and delaying the fair examination of witnesses. I will address each category of conduct in turn.

### 1. "Form" Objections

In the two depositions I asked Counsel to review in my order to show cause, Counsel objected to the "form" of the examiner's question at least 115 times. That means that Counsel's "form" objections can be found on roughly 50% of the pages[10] of both the Barrett-Reis and Bottock depositions. Counsel made "form" objections with similar

---

[10] I calculated this number based on the number of deposition pages that actually contained testimony, excluding pages like the title page, etc.

frequency while defending other depositions, too. Sometimes Counsel followed these "form" objections with a particular basis for objection, like "speculation" or "narrative." Other times, Counsel simply objected to "form," requiring the reader (and, presumably, the examiner) to guess as to the objection's basis.

In addition to the sheer number of "form" objections Counsel interposed, Counsel also demonstrated the "form" objection's considerable range, using it for a number of purposes. For example, Counsel used "form" objections to quibble with the questioner's word choice (for no apparent reason, other than, perhaps, to coach the witness to give a desired answer):

> Q. Would it be fair to say that in your career, work with human milk fortifier has been a significant part of your job?
>
> COUNSEL: Object to the form of the question. "Significant," it's vague and ambiguous. You can answer it.
>
> A. Yeah, I can't really say it's been a significant part. It's been a part of my job, but "significant" is rather difficult because I have a wide range of things that I do there.

(Barrett-Reis Depo. 56:19 to 57:4).[11] Counsel used "form" objections to voice absurdly hyper-technical truths:

> Q. Are there certain levels that one can get, that have catwalks or some similar apparatus so I can get to the dryer?
>
> A. The dryer is totally enclosed. You cannot get into the dryer from any of the levels.
>
> Q. Can I get on the outside of the dryer?

---

[11] In reproducing portions of the deposition transcripts for this opinion, I occasionally change the notation identifying the speaker for reasons of anonymity, consistency, and ease of reading. For example, I do not use Counsel's name, which appears in the transcripts. I also use "A." to indicate a witness's answer, whereas some of the transcripts use the phrase "the witness." The words used by the speakers, however, remain unaltered.

> COUNSEL:  Object to the form of the question; outside of the dryer?  Everything is—I mean, outside of the dryer is a huge expanse of space; anything that's not inside the dryer is outside the dryer, so I object to it as vague and ambiguous.  Object to the form of the question.
>
> A.  Rephrase the question.

(Bottock Depo. 130:3-15).  Counsel also used "form" objections to break new ground, inventing novel objections not grounded in the rules of evidence or common law:

> Q.  Are you familiar with the term "immunocompromised"?
>
> A.  Yes.
>
> Q.  And that would include premature babies?
>
> COUNSEL:  Object to the form of the question, "that would include premature babies?"  It's a non sequitur.[12]

(Barrett-Reis Depo. 54:15-21).  (In case there is any doubt, *non sequitur* is not a proper objection.)  But, whatever their purpose, Counsel's "form" objections rarely, if ever, followed a truly objectionable question.

In my view, objecting to "form" is like objecting to "improper"—it does no more than vaguely suggest that the objector takes issue with the question.  It is not itself a

---

[12] In response to my order to show cause, Counsel claims that "the question was misleading, confusing, vague and ambiguous[,]" and that it "call[ed] for a medical opinion or conclusion" (docket no. 193, at 13).  None of these reasons relate to Counsel's original claim that the question was a non sequitur.  But, in any event, there is absolutely nothing confusing about the question, nor does it call for a medical conclusion (the witness held a PhD in nutritional science, though).  This litany of adjectives— "misleading, confusing, vague and ambiguous"—are all too common in federal depositions and roll too easily and too frequently off the lips of lawyers who engage in repeated obstructionist conduct.  Multiple objections like this are often a harbinger of obstructionist lawyers. That Counsel would cite those objections in "defense" of Counsel's conduct suggests very strongly that Counsel just doesn't get it, and further undermines Counsel's claim of good faith.  That these objections are part of an oft-used litigation strategy does not suggest that Counsel made them in good faith.

12

ground for objection, nor does it preserve any objection. Instead, "form" objections refer to a *category* of objections, which includes objections to "leading questions, lack of foundation, assuming facts not in evidence, mischaracterization or misleading question, non-responsive answer, lack of personal knowledge, testimony by counsel, speculation, asked and answered, argumentative question, and witness' answers that were beyond the scope of the question." *NGM Ins. Co. v. Walker Const. & Dev., LLC*, No. 1:11-CV-146, 2012 WL 6553272, at *2 (E.D. Tenn. Dec. 13, 2012). At trial, when I asked Counsel to define what "form" objections entail, Counsel gave an even broader definition. Counsel first stated simply, "I know it when I hear it." Counsel then settled on the barely narrower definition that "form" objections include "anything that can be remedied at the time of the deposition so that you do not waive the objection if the deposition is used at a hearing or trial." Given that "form" may refer to any number of objections, saying "form" to challenge a leading question is as useful as saying "exception" to admit an excited utterance.

Yet, many lawyers—and courts for that matter—assume that uttering the word "form" is sufficient to state a valid objection. This assumption presumably comes from the terminology used in the Federal Rules. Rule 30(c)(2) governs deposition objections and provides in part:

> An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner.

The advisory committee notes clarify the types of objections that must be noted on a deposition record:

> While objections may, under the revised rule, be made during
> a deposition, they ordinarily should be limited to those that
> under Rule 32(d)(3) might be waived if not made at that time,
> *i.e.*, objections on grounds that might be immediately
> obviated, removed, or cured, *such as to the form of a question*
> or the responsiveness of an answer.

Fed. R. Civ. P. 30, advisory committee notes (1993 amendments) (emphasis added).

These notes refer to Rule 32(d)(3), which provides that certain objections are waived if

not made during a deposition:

> An objection to an error or irregularity at an oral examination
> is waived if:

>> (i) it relates to the manner of taking the deposition, the
>> *form of a question* or answer, the oath or affirmation,
>> a party's conduct, or other matters that might have
>> been corrected at that time; and

>> (ii) it is not timely made during the deposition.

Fed. R. Civ. P. 32(d)(3)(B) (emphasis added). Together, these rules provide that any

objection to the form of a question must be made on the record at a deposition, or that

objection is waived.

But these rules do *not* endorse the notion that "form" is a freestanding objection.

They simply describe categories of objections—like those to the form of a question—that

must be noted during a deposition. Nothing about the text of Rules 30 or 32 suggests

that a lawyer preserves the universe of "form" objections simply by objecting to "form."

I agree with my colleague, Magistrate Judge Scoles, in his analysis of this issue:

> [Some] contend that the objection should be limited to the
> words "I object to the form of the question." The Rule,
> however, is not so restrictive. Rather, it simply provides that
> the objection must be "stated concisely in a nonargumentative
> and nonsuggestive manner." . . . [T]he general practice in
> Iowa permits an objector to state in a few words the manner
> in which the question is defective as to form (e.g., compound,

> vague as to time, misstates the record, etc.). This process alerts the questioner to the alleged defect, and affords an opportunity to cure the objection.

*Rakes v. Life Investors Ins. Co. of Am.*, No. C06-0099, 2008 WL 429060, at *5 (N.D. Iowa Feb. 14, 2008); *see also Cincinnati Ins. Co. v. Serrano*, No. 11-2075-JAR, 2012 WL 28071, at *5 (D. Kan. Jan. 5, 2012) ("Although the [rules] talk about objections based on the 'form' of the question (or responsiveness of the answer), this does not mean that an objection may not briefly specify the nature of the form objection (e.g. 'compound,' 'leading,' 'assumes facts not in evidence').").  I would go further, however, and note that lawyers are *required*, not just permitted, to state the basis for their objections.

Moreover, "form" objections are inefficient and frustrate the goals underlying the Federal Rules.  The Rules contemplate that objections should be concise and afford the examiner the opportunity to cure the objection.  *See* Fed. R. Civ. P. 30(c)(2) (noting that "objection[s] must be stated concisely"); *id.*, advisory committee notes (1993 amendments) (noting that "[d]epositions frequently have been unduly prolonged . . . by lengthy objections and colloquy" and that objections "ordinarily should be limited to those . . . grounds that might be immediately obviated, removed, or cured, such as to the form of a question").  While unspecified "form" objections are certainly concise, they do nothing to alert the examiner to a question's alleged defect.  Because they lack specificity, "form" objections do not allow the examiner to immediately cure the objection.  Instead, the examiner must ask the objector to clarify, which takes *more* time and *increases* the amount of objection banter between the lawyers.  Briefly stating the particular ground for the objection, on the other hand, is no less concise and allows the examiner to ask a remedial question without further clarification.

Additionally, it is difficult, if not impossible, for courts to judge the validity of unspecified "form" objections:

> [U]nless an objector states with some specificity the nature of his objection, rather than mimicking the general language of the rule, i.e., "objection to the form of the question," it is impossible to determine, based upon the transcript of the deposition itself, whether the objection was proper when made or merely frivolous.

*Mayor & City Council of Baltimore v. Theiss*, 729 A.2d 965, 976 (Md. 1999). When called upon to rule on an unspecified "form" objection, a judge either must be clairvoyant or must guess as to the objection's basis. Neither option is particularly realistic or satisfying. This is reason enough to require a specific objection.

Requiring lawyers to state the basis for their objections is not the same thing as requiring "speaking objections" in which lawyers amplify or argue the basis for their objections. For example, "Objection, hearsay" is a proper objection. By contrast, "Objection, the last assertion by Mr. Jones was an out-of-court statement by Ms. Day, said in the hotel room, that Mr. Jones allegedly heard, that he never testified to in a deposition, and that is now being offered for the truth of Ms. Day's statement" is an improper speaking objection. I have always required the former and barred the latter.

I recognize, however, that not all courts share my views regarding "form" objections. In fact, some courts explicitly *require* lawyers to state nothing more than unspecified "form" objections during depositions. *See Offshore Marine Contractors, Inc. v. Palm Energy Offshore, L.L.C.*, No. CIV.A. 10-4151, 2013 WL 1412197, at *4 (E.D. La. Apr. 8, 2013) ("The Court finds that the behavior of counsel for OMC does not warrant sanctions here. Indeed, most of the objections by OMC's counsel are simple form objections with no unwarranted, lengthy speaking objections."); *Serrano*, 2012 WL 28071, at *5 ("But such an objection [to a vague question] to avoid a suggestive speaking objection should be limited to an objection 'to form,' unless opposing counsel requests further clarification of the objection."); *Druck Corp. v. Macro Fund (U.S.) Ltd.*, No. 02 CIV.6164(RO)(DFE), 2005 WL 1949519, at *4 (S.D.N.Y. Aug. 12, 2005) ("Any

16

'objection as to form' must say only those four words, unless the questioner asks the objector to state a reason."); *Turner v. Glock, Inc.*, No. CIV.A. 1:02CV825, 2004 WL 5511620, at *1 (E.D. Tex. Mar. 29, 2004) ("All other objections to questions during an oral deposition must be limited to 'Objection, leading' and 'Objection, form.' These particular objections are waived if not stated as phrased above during the oral deposition."); *Auscape Int'l v. Nat'l Geographic Soc'y*, No. 02 CIV. 6441(LAK), 2002 WL 31014829, at *1 (S.D.N.Y. Sept. 6, 2002) ("Once counsel representing any party states, 'Objection' following a question, then all parties have preserved all possible objections to the form of the question unless the objector states a particular ground or grounds of objection, in which case that ground or those grounds alone are preserved."); *In re St. Jude Med., Inc.*, No. 1396, 2002 WL 1050311, at *5 (D. Minn. May 24, 2002) ("Objecting counsel shall say simply the word 'objection', and no more, to preserve all objections as to form.").[13] For the reasons discussed above, I think this approach makes little legal or practical sense.

But, because there is authority validating "form" objections, I do not impose sanctions based on the fact that Counsel used these objections while defending depositions. Counsel's "form" objections, however, amplified two other issues: witness coaching and excessive interruptions. As I discuss below, *those* aspects of Counsel's deposition conduct warrant sanctions. Thus, I impose sanctions related to Counsel's "form" objections only to the extent that those objections facilitated the coaching and interruptions. Although I do not impose sanctions based on Counsel's "form" objections

---

[13] The record contains no indication that Counsel knew of, or relied on, these, or similar cases when Counsel made "form" objections during depositions. Counsel did not claim to know of these cases, or similar lines of authority, at the time Counsel made the "form" objections, in Counsel's response to either of my show-cause orders, or at the sanctions hearing.

in this case, lawyers should consider themselves warned: Unspecified "form" objections are improper and will invite sanctions if lawyers choose to use them in the future.

### 2. *Witness Coaching*

While there appears to be disagreement about the validity of "form" objections, the law clearly prohibits a lawyer from coaching a witness during a deposition. Under Rule 30(c)(2), deposition "objection[s] must be stated concisely in a nonargumentative and nonsuggestive manner." *See also* Fed. R. Civ. P. 30, advisory committee notes (1993 amendments) ("Depositions frequently have been . . . unfairly frustrated, by lengthy objections and colloquy, often suggesting how the deponent should respond."). This clause mandates what should already be obvious—lawyers may not comment on questions in any way that might affect the witness's answer:

> The Federal Rules of Evidence contain no provision allowing lawyers to interrupt the trial testimony of a witness to make a statement. Such behavior should likewise be prohibited at depositions, since it tends to obstruct the taking of the witness's testimony. It should go without saying that lawyers are strictly prohibited from making any comments, either on or off the record, which might suggest or limit a witness's answer to an unobjectionable question.

*Hall v. Clifton Precision*, 150 F.R.D. 525, 530-31 (E.D. Pa. 1993); *see also Specht v. Google, Inc.*, 268 F.R.D. 596, 598 (N.D. Ill. 2010) ("Objections that are argumentative or that suggest an answer to a witness are called 'speaking objections' and are improper under Rule 30(c)(2).").

Despite the Federal Rules' prohibition on witness coaching, Counsel's repeated interjections frequently prompted witnesses to give particular, desired answers to the examiner's questions. This happened in a number of ways. To start, Counsel often made "clarification-inducing" objections—objections that prompted witnesses to request that the examiner clarify otherwise cogent questions. For example, Counsel regularly

objected that questions were "vague," called for "speculation," were "ambiguous," or were "hypothetical." These objections usually followed completely reasonable questions. But, after hearing these objections, the witness would usually ask for clarification, or even refuse to answer the question:

> Q. Is there—do you believe that there's—if there's any kind of a correlation that could be drawn from OAL environmental samples to the quality of the finished product?
>
> COUNSEL: Objection; vague and ambiguous.
>
> A. That would be speculation.
>
> Q. Well, if there were high numbers of OAL, Eb samples in the factory, wouldn't that be a cause for concern about the microbiological quality of the finished product?
>
> COUNSEL: Object to the form of the question. It's a hypothetical; lacks facts.
>
> A. Yeah, those are hypotheticals.
>
> . . .
>
> Q. Would that be a concern of yours?
>
> COUNSEL: Same objection.
>
> A. Not going to answer.
>
> Q. You're not going to answer?
>
> A. Yeah, I mean, it's speculation. It would be guessing.
>
> COUNSEL: You don't have to guess.

(Bottock Depo. 106:24 to 108:2). While it is impossible to know for certain what a witness would have said absent Counsel's objections, I find it inconceivable that the witnesses deposed in this case would so regularly request clarification were they not tipped-off by Counsel's objections. *See McDonough v. Keniston*, 188 F.R.D. 22, 24 (D.N.H. 1998) ("The effectiveness of [witness] coaching is clearly demonstrated when

19

the [witness] subsequently adopts his lawyer's coaching and complains of the broadness of the question . . . ."); *Cordova v. United States*, No. CIV.05 563 JB/LFG, 2006 WL 4109659, at *3 (D.N.M. July 30, 2006) (awarding sanctions based on a lawyer's deposition coaching because "it became impossible to know if [a witness's] answers emanated from her own line of reasoning or whether she adopted [the] lawyer's reasoning from listening to his objections").

These same objections spilled over into the trial. The following colloquy occurred during the plaintiff's cross-examination of Counsel's expert:

> Q. . . . Isn't [J.M.K.'s mother] saying that every time she used a bottle she boiled it first?
>
> COUNSEL: Your Honor, I would just object that in the—it's not clear from the context of this one page or several pages what it is they're talking about in terms of which feedings, if he can point it out to him.
>
> THE COURT: And so what is the nature of that objection? I haven't ever heard that one before.
>
> COUNSEL: It's confusing.
>
> THE COURT: Well, it may be confusing to you, but he didn't ask the question to you. He asked it of the witness.
>
> COUNSEL: Okay. Might be confusing to the witness.
>
> THE COURT: Yeah, that's suggesting an answer which is exactly the problem I had with your depositions.
>
> COUNSEL: I would just object to the form of the question then, Your Honor.
>
> THE COURT: That's not a proper objection, so it's overruled.
>
> A. As I read this, I can't be certain as to what exactly she's referring to at what point here.

20

Once again, after Counsel's objection suggested that the question "might" confuse the witness, the witness replied that he "[couldn't] be certain" as to what was being asked.

But perhaps the most egregious examples of clarification-inducing objections arose when Counsel defended the deposition of Sharon Bottock. During that deposition, Counsel lodged no fewer than 65 "form" objections, many of which did not specify any particular basis. Immediately after most of these "form" objections, the witness gave the seemingly Pavlovian response, "Rephrase." At times, the transcript feels like a tag-team match, with Counsel and witness delivering the one-two punch of "objection"– "rephrase":

> Q. . . . I'm wondering if you could perhaps in a . . . little bit less technical language explain to me what they're talking about in that portion of the exhibit.
>
> COUNSEL: Object to the form of the question.
>
> A. So rephrase.
>
> Q. Could you tell me what they're saying here?
>
> COUNSEL: Same objection.
>
> A. Rephrase it again.
>
> . . .
>
> Q. So it—that's what they're talking about, the two types, the finished product and the overs? Does it separate those two things?
>
> A. Yes.
>
> Q. What's an "over"?
>
> COUNSEL: Object to the form. He doesn't want you to characterize it. He wants to know what's it made out of, I think.[14]

---

[14] Here, Counsel reinterprets the question for the witness—an issue that I address below.

Q. I mean, is it too big?

COUNSEL: Object to the form of the question.

A. Rephrase.

(Bottock Depo. 58:20 to 59:25). Note the witness's first answer in this colloquy: *So rephrase.* The witness's language makes clear that she is requesting—actually, *commanding*—the examiner to rephrase based on Counsel's objection.

These clarification-inducing objections are improper. Unless a question is truly so vague or ambiguous that the defending lawyer cannot possibly discern its subject matter, the defending lawyer may not suggest to the witness that the lawyer deems the question to be unclear. Lawyers may not object simply because *they* find a question to be vague, nor may they assume that the witness will not understand the question. The *witness*—not the lawyer—gets to decide whether he or she understands a particular question:

> Only the witness knows whether she understands a question, and the witness has a duty to request clarification if needed. This duty is traditionally explained to the witness by the questioner before the deposition. If defending counsel feels that an answer evidences a failure to understand a question, this may be remedied on cross-examination.

*Serrano*, 2012 WL 28071, at *5; *see also Hall*, 150 F.R.D. at 528-29 ("If the witness does not understand the question, or needs some language further defined or some documents further explained, the witness can ask the deposing lawyer to clarify or further explain the question. After all, the lawyer who asked the question is in a better position to explain the question than is the witness's own lawyer." (footnote omitted)); Peter M. Panken & Mirande Valbrune, *Enforcing the Prohibitions Against Coaching Deposition Witnesses*, Prac. Litig., Sept. 2006, at 15, 16 ("It is improper for an attorney to interpret that the witness does not understand a question because the lawyer doesn't understand a

question. And the lawyer certainly shouldn't suggest a response. If the witness needs clarification, the witness may ask the deposing lawyer for clarification. A lawyer's purported lack of understanding is not a proper reason to interrupt a deposition.").

Counsel's clarification-inducing objections are reminiscent of the improper objections at issue in *Phillips v. Manufacturers Hanover Trust Co.*, No. 92 CIV. 8527 (KTD), 1994 WL 116078 (S.D.N.Y. Mar. 29, 1994). In *Phillips*, a lawyer

> objected or otherwise interjected during [the examiner's] questioning of the deponent at least 49 times though the deposition lasted only an hour and a half. Indeed, approximately 60 percent of the pages of the transcript contain such interruptions. Many of these were objections as to form, which are waived if not made at the deposition, Fed. R. Civ. P. 32(d)(3)(B), but on numerous occasions [the lawyer's] objections appeared to have no basis. . . . Moreover, after 21 of [the lawyer's] objections as to form, the deponent asked for clarification or claimed he did not understand the question. . . . [The lawyer] objected as to form, and the deponent then stated he did not understand the question, subsequently asking that it be narrowed.

*Id.* at *3. In considering whether to impose sanctions, the court described the lawyer's conduct as "inappropriate" and "obnoxious." *Id.* The court also noted that the lawyer's conduct frustrated the deposition:

> Such interplay clearly did hamper the free flow of the deposition. Rather than answer [the examiner's] questions to the best of his ability, the deponent hesitated, asking for clarification of apparently unambiguous questions. . . . In addition, the deponent asked for such clarifications almost exclusively after [the lawyer] objected or interrupted in some fashion.

*Id.* Finally, the court recognized that the lawyer's conduct violated Rule 30, but chose not to impose sanctions because, at the time, Rule 30 was newly amended and because

the examiner was able to finish the deposition. *Id.* at \*4. The court warned, however, that "a repeat performance [would] result in sanctions." *Id.*

Like the lawyer in *Phillips*, Counsel's endless "vague" and "form" objections (and their variants described above) frustrated the free flow of the depositions Counsel defended. They frequently induced witnesses to request clarification to otherwise unambiguous questions. Counsel's "form" objections also emboldened witnesses to quibble about the legal basis for certain questions—*e.g.*, "That would be speculation"— and to stonewall the examiner—*e.g.*, "Not going to answer." In short, these objections were suggestive and amounted to witness coaching, thereby violating Rule 30.

But Counsel's clarification-inducing objections are only part of the problem. In a related tactic, Counsel frequently concluded objections by telling the witness, "You can answer if you know" or something similar. Predictably, after receiving this instruction, witnesses would often claim to be unable to answer the question:

> Q. Are these the ingredients that are added after preparation or after pasteurization?
>
> COUNSEL: If you know. Don't guess.
>
> A. If you could rephrase the question. There's no ingredients on 28.
>
> COUNSEL: So you can't answer the question.

(Bottock Depo. 47:12-18).

> Q. If it's high enough to kill bacteria, why does Abbott prior to that go through a process of pasteurization?
>
> COUNSEL: If you know, and you're not a production person so don't feel like you have to guess.
>
> A. I don't know.

(Bottock Depo. 48:12-17).

24

Q. Does it describe the heat treatment that you referred to a few moments ago, the heat treatment that occurs in the dryer phase?

. . .

COUNSEL: Okay. Do you know his question? He's asking you if this is what you're describing.

A. Yeah, I don't know.

(Bottock Depo. 57:8-21).

Q. . . . Is there any particular reason that that language is stated with respect to powdered infant formula?

COUNSEL: If you know. Don't—if you know.

A. No, I—no, not to my knowledge.

COUNSEL: If you know. I mean, do you know or not know?

A. I don't know.

(Barrett-Reis Depo. 49:10-18). These responses are unsurprising. When a lawyer tells a witness to answer "if you know," it not-so-subtly suggests that the witness may not know the answer, inviting the witness to dodge or qualify an otherwise clear question. For this reason, "[i]nstructions to a witness that they may answer a question 'if they know' or 'if they understand the question' are raw, unmitigated coaching, and are never appropriate." *Serrano*, 2012 WL 28071, at *5; *see also Specht*, 268 F.R.D. at 599 ("Mr. Fleming egregiously violated Rule 30(c)(2) by instructing Mr. Murphy not to answer a question because his answer would be a 'guess.'"); *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 567 (D. Kan. 1997) (noting that an attorney violated Rule 30 when he "interrupted [a] deposition in mid-question, objected to the assumption of facts by the witness, and advised the witness that he was not obligated to assume facts").

Lastly, Counsel often directly coached the witness to give a particular, substantive answer. This happened in a few ways. Sometimes Counsel reinterpreted or rephrased the examiner's questions:

> Q. To what extent do you have knowledge of the testing procedures that Abbott employs in raw materials or the environment, the plant environment or final product?
>
> A. Very limited knowledge, again, because that would be product development.
>
> COUNSEL: He's just asking you what do you have. Do you have any? If it's no, then just say "no."
>
> A. Okay.

(Barrett-Reis Depo. 20:16 to 21:2).

> Q. . . . Do you know when that occurs or does it occur on a regular basis?
>
> COUNSEL: Object to the form, regular basis. It says, "Once a year." He means the same time once a year presumably but—
>
> A. On an annual basis, the time may vary when we close the facility to fumigate.

(Bottock Depo. 34:5-11).

> Q. At any rate, you'll see that on both the first page of Exhibit 22 and the first page of Exhibit 23, there's a picture of the product, and both of them have the word "NeoSure" on the product. Would you be able to tell me what the difference between those two products is?
>
> . . .
>
> COUNSEL: Well, he said difference between the products. It lacks foundation that there's a difference between the products.
>
> Q. There may not be. I don't know. Can you tell me?

> COUNSEL: Well, the question is—I object to the form of the question. He's not asking you just about the label. He's asking you is there a difference in the product. So can you answer that?

(Barrett-Reis Depo. 29:2-20). Sometimes Counsel gave the witness additional information to consider in answering a question:

> Q. For that particular infant who is not premature, like in this case was a twin, do you believe that NeoSure is an appropriate version of powdered infant formula?
>
> COUNSEL: Object to the form. Lack of foundation in terms of what this baby—whether this baby was preterm or not. It's not in evidence in this deposition nor in the record anyplace. And I object to the form of the question as calling for speculation.
>
> Q. Go ahead.
>
> COUNSEL: You can answer.
>
> A. I can't answer it without more information.

(Barrett-Reis Depo. 99:7-19). Sometimes Counsel answered the examiner's question first, followed by the witness:

> Q. . . . Is that accurate or is there something that they, you know, just chose not to put—
>
> COUNSEL: If you know. She didn't write this.
>
> A. Yes, I didn't write this.

(Bottock Depo. 27:20-25)

> Q. Okay. The part that counsel just read, is that basically an accurate summary of the process?
>
> COUNSEL: In general.
>
> A. In general.

(Bottock Depo. 28:21-24).

> Q. . . . And then under "Follow-Up Test" for Eb it's
> essentially the same thing as E. sak negative; right?
>
> COUNSEL: It says zero.
>
> A. It says zero.
>
> Q. But which would—that would be the same type of finding
> if it said E. sak negative; right?
>
> COUNSEL: In other words, there's no Eb. There's no Eb;
> there's no—
>
> A. It's zero. There's no Eb.

(Bottock Depo. 114:14-24). Counsel even audibly disagreed with a witness's answer, prompting the witness to change her response to a question:

> Q. My question is, was that a test—do you know if that test
> was performed in Casa Grande or Columbus?
>
> A. I don't.
>
> COUNSEL: Yes, you do. Read it.
>
> A. Yes, the micro—the batch records show finished micro
> testing were acceptable for the batch in question.

(Bottock Depo. 86:9-15).

All of the objections described in this section violate Rule 30 by suggesting, in one way or another, how the witness should answer a question. More troublingly, these objections allowed Counsel to commandeer the depositions, influencing the testimony in ways not contemplated by the Federal Rules. Instead of allowing for a question-and-answer session between examiner and witness, Counsel acted as an intermediary, which frustrated the purpose of the deposition:

> The underlying purpose of a deposition is to find out what a
> witness saw, heard, or did—what the witness thinks. A
> deposition is meant to be a question-and-answer conversation
> between the deposing lawyer and the witness. There is no

> proper need for the witness's own lawyer to act as an
> intermediary, interpreting questions, deciding which
> questions the witness should answer, and helping the witness
> to formulate answers. The witness comes to the deposition to
> testify, not to indulge in a parody of Charlie McCarthy, with
> lawyers coaching or bending the witness's words to mold a
> legally convenient record. It is the witness—not the lawyer—
> who is the witness.

*Hall*, 150 F.R.D. at 528 (footnote omitted); *see also Alexander v. F.B.I.*, 186 F.R.D.

21, 52-53 (D.D.C. 1998) (noting that "[i]t is highly inappropriate for counsel for the

witness to provide the witness with responses to deposition questions by means of an

objection" or to "rephrase or alter the question" asked of the witness); Panken &

Valbrune, *supra*, at 16 ("[C]ounsel is not permitted to state on the record an interpretation

of questions, because those interpretations are irrelevant and are often suggestive of a

particularly desired answer.").

In response to my order to show cause, Counsel explains what motivated many of

the objections that I perceive to be coaching:

> In many places during the depositions of Abbott witnesses . .
> . where it was clear that the plaintiff's counsel was on the
> wrong track factually . . . defense counsel attempted to steer
> him to the correct ground. When things got bogged down,
> hours in, defense counsel also attempted to speed up the
> process by helping to clarify or facilitate things, for which the
> plaintiff's counsel seemed appreciative.

(Docket no. 193, at 4-5) (footnote omitted). It is not for the defending lawyer to decide

whether the examiner is on the "wrong track," nor is it the defending lawyer's

prerogative to "steer [the examiner] to the correct ground." While lawyers are

encouraged to be collegial and helpful to one another during depositions, Counsel's

conduct, on balance, was neither. It defies common sense to suggest that Counsel's

omnipresent commentary sped up the depositions in this case. Moreover, most of

Counsel's commentary during depositions were *objections*, not benign attempts to clarify. Because this commentary coached witnesses to give particular answers, I find that sanctions are appropriate.

### 3.    *Excessive Interruptions*

Beyond the "form" objections and witness coaching, Counsel's interruptions while defending depositions were grossly excessive. Counsel's name appears at least 92 times in the transcript of the Barrett-Reis deposition (about once per page), and 381 times in the transcript of the Bottock deposition (approaching three times per page). Counsel's name appears with similar frequency in the other depositions that Counsel defended. And, as I noted earlier, nearly all of Counsel's objections and interruptions are unnecessary and unwarranted.

These excessive and unnecessary interruptions are an independent reason to impose sanctions. The notes accompanying Rule 30 provide that sanctions may be appropriate "when a deposition is unreasonably prolonged" and that "[t]he making of an excessive number of unnecessary objections may itself constitute sanctionable conduct . . . ." Fed. R. Civ. P. 30, advisory committee notes (1993 amendments); *see also Craig*, 384 F. App'x at 533 ("The notes also explain that an excessive number of unnecessary objections may constitute actionable conduct, though the objections be not argumentative or suggestive."). At least two courts in this circuit have imposed sanctions based, in part, on a lawyer's excessive and unnecessary objections during depositions. *See id.* (affirming a monetary sanction against a lawyer who made "a substantial number of argumentative objections together with suggestive objections" that "impeded, delayed, or frustrated [a] deposition"); *Van Pilsum v. Iowa State Univ. of Sci. & Tech.*, 152 F.R.D. 179, 181 (S.D. Iowa 1993) (sanctioning a lawyer who had "no justification for . . . monopoliz[ing] 20% of his client's deposition" and whose objections "were for the most part groundless, and were only disputatious grandstanding").

By interposing many unnecessary comments, clarifications, and objections, Counsel impeded, delayed, and frustrated the fair examination of witnesses during the depositions Counsel defended. Thus, sanctions are independently appropriate based on Counsel's excessive interruptions.

## C.    Appropriate Sanction

Based on Counsel's deposition conduct, I would be well within my discretion to impose substantial monetary sanctions on Counsel. But I am less interested in negatively affecting Counsel's pocketbook than I am in positively affecting Counsel's obstructive deposition practices. I am also interested in deterring others who might be inclined to comport themselves similarly to Counsel. The Federal Rules specifically acknowledge that one function of discovery sanctions should be deterrence. *See* Fed. R. Civ. P. 26, advisory committee notes (1983 amendments) ("Sanctions to deter discovery abuse would be more effective if they were diligently applied 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.'" (quoting *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643 (1976)). Deterrence is especially important given that so many litigators are *trained* to make obstructionist objections. For instance, at trial, when I challenged Counsel's use of "form" objections, Counsel responded, "Well, I'm sorry, Your Honor, but that was my training . . . ." While monetary sanctions are certainly warranted for Counsel's witness coaching and excessive interruptions, a more outside-the-box sanction[15] may better serve the goal of

---

[15] For examples of outside-the-box discovery sanctions, see the following cases: *St. Paul Reinsurance Co.*, 198 F.R.D. at 518 (imposing a write-a-bar-journal-article sanction); *R.E. Linder Steel Erection Co., Inc. v. U.S. Fire Ins. Co.*, 102 F.R.D. 39, 41 (D. Md. 1983) (imposing a $5.00-per-inturruption sanction); *Huggins v. Coatesville Area Sch. Dist.*, No. CIV.A. 07-4917, 2009 WL 2973044, at *4 (E.D. Pa. Sept. 16, 2009) (imposing a sit-down-and-share-a-meal-together sanction).

changing improper tactics that modern litigators are trained to use. *See* Matthew L. Jarvey, Note, *Boilerplate Discovery Objections: How They Are Used, Why They Are Wrong, and What We Can Do About Them*, 61 DRAKE L. REV. 913, 931-36 (2013) (discussing the importance of unorthodox sanctions in deterring discovery abuse).

In light of this goal, I impose the following sanction: Counsel must write and produce a training video in which Counsel, or another partner in Counsel's firm, appears and explains the holding and rationale of this opinion, and provides specific steps lawyers must take to comply with its rationale in future depositions in any federal and state court.[16] The video must specifically address the impropriety of unspecified "form" objections, witness coaching, and excessive interruptions. The lawyer appearing in the video may mention the few jurisdictions that actually require only unspecified "form" objections and may suggest that such objections are proper in only those jurisdictions. The lawyer in the video must state that the video is being produced and distributed pursuant to a federal court's sanction order regarding a partner in the firm, but the lawyer need not state the name of the partner, the case the sanctions arose under, or the court issuing this order. Upon completing the video, Counsel must file it with this court, under seal, for my review and approval. If and when I approve the video, Counsel must (1) notify certain lawyers at Counsel's firm about the video via e-mail and (2) provide those lawyers with access to the video. The lawyers who must receive this notice and access include each lawyer at Counsel's firm—including its branch offices worldwide—who engages in federal or state litigation or who works in any practice group in which at least two of the lawyers have filed an appearance in any state or federal case in the United States. After

---

[16] I am not the first judge to suggest a video-related sanction. In *Florida Bar v. Ratiner*, 46 So. 3d 35, 41 n.4 (Fla. 2010), the Florida Supreme Court noted that law students and members of the Florida bar could view footage of a videotaped deposition in which a later-suspended lawyer behaved unprofessionally toward his opposing counsel as part of a course on professionalism.

providing these lawyers with notice of and access to the video, Counsel must file in this court, under seal, (1) an affidavit certifying that Counsel complied with this order and received no assistance (other than technical help or help from the lawyer appearing in the video) in creating the video's content and (2) a copy of the e-mail notifying the appropriate lawyers in Counsel's firm about the video. The lawyer appearing in the video need not state during the video that he or she agrees with this opinion, or that Counsel was the lawyer whose deposition conduct prompted this sanction. Counsel need not make the video publicly available to anyone outside Counsel's firm. Failure to comply with this order within 90 days may result in additional sanctions.

To be clear, had Counsel made only a handful of improper objections or comments while taking depositions, I would not have raised these issues *sua sponte*. Depositions can be stressful and contentious, and lawyers are bound to make the occasional improper objection. But Counsel's improper objections, coaching, and interruptions went far beyond what judges should tolerate of any lawyer, let alone one as experienced and skilled as Counsel. Counsel's baseless interjections and obstructionist commentary were ubiquitous; they pervaded the depositions in this case and even spilled over into the trial. It is the repeated nature of Counsel's obstructionist deposition conduct that warrants sanctions here.

Finally, I note that, despite Counsel's deposition conduct, I was greatly impressed by how Counsel performed at trial. Unlike the "litigators" I discussed earlier, Counsel was extremely well-prepared, had clearly mastered the facts of this case, and did a great job of incorporating electronic evidence into Counsel's direct- and cross-examinations. Those aspects of Counsel's noteworthy trial skills, expertise, and preparation are laudable, but they do not excuse Counsel's pretrial conduct.

If Counsel appeals this sanctions order I will, *sua sponte*, automatically stay it pending the appeal.

### III.    CONCLUSION

For the reasons stated in this opinion, I find that sanctions are appropriate in response to Counsel's improper deposition conduct, which impeded, delayed, and frustrated the fair examination of witnesses in the depositions related to this case that Counsel defended.  I therefore impose the sanction described above.

**IT IS SO ORDERED**.

**DATED** this 28th day of July, 2014.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA