```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF IOWA
                      WESTERN DIVISION

SECURITY NATIONAL BANK, as                No. C11-4017-MWB
Conservator for JMK, a minor child,

        Plaintiff,

    vs.

ABBOTT LABORATORIES,                      TRANSCRIPT OF
                                          PHONE HEARING

        Defendant.
_____/
```

       The Phone Hearing held before the Honorable Mark W. Bennett, Judge of the United States District Court for the Northern District of Iowa, at the Federal Courthouse, 320 Sixth Street, Sioux City, Iowa, June 3, 2013, commencing at 1:29 p.m.

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov to purchase a complete copy of the transcript.*

Case 5:11-cv-04017-MWB-CJW Document 215 Filed 10/15/14 Page 1 of 18

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | AMANDA BRANDY VAN WYHE, ESQ.<br>TIMOTHY S. BOTTARO, ESQ.<br>Vriezelaar, Tigges, Edgington,<br>   Bottaro, Boden & Ross<br>613 Pierce Street<br>Sioux City, IA 51102<br><br>STEPHEN C. RATHKE, ESQ.<br>Lommen, Abdo, Cole, King & Stageberg<br>2000 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402 |
| For the Defendant: | JOHN C. GRAY, ESQ.<br>Heidman Law Firm<br>1128 Historic 4th Street<br>Sioux City, IA 51102<br><br>JUNE K. GHEZZI, ESQ.<br>GABRIEL H. SCANNAPIECO, ESQ.<br>Jones Day<br>Suite 3500<br>77 West Wacker Drive<br>Chicago, IL 60601 |
| Court Reporter: | Shelly Semmler, RMR, CRR<br>320 Sixth Street<br>Sioux City, IA 51101<br>(712) 233-3846 |

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov to purchase a complete copy of the transcript.*

Case 5:11-cv-04017-MWB-CJW Document 215 Filed 10/15/14 Page 2 of 18

1  THE COURT: Good afternoon, everyone. This is Mark
2  Bennett in Sioux City. We're on the record, and this is
3  Security National Bank of Sioux City as Conservator for J.M.K.,
4  a minor, plaintiff, versus Abbott Laboratories, defendant. I
5  think you should have received my summary judgment and motion in
6  limine ruling by now, but why don't we take a roll call and make
7  sure I know who's on the line. Who's appearing for the
8  plaintiff?
9  MR. RATHKE: Stephen Rathke from Minneapolis. And
10 yes, I did receive the Court's order.
11 THE COURT: Okay. Anybody else for the plaintiff? Do
12 you have local counsel on the line?
13 MR. RATHKE: Yes.
14 MR. BOTTARO: Yes, Judge. Tim Bottaro and Amanda
15 Van Wyhe, and we also received the rulings, Your Honor.
16 THE COURT: Okay. And how about for the defense?
17 MS. GHEZZI: June Ghezzi for Abbott, and my associate
18 Gabe Scannapieco is here with me in my office. Yeah, we
19 received a copy.
20 THE COURT: Okay. And is Mr. Gray on the line?
21 MR. GRAY: Your Honor, John Gray is here, and I also
22 received a copy of the order.
23 THE COURT: Okay. Here's the deal. We're going to
24 trial on September 3. I'm not going to continue this case.
25 It's been continued too many times. You have three months to

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov to purchase a complete copy of the transcript*

Case 5:11-cv-04017-MWB-CJW  Document 215  Filed 10/15/14  Page 3 of 18

get ready for trial.  I was able to get a summary judgment ruling out with all my other work in less than a week from when I actually got my hands on the case, and so I thought there was an exceptional amount of whining in the e-mails.  And I don't like whiney lawyers.  And I think Mr. Gray may have pointed that out.

So I really just wanted to say stop your whining and get ready for trial.  If you want to settle the case, that's fine.  You're not going to hear me mention the S, settlement, word between now and trial because I don't care whether you settle the case or not.  But I do care that you not include me in your whining to each other because I don't have time for whining lawyers.

The pretrial order was actually -- it's just our form one, so Roman numeral 2 about a continuance of the trial, this case is not going to be continued.  That I can guarantee you.  You can file anything you want.  But it's not going to be continued.

When it comes to filing motions in limine, I want one motion in limine, and please don't wait till the last possible day to file it because you've got a couple months to do it.  And there's going to be -- you can have as many subparts as you want, but it's just going to be one motion.  I don't want 36 different motions in limine.  You can do it in one pleading, and there will be one 25-page brief maximum in support of the

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov to purchase a complete copy of the transcript.*

Case 5:11-cv-04017-MWB-CJW   Document 215   Filed 10/15/14   Page 4 of 18

```
 1  motions in limine, and I'll rule on them as quickly as I ruled
 2  on the summary judgment ruling.
 3           So I just kind of -- that's about all I have to tell
 4  you.  Any questions or anything you don't understand?  Anything
 5  from the plaintiff?
 6           MR. RATHKE:  Yes.  This is Steve Rathke again.  I did
 7  have one question.
 8           THE COURT:  Yes.
 9           MR. RATHKE:  And the question -- we have some treating
10  physicians in the area, both in Omaha and Sioux City.  They were
11  never deposed by either side.  And we would like to -- I mean,
12  there's no reason why they couldn't be witnesses at trial except
13  that doctors usually say, well, I'm busy that day.
14           THE COURT:  Well, so subpoena them.
15           MR. RATHKE:  Okay.
16           THE COURT:  Or you can -- you know, we have great
17  videoconferencing equipment.  So we've had witnesses testify
18  from all around the world.  So have them testify live by
19  videoconference.
20           MR. RATHKE:  All right.  All right.
21           THE COURT:  That's one option.  Or you can take either
22  a video dep or a nonvid -- nonvideo deposition and put it in
23  that way.  I mean, there's --
24           MR. RATHKE:  All right.
25           THE COURT:  I don't care how you do it.  And I don't
```

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov to purchase a complete copy of the transcript*

Case 5:11-cv-04017-MWB-CJW, Document 215, Filed 10/15/14, Page 5 of 18

```
 1  mean to be unsympathetic, but it's not my problem.
 2              MR. RATHKE:  Oh, I know.  I know.
 3              THE COURT:  Yeah.
 4              MR. RATHKE:  And I appreciate the Court's guidance,
 5  and we'll -- we will either -- we'll do one of three things.
 6  First we'll try to get them to show up live.  And if they can't,
 7  we'll have them be in place by remote.  And if that won't work,
 8  then we'll schedule a deposition just prior to trial.
 9              THE COURT:  And we've taken -- for over a year and a
10  half I handled most of the docket in the District of the
11  Northern Mariana Islands in Saipan, and -- which is halfway
12  around the world, and I'd go there every couple months.  But in
13  between I did a ton of work including federal criminal
14  sentencings by videoconferencing.  So we have excellent
15  videoconferencing equipment.  I'm confident that if there's some
16  expert in China that can't make it live for trial we can either
17  take that testimony from China on videoconferencing equipment or
18  you can take a video dep or take a nonvideo deposition, whatever
19  you want.  But those aren't legitimate reasons to continue a
20  trial because --
21              MR. RATHKE:  Oh, I wasn't even going to go there.
22              THE COURT:  Pardon me?
23              MR. RATHKE:  I wasn't going to go there.
24              THE COURT:  Okay.
25              MR. RATHKE:  No.  It's September 3.  But our court in
```

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov to purchase a complete copy of the transcript.*

Case 5:11-cv-04017-MWB-CJW   Document 215   Filed 10/15/14   Page 6 of 18

```
 1  the District of Minnesota doesn't have that remote capabilities.
 2  I was kind of surprised.
 3          THE COURT:  Yeah.  Well, we've had it for over a
 4  decade so . . .
 5          MS. GHEZZI:  Your Honor, we have that issue, and I'm
 6  glad to hear that you've done it from around the world, and we
 7  would just need, you know, the tech person.  My office was
 8  asking who the tech person is at the courthouse.
 9          THE COURT:  Yes.
10          MS. GHEZZI:  I'm sure we can get that name and number
11  because I think one of our witnesses will be in Taipei.
12          THE COURT:  Sure.
13          MS. GHEZZI:  And, you know, we're going to try and set
14  that up and make sure that that happens that way.
15          THE COURT:  Absolutely.  And you can kind of rehearse
16  it ahead of time to make sure it all works.  We have a fabulous
17  technology person.  His name is Jose Leon, and we'll e-mail it
18  to you with his e-mail address and his phone number.  And I'll
19  talk to him personally.
20          MS. GHEZZI:  All right.
21          THE COURT:  To make sure he can accommodate any
22  reasonable request by counsel.
23          MS. GHEZZI:  Okay.
24          THE COURT:  And I just don't think there will be a
25  problem.
```

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov to purchase a complete copy of the transcript.*

Case 5:11-cv-04017-MWB-CJW   Document 215   Filed 10/15/14   Page 7 of 18

1  MS. GHEZZI: I'm just wondering then if you had a
2  problem from overseas and there's like technical difficulties or
3  something, do you reschedule the witness for a later time
4  or . . .
5  THE COURT: Oh, sure. I'm not going to deprive
6  somebody of an opportunity to put on testimony because we have
7  technical difficulties.
8  MS. GHEZZI: Okay.
9  THE COURT: You know, worst-case scenario I would
10 think is we'd have them testify live by teleconference like
11 this. But obviously it's not nearly as good as
12 videoconferencing.
13 MS. GHEZZI: No, no.
14 THE COURT: But we've had witnesses from all over, and
15 we haven't had a problem. But we've always done a connection
16 ahead -- you know, a week before trial to make sure everything
17 works.
18 MS. GHEZZI: Sure. And, Your Honor, the other point I
19 just wanted to raise was in -- Mr. Rathke, counsel for
20 plaintiff, had just indicated about some depositions of treating
21 physicians who are local who can presumably come live by
22 subpoena. And he had asked us last week if we would agree that
23 he could do video depositions of them before trial. We would
24 rather have those folks live obviously, and there's also not a
25 lot of time to get ready. And a lot of --

```
 1                THE COURT:  Three months?
 2                MS. GHEZZI:  Pardon?
 3                THE COURT:  Three months to get ready is not a lot of
 4   time?
 5                MS. GHEZZI:  Well, we have -- I mean, we have all of
 6   our -- all of June is booked on other matters.
 7                THE COURT:  Well, that's not my problem.  The point
 8   is --
 9                MS. GHEZZI:  I know.
10                THE COURT:  -- most judges don't give lawyers three
11   months to get ready for a trial.  In a lot of districts they go
12   on far, far shorter notice than that.  And it's not really three
13   months.  I moved the trial date up six days.
14                MS. GHEZZI:  Right.
15                THE COURT:  You've had a trial date for longer than
16   three months.
17                MS. GHEZZI:  This issue was sort of litigated when the
18   case was in front of Judge O'Brien, and there was an order
19   entered way back in 2011 where plaintiff's counsel wanted to
20   do -- wanted to say, you know, let's do these doctor deps that
21   he didn't want to do during discovery close to trial.  We said,
22   no, let's get them done during discovery.  We have plenty of
23   time to do them during discovery, and that's been the -- that's
24   been what we've worked under that case management order since
25   April of 2011.  And he could have taken the depositions then.
```

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov to purchase a complete copy of the transcript.*

Case 5:11-cv-04017-MWB-CJW   Document 215   Filed 10/15/14   Page 9 of 18

1  It's now 2013, and now, you know, on sort of the eve -- it's
2  kind of the eve.  I know for you it's not the eve of trial --
3  wants to start doing these discovery depositions of local
4  witnesses which we think is, you know, not great under the --
5  under the discovery schedule in the case which discovery's been
6  over since last November.
7       So, I mean, I don't have any trouble with them
8  appearing live, obviously videoconferencing.  It's just I think
9  we're going to have a whole lot of video depositions, you know.
10 Abbott obviously prefers to be able to cross-examine people live
11 in front of the jury to the extent it can.  I want to put that
12 on the record.
13      THE COURT:  Anything else you want to -- you make all
14 the record you want.  I'm real big on lawyers making all the
15 record they want to make.  Anything else you want to put on the
16 record?
17      MS. GHEZZI:  N -- I mean, I think that's it.  I mean,
18 obviously how ever you want to do it.  I just want to -- you
19 know, we would like to do them live.  If they're local, we'd
20 like to have the doctors live if he's going to call them -- if
21 he's going to call them as witnesses in his case and they're
22 local.
23      THE COURT:  You're talking about the plaintiff's
24 witnesses?
25      MS. GHEZZI:  Yes.

1  THE COURT: Well, you subpoena them, call them live
2  yourself. I mean, you don't have a right to dictate whether
3  they call the witnesses live or do it by deposition. What
4  rule -- what rule of civil procedure is that?
5  MS. GHEZZI: Well, I think that's what we were
6  litigating in the beginning of the case, Your Honor, when we
7  were in front of -- when we were doing it with the magistrate
8  judge, and that was sort of the ruling. That's -- I'm just
9  saying that. I mean, that's just what --
10  THE COURT: Yeah.
11  MS. GHEZZI: That was how we were -- you know,
12  discovery -- discovery's been over -- these folks have never
13  been deposed in the case, so we've never had a ch -- there's
14  never been a discovery deposition under the federal rules, and
15  they're going to be -- they're going to be taking discovery
16  depositions outside the discovery period which ended last
17  November.
18  THE COURT: Well, wait a minute. I'm confused, and
19  I'm sorry.
20  MS. GHEZZI: Okay.
21  THE COURT: Here's why I'm confused. I thought they
22  were -- you were talking about the plaintiffs wanting to take
23  depositions of witnesses they were calling. Or are they your
24  witnesses that you're calling and they never took the
25  deposition?

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov to purchase a complete copy of the transcript.*

Case 5:11-cv-04017-MWB-CJW Document 215 Filed 10/15/14 Page 11 of 18

```
1              MS. GHEZZI:  No.  You were correct.  They're not --
2    they are treating physicians who were not deposed, did not do --
3    there was no discovery deposition during the discovery period of
4    these doctors.  And we were told that the plaintiffs wanted to
5    put them on a witness list which is, of course, fine.  They can
6    call whoever they want to.  But they didn't want to call them
7    live.  They wanted to do a deposition of them and use that
8    deposition outside the discovery period.  That's our only point.
9              So they haven't been -- there hasn't been a discovery
10   deposition yet.  We don't know what they're going to say.
11   Obviously the plaintiff's lawyers can talk to treating
12   physicians.  We can't talk to treating physicians.
13             THE COURT:  Of course you --
14             MS. GHEZZI:  So --
15             THE COURT:  You didn't get a -- you weren't able to
16   get a patient waiver so that you could talk to them?
17             MS. GHEZZI:  No, we did not.
18             THE COURT:  Well, they've waived the attorney-client
19   privilege by filing the lawsuit and listing them as a witness,
20   so I don't understand why you couldn't talk to them.  But you
21   certainly had a right to take a discovery deposition.
22             MS. GHEZZI:  Right.  But, Your Honor, when we went
23   through this during the discovery conferences and the case
24   management order, we weren't interested in deposing them.  They
25   were -- plaintiffs were interested in getting their testimony,
```

1  and so what we -- what our litigation thought about it was if
2  they want to get their testimony and they want to discover what
3  they're going to say, they should do it during the discovery
4  period.  And that was what the order was.  The order actually
5  crossed out -- Magistrate Judge Zoss's order crossed out their
6  proposal to do that, to do it, you know, right before trial.
7  And basically our position was, you know, let's do it during the
8  discovery period.  And that was what -- that's how the order
9  ended up.  And so he ended up moving -- he gave them more time
10 for discovery.  He pushed discovery back by about seven months,
11 and still nobody -- you know, they did not depose those
12 treaters.
13         THE COURT:  Well, so let me try and see if I've got
14 this straight.
15         MS. GHEZZI:  Okay.
16         THE COURT:  You recognize they have a right -- to the
17 extent that they can -- that they're within the hundred-mile
18 radius and they can subpoena the witnesses, they have a right to
19 subpoena any of those doctors and test -- and those doctors
20 would then be under an obligation to testify live at trial.
21 And, of course, the sooner they're given a deposition notice the
22 better because to the extent that a doctor came in and wanted
23 relief from the subpoena, you know, I might give it to them if
24 they were subpoenaed 48 hours before their testimony.  But if
25 they're subpoenaed six weeks, two months early, they're not

```
 1  going to get out from under a subpoena in front of me.
 2          MS. GHEZZI:  Right.
 3          THE COURT:  So you're not -- you recognize that.  What
 4  you're saying is you're un -- don't let me put words in your
 5  mouth.  But what I understand you to be saying is to the extent
 6  that now the plaintiffs may want to take a deposition for
 7  purposes of presenting the doctor's testimony at trial by way of
 8  deposition, you're unwilling to consent to do that.
 9          MS. GHEZZI:  Yeah, that's right.  They haven't shown
10  that they're unavailable.  And I think that's the rule you had
11  asked me about initially, and I can't remember the name -- I
12  can't remember the --
13          THE COURT:  No, no, no, but I'm understanding what
14  you're saying.  Now, let me ask you this.  Don't you have the
15  same problem at least with one of your experts going to be in
16  China or something?  Now, maybe it will work out that we can
17  take it by videotape -- I mean by videoconferencing.
18          MS. GHEZZI:  Right.
19          THE COURT:  But normally in Iowa lawyers cooperate
20  with each other.  So I realize that they could have taken a
21  discovery deposition or it's not -- you know, the rules don't
22  really distinguish.  They could have taken a deposition earlier.
23  But with three months to go, what would be the prejudice to the
24  defense or to the plaintiff because it would work both ways if I
25  allowed you all to take videotaped depositions in lieu of their
```

1 live trial testimony? I mean, where's the prejudice?
2 　　　　　MS. GHEZZI: Well, I mean, Your Honor, I think that
3 the prejudice -- I mean, I think the reason for the rule about
4 you have to show up live if you're within the subpoena dist --
5 you know, within the hundred-mile radius is because there's a --
6 you know, there's a predilection for live testimony before a
7 jury and to be able to get it live, particularly of local
8 witnesses. Certainly any litigant wants a witness in front of
9 the jury seeing that person up front, seeing -- you know, just
10 the way you have the back-and-forth at a trial that you don't
11 get when you have it videotaped ahead of time.
12 　　　　　A videoconference on the same day is like the next
13 best thing, I agree, and because of the difference in schedules,
14 if we have to put somebody in from Taipei, you know,
15 videoconferencing, that's certainly better I think than getting
16 a videotaped deposition, you know, like a month or two ahead of
17 time or even a month ahead of time where, you know, he's
18 testifying in a case where there's going to be people in front
19 of him. You know, trial is dynamic. There will have been
20 testimony.
21 　　　　　So, you know, I think there is -- there is a little
22 bit of -- there is a little bit of prejudice there. I think
23 it's just a better -- you know, obviously trials are meant to be
24 done live if at all possible. And so, you know, we would want
25 to confront people live if we can. If they're not local, that's

1  a different story.  If they're out of the country, you know, one
2  of his experts is going to be in Africa the entire month.  We
3  understand that, you know, impossibility to get a live feed.
4  But for local doctors, you know, I think there is some prejudice
5  not being able to -- you know, not to be able to get them live.
6  I mean, you know, maybe there won't be.  I don't know.  You
7  know, as I say, we haven't had a discovery deposition of them
8  yet.  And they might be very short.  They may decide not to use
9  them at all.
10             THE COURT:  Well, here's my suggestion.  Both -- I
11  don't know the lead kind of lawyers for either party, but both
12  have excellent local counsel.  Local counsel are used to working
13  things out, and I imagine if the lead lawyers aren't able to
14  work things out, I would think local counsel could.  I'm just
15  suggesting you try and work something out, and if you can't,
16  you'll have to file motions, and I'll rule on them as fast as I
17  possibly can.  But these are -- this is not rocket science.
18  These aren't huge problems.
19             MS. GHEZZI:  Right.
20             THE COURT:  And so I'm confident that if you all work
21  together you'll be able to work them out.  Both sides can be
22  reasonable.  And if you can't get it worked out, then that's
23  what I'm here for, and I'm not shy about resolving disputed
24  issues.  But I don't like any last-minute surprises.  So see
25  what you can work out in terms of depositions, if anything.  If

```
 1  you can't, you know, you can file your motions, and I'll rule on
 2  them promptly.
 3          So anything else you think might be helpful to chat
 4  about?
 5          MR. RATHKE:  Plaintiff doesn't have anything.
 6          MS. GHEZZI:  I don't think so, Your Honor.  I was
 7  mostly concerned about the live feed from Taipei and if we had
 8  difficulties.  But we have a tech guy who can talk to the
 9  Court's tech guy.
10          THE COURT:  Yeah.  I'll tell you, I've done a whole
11  lot of work from Saipan to here on videoconferencing, and
12  we've -- I shouldn't say we've never had a problem.  I do recall
13  we did have a problem one day, but most of the time we've done
14  it, it just wasn't a problem at all so . . .
15          MS. GHEZZI:  All right.  That's great -- great to
16  here.
17          THE COURT:  We have really good equipment, and we have
18  great tech support.
19          So I can't really think of anything else.  It sounds
20  like it's going to be a fascinating trial.  I look forward to
21  it.  And I'll be ready on the 3rd, and I hope you will be.  And
22  we'll see you at trial if not before.
23          MS. GHEZZI:  Okay.  Very good.
24          THE COURT:  Okay.  Thank you so much.
25          MS. GHEZZI:  Thank you.
```

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov to purchase a complete copy of the transcript.*

Case 5:11-cv-04017-MWB-CJW   Document 215   Filed 10/15/14   Page 17 of 18

```
1              MS. VAN WYHE:  Thank you, Your Honor.
2              (The foregoing hearing was
3              concluded at 1:50 p.m.)
```

20                        CERTIFICATE

21     I certify that the foregoing is a correct transcript
22  from the record of proceedings in the above-entitled matter.

25      S/Shelly Semmler                          9-4-14
        Shelly Semmler, RMR, CRR                   Date

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov to purchase a complete copy of the transcript.*

Case 5:11-cv-04017-MWB-CJW Document 215 Filed 10/15/14 Page 18 of 18